## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ETHAN E. SILVERMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BAXTER INTERNATIONAL INC., JOSÉ E. ALMEIDA, JAMES K. SACCARO, and BRIAN C. STEVENS,<br><br>Defendants. | Case No. 1:19-cv-07786<br><br>District Judge Sara L. Ellis<br><br>Magistrate Judge Jeffrey I. Cummings |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF VARMA MUTUAL PENSION INSURANCE COMPANY AND LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

Varma Mutual Pension Insurance Company ("Varma") and Louisiana Municipal Police Employees' Retirement System ("LAMPERS") respectfully submit this memorandum of law in support of their motion seeking an Order: (1) appointing Varma and LAMPERS as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) approving their selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the class; and (3) granting such other and further relief as the Court may deem just and proper.

## I. INTRODUCTION

On November 25, 2019, Plaintiff Ethan E. Silverman, through his counsel, Kessler Topaz and Bernstein Litowitz, filed the above-captioned securities class action lawsuit (the "Action") alleging violations under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against Baxter International Inc. ("Baxter" or the "Company") and certain of its executive officers (collectively, "Defendants") on behalf of all persons who purchased or otherwise acquired Baxter common stock between February 21, 2019, and October 23, 2019, inclusive (the "Class Period").

The PSLRA governs the selection of the Lead Plaintiff in class actions asserting claims under the federal securities laws. Specifically, the PSLRA requires courts to appoint as Lead Plaintiff the "person or group of persons" that: (1) makes a timely motion under the PSLRA's sixty-day deadline; (2) asserts the largest financial interest in the litigation; and (3) satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii).

1

Varma and LAMPERS respectfully submit that they are the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff because, to the best of their knowledge, their losses of approximately $596,128 (calculated on a last-in, first-out ("LIFO") basis) in connection with their transactions in Baxter common stock during the Class Period represent the largest known financial interest in the relief sought by the class.[1] *See Hedick v. The Kraft Heinz Co.*, Nos. 19-cv-1339, *et al.*, 2019 WL 4958238, at *8 (N.D. Ill. Oct. 8, 2019) (Dow, J.) (appointing group of two institutions with largest financial interest).

In addition to asserting the largest financial interest, Varma and LAMPERS satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the class and because they will fairly and adequately represent the class. *See infra* Section III.A.3. Moreover, as sophisticated institutional investors that collectively manage more than $50 billion in assets, Varma and LAMPERS are the prototypical Lead Plaintiff envisioned by Congress to serve as Lead Plaintiff under the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *Hedick*, 2019 WL 4958238, at *10 (finding that the PSLRA indicates a "presumption that institutional investors be appointed lead plaintiff") (citation omitted).

Further, as set forth in greater detail in the Joint Declaration of Elli Sistonen and Ben Huxen, submitted herewith (the "Joint Declaration"), Varma and LAMPERS are already operating

---

[1]    Varma's and LAMPERS's PSLRA-required certifications are attached as Exhibit A to the Declaration of Avi Josefson in Support of the Motion of Varma Mutual Pension Insurance Company and Louisiana Municipal Police Employees' Retirement System for Appointment as Lead Plaintiff and Approval of Selection of Counsel (the "Josefson Decl."). In addition, charts setting forth calculations of Varma's and LAMPERS's losses are attached as Exhibit B to the Josefson Decl.

2

as a cohesive group, fully understand the lead plaintiff's obligations to the class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this litigation. *See* Josefson Decl., Ex. C. Indeed, prior to filing their joint motion, representatives of Varma and LAMPERS held a conference call to formalize their oversight of this litigation, and discuss the merits of the claims and their common goals in seeking to lead this litigation. *See id.* ¶ 10; *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group of institutional investors and noting "declarations demonstrating cooperative efforts among" the group's members); *Hedick*, 2019 WL 4958238, at *10 (appointing group of institutional investors that submitted joint declarations) (citation omitted).

Finally, Varma and LAMPERS have retained experienced and competent counsel to represent the class. Kessler Topaz and Bernstein Litowitz are law firms with substantial experience in prosecuting securities class actions and a history of jointly litigating actions resulting in significant recoveries for investors. *See infra* Section III.B. Indeed, in appointing Kessler Topaz and Bernstein Litowitz as co-lead counsel in *Hedick* three months ago, the Honorable Robert M. Dow, Jr. recognized "the extensive experience . . . [Kessler Topaz and Bernstein Litowitz] have in the area of securities law." *Hedick*, 2019 WL 4958238, at *12. Moreover, having filed the Action, Kessler Topaz and Bernstein Litowitz have already been working collaboratively to advance the interests of the class. Accordingly, Varma and LAMPERS respectfully request that their selection of Kessler Topaz and Bernstein Litowitz as Lead Counsel for the class be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Hedick*, 2019 WL 4958238, at *11 ("The PSLRA provides that the lead plaintiffs shall, subject to Court approval, select and retain counsel to represent the class they seek to represent.") (citations omitted).

## II.    FACTUAL BACKGROUND

Baxter, a Delaware corporation headquartered in Deerfield, Illinois, provides a broad portfolio of essential healthcare products, including acute and chronic dialysis therapies, sterile intravenous (IV) solutions, infusion systems and devices, parenteral nutrition therapies, inhaled anesthetics, generic injectable pharmaceuticals, and surgical hemostat and sealant products.

The Action alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) certain intra-Company transactions, undertaken for the purpose of generating foreign exchange gains and losses, used foreign exchange rate conventions that were not in accordance with generally accepted accounting principles ("GAAP") and enabled intra-Company transactions to be undertaken after the related exchange rates were already known; (2) the Company lacked effective internal control over financial reporting; (3) as a result, the Company's financial statements were misstated and would likely require correction or amendment; (4) due to the Company's internal investigation, Baxter would not be able to file its quarterly report for the period ending September 30, 2019, with the SEC on Form 10-Q in a timely manner; and (5) as a result of the foregoing, Defendants' statements about the Company's business and operations lacked a reasonable basis.

As alleged in the Action, before the markets opened on October 24, 2019, Baxter announced that it "recently began an investigation into certain intra-Company transactions undertaken for the purpose of generating foreign exchange gains or losses."  According to the Company, "[t]hese transactions used a foreign exchange rate convention historically applied by the Company that was not in accordance with [GAAP] and enabled intra-Company transactions to be undertaken after the related exchange rates were already known."  Baxter further admitted that

4

"[t]hese intra-Company transactions resulted in certain misstatements in the Company's previously reported non-operating income related to net foreign exchange gains" and acknowledged that, "[u]pon completion of the investigation and the Company's evaluation of the materiality of the misstatements, the Company expects to either amend its periodic reports previously filed with the SEC to include restated financial statements that correct those misstatements, or include in reports for future periods restated comparative financial statements that correct those misstatements." Baxter further revealed that "[t]he Company does not expect to file its quarterly report on Form 10-Q for the period ended September 30, 2019 on a timely basis." As a result of these disclosures, the price of Baxter common stock declined $8.87 per share, or 10.1%, from a close of $87.95 per share on October 23, 2019, to close at $79.08 per share on October 24, 2019.

## III. ARGUMENT

### A. Varma and LAMPERS Are the Most Adequate Plaintiff

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. *See id*. § 78u-4(a)(3)(A)(i). Within sixty days after publication of the notice, any member or group of members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that the court shall appoint as Lead Plaintiff the member or group of members of the class that the court determines to be most capable of adequately

5

representing the interests of class members. *See id.* § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. § 78u-4(a)(3)(B)(iii)(I).

Here, Varma and LAMPERS are the "most adequate plaintiff" because they: (1) filed a timely motion for appointment as Lead Plaintiff; (2) possess the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisf[y] the requirements of Rule 23" for purposes of this Motion. *Id*.

### 1. Varma and LAMPERS's Motion Is Timely

The PSLRA allows any member or group of members of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See id*. § 78u-4(a)(3)(A)(i)(II). Here, in connection with the filing of the Action, notice was published on November 25, 2019, in *PRNewswire*. *See* Josefson Decl., Ex. D. Accordingly, the deadline to seek lead plaintiff status is January 24, 2020. Therefore, Varma and LAMPERS's Motion is timely.

### 2. Varma and LAMPERS Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs courts to adopt a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" with the "largest financial interest in the relief sought

by the class" that "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, Varma and LAMPERS suffered substantial losses of approximately $596,128 (calculated on a LIFO basis) in connection with their Class Period transactions in Baxter common stock. *See* Josefson Decl., Exs. A & B. To the best of their knowledge, Varma and LAMPERS's financial interest in this matter is the largest of any movant. *See* 15 U.S.C. § 78u-4(a)(3)(B).

### 3. Varma and LAMPERS Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the litigation, Varma and LAMPERS also satisfy the applicable requirements of Rule 23. *See id*. § 78u-4(a)(3)(B)(iii)(I)(cc). At the lead plaintiff stage, movants are required to make only a "preliminary showing" under Rule 23 that the proposed lead plaintiff's claims are typical and adequate. *Hedick*, 2019 WL 4958238, at *8.

#### (a) Varma and LAMPERS's Claims Are Typical

The typicality requirement is satisfied if the movant's claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id*. at *9 (citation and alteration omitted). Varma and LAMPERS satisfy this requirement because, like all other proposed class members, they purchased Baxter common stock during the Class Period at prices that were artificially inflated through Defendants' false and misleading statements and suffered damages thereby. *See id*. (finding that claims "based on the same legal theories and aris[ing] from the same events and course of conduct giving rise to the claims of the other class members" meet the typicality requirement) (citation omitted). Thus, Varma and LAMPERS's claims arise from the same factual

predicate and involve substantially the same legal arguments as those of the other class members. Accordingly, Varma and LAMPERS are typical. *See id*.

### (b) Varma and LAMPERS Are Adequate

"A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who [will] be able to prosecute the litigation vigorously." *Id*. (citation omitted; alteration in original).

Here, Varma and LAMPERS satisfy the adequacy requirement because their interest in vigorously pursuing claims against Defendants—given their substantial financial losses—is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and misleading statements. There is no potential conflict between Varma and LAMPERS's interests and those of the other members of the class, and Varma and LAMPERS are fully committed to vigorously pursuing the claims on behalf of the class.

Moreover, as set forth in their PSLRA certifications, Varma and LAMPERS have affirmed their understanding of the PSLRA's requirements and their willingness to pursue this action for the benefit of the class. *See* Josefson Decl., Ex. A. Additionally, as discussed in their Joint Declaration, Varma and LAMPERS have demonstrated their commitment to working cohesively in the prosecution of this action. *See* Josefson Decl., Ex. C. Courts within this District and across the country have repeatedly recognized the propriety of appointing groups of investors that "can fairly and adequately represent the class." *Hedick*, 2019 WL 4958238, at *7 (citations omitted); *see also In re Versata, Inc. Sec. Litig.*, Nos. C 01-1439 SI, *et al.*, 2001 WL 34012374, at *6-7 (N.D. Cal. Aug. 20, 2001) (appointing a group composed of sophisticated investors as lead plaintiff because they "possess[ed] both sophistication and business knowledge, as well as substantial individual losses which adds meaningful incentive for a vigorous prosecution of the action").

8

Varma and LAMPERS comprise a small, cohesive group of sophisticated institutional investors that determined that their joint appointment as Lead Plaintiff would advance the class's best interests. *See* Josefson Decl., Ex. C ¶¶ 4-7, 9-11; *Hedick*, 2019 WL 4958238, at *10 (appointing group of two institutional investors based on declarations demonstrating their "ability to fairly and adequately protect the interests of the class"). Specifically, given the magnitude of their losses, their prior experience serving as lead plaintiff, and the importance of the claims asserted against Defendants, Varma and LAMPERS believe that this case should be prosecuted by sophisticated institutional investors with significant resources and a financial interest substantial enough to ensure that the claims are litigated vigorously, efficiently, and in the best interests of the class. *See* Josefson Decl., Ex. C ¶¶ 5-7, 9-11. Through the course of their evaluation of this case, and recognizing the benefits that could be realized by working together, Varma and LAMPERS each expressed an interest in cooperating with other like-minded institutional investors in seeking appointment as Lead Plaintiff. *See id*. ¶ 6. Varma and LAMPERS agree that their partnership would improve the representation of the class in this action through, among other things, the benefits of joint decision-making and their collective experiences and resources. *See id*. ¶¶ 9, 11.

The Joint Declaration also demonstrates that Varma and LAMPERS have already taken (and will continue to take) numerous measures to ensure the vigorous prosecution of this action and oversee their counsel. *See id*. ¶¶ 8, 12-14. Specifically, to formalize their leadership of the action, and before seeking appointment as Lead Plaintiff, representatives of Varma and LAMPERS participated in a conference call and discussed together, among other things: their losses arising from Defendants' misconduct; their strategy for prosecuting this case; the strength of the claims against Defendants; and their common goals in ensuring that this action is litigated as efficiently as possible and in a manner that generates the best possible result for the class. *See id*. ¶ 8. Varma

and LAMPERS also directed their proposed Lead Counsel, Kessler Topaz and Bernstein Litowitz, to enter into a Joint Prosecution Agreement ("JPA") governing counsel's activities in this litigation, their reporting to and oversight by Varma and LAMPERS, and the allocation of litigation responsibilities to ensure the zealous and cost-effective prosecution of this action. *See id*. ¶ 14. Varma and LAMPERS authorized counsel to provide the JPA to the Court for *in camera* review upon its request. *See id.* Further, Varma and LAMPERS are aware that Kessler Topaz and Bernstein Litowitz, which filed the Action against Defendants, have been investigating investors' claims for several months. *See id*. ¶ 12.

The evidence submitted by Varma and LAMPERS establishing their commitment to zealously and efficiently represent the interests of the class as members of a Lead Plaintiff group is more than sufficient to satisfy the adequacy and typicality requirements here. *See, e.g.*, *Hedick*, 2019 WL 4958238, at *10 (appointing group of institutional investors that submitted joint declarations); *Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 12 C 3297, 2012 WL 5471110, at *6 (N.D. Ill. Nov. 9, 2012) (appointing group of institutions that "conferred with one another [and] decided to move together in seeking appointment as lead plaintiff after due consideration and deliberation") (citation omitted); *Bank of Am.*, 258 F.R.D. at 270 (appointing group of institutional investors and noting "declarations demonstrating cooperative efforts among" the group's members); *Versata*, 2001 WL 34012374, at *6-7 (finding a group composed of sophisticated investors that submitted declarations "providing background information and articulating why [each] member is seeking lead plaintiff status as part of the asserted group" to be "sufficiently cohesive and structured to maximize its individual strengths and sophisticated business knowledge" and to have "exhibited a cooperative spirit").

10

In addition to satisfying the typicality and adequacy requirements of Rule 23, Varma and LAMPERS—with over $50 billion in assets under management, combined, and prior experience serving as lead plaintiff under the PSLRA—are also the prototypical investors Congress sought to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34, *reprinted in* 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Hedick*, 2019 WL 4958238, at *10 (finding that the PSLRA indicates a "presumption that institutional investors be appointed lead plaintiff") (citation omitted). As such, Varma and LAMPERS possess the sophistication, experience, and resources sufficient to adequately litigate the action and supervise class counsel.

Varma and LAMPERS have further demonstrated their adequacy through their selection of Kessler Topaz and Bernstein Litowitz as Lead Counsel for the class. As discussed more fully below, both firms are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated the ability to conduct complex securities class action litigation in an efficient, effective, and professional manner.

**B.      The Court Should Approve Varma and LAMPERS's Selection of Lead Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he Court should not disturb the lead plaintiff's choice of class counsel unless 'necessary to protect the interests of the class.'" *Hedick*, 2019 WL 4958238, at *11 (citation and alteration omitted). Here, Varma and LAMPERS have selected and retained Kessler Topaz and Bernstein Litowitz to serve as Lead Counsel. Varma and LAMPERS's selection of Lead Counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Josefson Decl., Ex. E (Kessler Topaz's Firm Résumé). The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *Luther v. Countrywide Financial Corp.*, No. 2:12-CV-05125 MRP (MANx) (C.D. Cal.) ($500 million recovery); and *In re Tenet Healthcare Corp. Securities Litigation*, No. CV-02-8462-RSWL (Rx) (C.D. Cal.) ($216.5 million recovery). Kessler Topaz is currently serving as lead or co-lead counsel in several securities class actions in this District and across the country, including: *Washtenaw County Employees' Retirement System v. Walgreen Co.*, No. 15-cv-3187 (SJC) (N.D. Ill.); *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.); *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.,* No. 18-cv-12084 (VSB) (S.D.N.Y.); and *In re Celgene Corp. Securities Litigation*, No. 18-cv-4772 (JMV) (JBC) (D.N.J.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA. Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—which at the time was one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr. *See In re S. Peru Copper Corp. S'holder Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

12

Similarly, Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Josefson Decl., Ex. F (Bernstein Litowitz's Firm Résumé). Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. Bernstein Litowitz also served as co-lead counsel in *In re Cendant Corporation Securities Litigation*, No. 98-cv-1664-WHW-ES (D.N.J.), in which settlements in excess of $3.3 billion in cash and extensive corporate governance reforms were obtained on behalf of the class. More recently, Bernstein Litowitz served as lead counsel and obtained a $480 million recovery on behalf of the class in *Hefler v. Wells Fargo & Co.*, No. 16-cv-5479 (N.D. Cal.). Significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Stericycle, Inc. Securities Litigation*, No. 16-cv-7145 (N.D. Ill.) ($45 million recovery); *Hughes v. Huron Consulting Group, Inc.*, No. 09-cv-4734 (N.D. Ill.) ($38 million recovery); and *Louisiana Firefighters' Retirement System v. Northern Trust Investments, N.A.*, No. 09-cv-7203 (N.D. Ill.) ($28.25 million recovery).

Moreover, Kessler Topaz and Bernstein Litowitz have a history of jointly prosecuting securities fraud class actions. Kessler Topaz and Bernstein Litowitz's joint prosecutions, which have resulted in recoveries collectively exceeding $4.5 billion in recent years, include, among others: *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel, among others); *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) ($730 million recovery with Bernstein Litowitz as lead counsel and Kessler Topaz as additional counsel); *In re Wachovia Preferred Securities &*

*Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel).

More recently, Kessler Topaz and Bernstein Litowitz served together as co-lead counsel in *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 14-cv-2004 (DOC)(KES) (C.D. Cal.), in which $250 million was recovered for investors, and are currently serving together as co-lead counsel in *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc.*, No. 4:17-cv-00449-ALM (E.D. Tex.) ($44 million recovery, pending court approval). Indeed, Judge Dow recently appointed both firms as co-lead counsel in *Hedick* after noting Kessler Topaz's and Bernstein Litowitz's "extensive experience . . . in the area of securities law." *Hedick*, 2019 WL 4958238, at *12.

Thus, the Court may be assured that, in the event this Motion is granted, the class will receive the highest caliber of legal representation available.

## IV. CONCLUSION

For the foregoing reasons, Varma and LAMPERS respectfully request that the Court appoint Varma and LAMPERS as Lead Plaintiff, approve their selection of Kessler Topaz and Bernstein Litowitz as Lead Counsel for the class, and grant such other relief as the Court may deem just and proper

Dated: January 24, 2020

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Avi Josefson*
Avi Josefson (Bar No. 672453)
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611

14

Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

Gerald H. Silk
Michael D. Blatchley
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff Louisiana Municipal Police Employees' Retirement System and Proposed Co-Lead Counsel for the Class*

**KESSLER TOPAZ MELTZER
   & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff Varma Mutual Pension Insurance Company and Proposed Co-Lead Counsel for the Class*

15