**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BAXTER INTERNATIONAL INC. SECURITIES LITIGATION | Case No. 1:19-cv-07786 <br><br> Judge Sara L. Ellis <br><br> Magistrate Judge Jeffrey I. Cummings |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ....................................................................................................3

    A. Baxter and the Individual Defendants...................................................................3

    B. Baxter's Accounting for Foreign-Currency Transactions.......................................4

    C. Baxter Identifies and Discloses Errors in Its Accounting for Certain Intra-Company Transactions..........................................................................................6

    D. Baxter Announces the Investigation Results, and Its Share Price Increases ..........6

III. ARGUMENT..........................................................................................................7

    A. Plaintiffs Fail to Allege a Strong Inference of Scienter..........................................9

        1. GAAP Deviations Do Not Establish a Strong Inference of Scienter.........10

        2. The Core-Operations Doctrine Does Not Apply .....................................13

        3. The Fact That Baxter Used the Historical Rate Convention for Years Undercuts an Inference of Scienter ................................................15

        4. Saccaro's Prior Position Does Not Support a Strong Inference of Scienter ..............................................................................................16

        5. The Departure of Baxter's Former Treasurer Is Irrelevant to Scienter ..............................................................................................16

        6. Baxter Clawed Back a Portion of the Individual Defendants' Bonuses to Conform Compensation With Actual Performance, Not Because of Misconduct.................................................................17

        7. The Individual Defendants' SOX Certifications Add Nothing to the Scienter Calculus ..........................................................................18

        8. Plaintiffs' Generic Motive Allegations Repeatedly Have Been Rejected..............................................................................................19

    B. Plaintiffs Fail to Allege That Many of the Challenged Statements Are Materially False or Misleading .............................................................................22

        1. Plaintiffs Fail to Allege That the GAAP-Compliance Statements Are Materially False or Misleading .........................................................22

        2. Plaintiffs Fail to Allege That the Internal-Controls Statements Are Materially False or Misleading .................................................................24

IV. CONCLUSION.....................................................................................................25

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alizadeh v. Tellabs, Inc.*,
2015 WL 557249 (N.D. Ill. Feb. 9, 2015) ................................................................. 23

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
505 F. Supp. 2d 662 (D. Colo. 2007) ................................................................. 20, 25

*Arbitrage Event-Driven Fund v. Tribune Media Co.*,
2020 WL 60186 (N.D. Ill. Jan. 6, 2020) .................................................................... 16

*Babin v. Shchekin*,
2017 WL 403568 (N.D. Ill. Jan. 30, 2017) ................................................................ 24

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ............................................................................... 8, 13

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ...................................................................................... 21

*Christian v. BT Grp. PLC*,
2018 WL 3647213 (D.N.J. Aug. 1, 2018) .................................................................. 18

*Christian v. BT Grp. PLC*,
2020 WL 1969941 (D.N.J. Apr. 24, 2020) ................................................................. 18

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ..................................................................................... 11

*City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) ................................................................................... 7, 8

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
963 F. Supp. 2d 1092 (E.D. Wash. 2013) .................................................................. 21

*Const. Workers Pension Fund v. Navistar Int'l Corp.*,
2014 WL 3610877 (N.D. Ill. July 22, 2014) ............................................................. 23

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ..................................................................................... 10

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018) ....................................................................... 14

*Davis v. SPSS, Inc.*,
  385 F. Supp. 2d 697 (N.D. Ill. 2005) ..................................................................... 21

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ............................................................................................. 7

*Fulton Cty. Emps.' Ret. Sys. v. MGIC Inv. Corp.*,
  2010 WL 601364 (E.D. Wisc. Feb. 18, 2010)....................................................... 10

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
  2011 WL 1303387 (N.D. Ill. Mar. 31, 2011) ....................................................... 19

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) ............................................................................ 18

*Gillis v. ORX Pharma Ltd.*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016) .................................................................. 20

*Higginbotham v. Baxter Int'l Inc.*,
  2005 WL 1272271 (N.D. Ill. May 25, 2005), *aff'd*, 495 F.3d 753 (7th Cir. 2007).................. 11

*Higginbotham v. Baxter Int'l Inc.*,
  495 F.3d 753 (7th Cir. 2007) ........................................................................ passim

*In re Adient plc Sec. Litig.*,
  2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) .......................................................... 14

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
  2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) ........................................................ 24

*In re Bally Total Fitness Sec. Litig.*,
  2006 WL 3714708 (N.D. Ill. July 12, 2006) .................................................... 14, 16

*In re Cadence Design Sys., Inc. Sec. Litig.*,
  654 F. Supp. 2d 1037 (N.D. Cal. 2009).......................................................... 11, 21

*In re Ceridian Corp. Sec. Litig.*,
  542 F.3d 240 (8th Cir. 2008)......................................................................... 13, 19

*In re Cornerstone Propane Partners, L.P.*,
  355 F. Supp. 2d 1069 (N.D. Cal. 2005)................................................................ 17

*In re Downey Sec. Litig.*,
  2009 WL 736802 (C.D. Cal. Mar. 18, 2009) .................................................. 17, 20

*In re Gold Res. Corp. Sec. Litig.*,
  776 F.3d 1103 (10th Cir. 2015)............................................................................ 18

iii

*In re Harley-Davidson, Inc. Sec. Litig.*,
  660 F. Supp. 2d 969 (E.D. Wisc. 2009) .................................................................................... 9

*In re Hertz Glob. Holdings, Inc.*,
  905 F.3d 106 (3d Cir. 2018) .................................................................................................. 18

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) ..................................................................................... 15

*In re K-Tel Int'l, Inc. Sec. Litig.*,
  300 F.3d 881 (8th Cir. 2002) ................................................................................................. 11

*In re Nuverra Envtl. Lead Case Sols. Sec. Litig.*,
  2014 WL 6390322 (D. Ariz. Nov. 17, 2014) ......................................................................... 22

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ................................................................................................. 8

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ................................................................................................... 8

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ................................................................... 15, 19

*In re U.S. Aggregates, Inc. Sec. Litig.*,
  235 F. Supp. 2d 1063 (N.D. Cal. 2002) ................................................................................. 17

*In re Zagg, Inc. Sec. Litig.*,
  797 F.3d 1194 (10th Cir. 2015) .............................................................................................. 19

*Janus Cap. Grp. v. First Deriv. Traders*,
  564 U.S. 135 (2011) .............................................................................................................. 24

*Lewis v. YRC Worldwide Inc.*,
  2020 WL 1493915 (N.D.N.Y. Mar. 27, 2020) ....................................................................... 24

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ............................................................................................... 20

*Lu v. Align Tech., Inc.*,
  417 F. Supp. 3d 1266 (N.D. Cal. 2019) ............................................................................ 22, 23

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  513 F.3d 702 (7th Cir. 2008) ................................................................................................... 8

*Malin v. XL Cap. Ltd.*,
  499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ...................... 17

*Okla. Firefighters Pension & Ret. Sys. v. Ixia Corp.*,
  2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) .................................................................. 12, 14

*Okla. Firefighters Pension & Ret. Sys. v. Ixia Corp.*,
  50 F. Supp. 3d 1328 (C.D. Cal. 2014) .................................................................................. 11

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ............................................................................................................. 24

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
  266 F. Supp. 3d 1154, 1166 (E.D. Wisc. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018) ................ 9

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
  895 F.3d 933 (7th Cir. 2018) ......................................................................................... passim

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
  679 F.3d 952 (7th Cir. 2012) ............................................................................................... 21

*Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
  673 F. Supp. 2d 718 (S.D. Ind. 2009), *aff'd*, 679 F.3d 952 (7th Cir. 2012) ............................ 16

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) ....................................................................................... 9, 13, 20

*Rehm v. Eagle Fin. Corp.*,
  954 F. Supp. 1246 (N.D. Ill. 1997) ........................................................................................ 9

*Reilly v. U.S. Physical Therapy, Inc.*,
  2018 WL 3559089 (S.D.N.Y. July 23, 2018) ........................................................................ 14

*Roth v. OfficeMax, Inc.*,
  527 F. Supp. 2d 791 (N.D. Ill. 2007) ............................................................................... passim

*Societe Generale Sec. Servs., GmbH v. Caterpillar, Inc.*,
  2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ....................................................................... 16

*Teamsters Affiliates Pension Plan v. Walgreens Co.*,
  2010 WL 3894149 (N.D. Ill. Sept. 29, 2010) ....................................................................... 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ....................................................................................................... 2, 7, 8

*Wanca v. Super Micro Comput., Inc.*,
  2018 WL 3145649 (N.D. Cal. June 27, 2018) ....................................................................... 19

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
  2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016) ....................................................................... 25

*Webb v. SolarCity Corp.*,
  884 F.3d 844 (9th Cir. 2018) ................................................................................. 15

*Woolgar v. Kingstone Cos.*,
  2020 WL 4586792 (S.D.N.Y. Aug. 10, 2020) ........................................................ 25

*Wyche v. Advanced Drainage Sys.*,
  2017 WL 971805 (S.D.N.Y. Mar. 10, 2017).......................................................... 10

*Yates v. Muni. Mortg. & Equity, LLC*,
  744 F.3d 874 (4th Cir. 2014) ................................................................................. 16

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ..................................................................... 11, 17, 18

## STATUTES

15 U.S.C. § 78u-4(b)(1) ................................................................................................. 8

## RULES

Fed. R. Civ. P. 9(b) ....................................................................................................... 7

vi

## GLOSSARY OF TERMS

The following terms are used in this memorandum:

| | |
|---|---|
| AC or Complaint: | Class Action Complaint, filed June 25, 2020, Dkt. No. 34 |
| APAC: | Asia-Pacific |
| Audit Committee: | The Audit Committee of Baxter International Inc.'s Board of Directors |
| Baxter: | Baxter International Inc. |
| CEO: | Chief Executive Officer |
| CFO: | Chief Financial Officer |
| Challenged Statement(s): | Defendants' statements Plaintiffs challenge as false or misleading (AC ¶¶ 131-60) |
| Class Period: | February 21, 2019 through October 23, 2019, inclusive |
| Company: | Baxter International Inc. |
| Defendant(s): | Baxter International Inc., José Almeida, and James Saccaro |
| EMEA: | Europe, the Middle East, and Africa |
| Ex. or Exs.: | Exhibit(s), which are attached to the Declaration of Whitney B. Weber, filed concurrently herewith |
| GAAP: | Generally Accepted Accounting Principles |
| Individual Defendants: | José Almeida and James Saccaro |
| Plaintiffs: | Louisiana Municipal Policy Employees' Retirement System and Varma Mutual Pension Insurance Company |
| PSLRA: | The Private Securities Litigation Reform Act of 1995 |
| PwC: | PricewaterhouseCoopers LLP |
| SEC: | United States Securities and Exchange Commission |
| SOX: | The Sarbanes-Oxley Act of 2002 |

## I.  INTRODUCTION

When a public company restates its financial results, securities class action lawsuits usually follow—without regard to whether the claims have any merit.  This is just such a case.  On October 24, 2019, Baxter—an Illinois-based Company that has provided a broad portfolio of products to the healthcare industry for nearly one-hundred years—announced it had begun an investigation into the accounting for certain intra-Company transactions undertaken for the purpose of generating foreign-exchange gains or avoiding foreign-exchange losses.  It explained that the transactions used a historical foreign-exchange rate convention that was not in accordance with GAAP, and resulted in certain misstatements to the Company's non-operating income related to net foreign exchange gains.  Baxter noted that it had hired experienced external counsel and consultants to conduct the investigation, and had voluntarily disclosed the issue to the SEC.

The Company's share price fell on the day of the announcement, and Plaintiffs filed this lawsuit a few weeks later.  But the share price quickly rebounded.  On February 13, 2020, for example, Baxter announced that its investigation was substantially complete, and presented the preliminary financial impact of the errors.  Baxter's share price increased to more than $93 per share—higher than at any point in the Class Period.  The price increased again one month later, when Baxter formally restated its financial statements for fiscal years 2017-2018 and the first half of fiscal 2019—which reduced the Company's net income by less than eight percent and operating income by less than one percent over the relevant time period.

Plaintiffs filed the amended Complaint three months later.  They allege that CEO José Almeida and CFO James Saccaro made false or misleading statements about Baxter's financial performance, compliance with GAAP, and internal controls, from February through October 2019.  Plaintiffs claim that Almeida and Saccaro "knew (or recklessly disregarded)" that Baxter's financial results were "materially false and misleading when made."  AC ¶ 26.

1

The Complaint falls far short of meeting the PSLRA's rigorous and heightened standards to plead a federal securities law claim. Among other hurdles, Plaintiffs must allege particularized facts giving rise to a strong inference of scienter—*i.e.*, that each Defendant acted with "an intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 319 (2007). To meet this heavy burden, Plaintiffs cannot rest on speculation or conclusory assertions. Rather, Plaintiffs must plead *facts* in great detail demonstrating that *each* Defendant either knew their statements were false at the time they were made, or were deliberately reckless in not knowing. *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). Plaintiffs come nowhere close to satisfying this standard here.

Although it contains more than seventy pages, the Complaint does not allege any particularized facts suggesting that Almeida or Saccaro knew (or were deliberately reckless in not knowing) about the accounting errors that Plaintiffs now claim to be fraud. Unlike in most securities class actions, Plaintiffs do not point to a single document, communication, witness allegation (or anything else) that even attempts to show the Individual Defendants knew: (1) *that* the intra-Company transactions at issue occurred; (2) *for what purpose* the transactions were undertaken; (3) *how* Baxter was calculating the foreign-exchange gains and losses on those transactions; (4) *what* the appropriate accounting treatment should be for those gains and losses; (5) *whether* the Company was applying the proper accounting treatment; and (6) *if* improper accounting treatment rendered any of the Challenged Statements materially false and misleading at the time they were made. Indeed, the Complaint alleges nothing tying Almeida or Saccaro to the receipt of any evidence contradicting the Challenged Statements *at all*. Plaintiffs thus have failed to establish a strong inference of scienter, and the Complaint should be dismissed.

Rather than allege particularized facts, Plaintiffs instead offer a litany of assertions why

2

the Court should draw a strong inference of scienter even in the absence of facts. All are meritless under well-established law. For example, Plaintiffs point to the mere existence of GAAP deviations to argue that Almeida and Saccaro must have known about the alleged fraud. But the law is clear that a failure to follow GAAP is not enough to create a strong inference of scienter. Plaintiffs' other scienter arguments—*e.g.*, Defendants' high-level positions and "access" to unspecified non-public information, boilerplate SOX certifications, an alleged motivation to make the Company appear profitable and desire to receive bonuses and stock options, the fact that the Company had used a historical foreign-exchange rate convention for several years, and the departure of a non-defendant—repeatedly have been rejected as insufficient to establish a strong inference of scienter. Indeed, they all share a common deficiency: not one links Almeida or Saccaro to particularized information contradicting their public statements. Any inference of scienter is further undermined by Plaintiffs' failure to allege that the Individual Defendants sold a single share of Baxter stock in the Class Period. Almeida and Saccaro, like other shareholders, stood to lose a lot of money if Baxter's price fell.

Plaintiffs' lawsuit is precisely the type of "fraud by hindsight" that the Seventh Circuit forbade over a decade ago. *See Higginbotham*, 495 F.3d at 760. Indeed, upon learning of potential accounting errors, Defendants enhanced their controls, commenced an investigation, hired outside advisors, and self-reported to (and is cooperating with) the SEC. The only reasonable inference from Plaintiffs' Complaint is that Defendants undertook a conscious effort to investigate and fix potential errors—not that they deliberately determined to deceive. The Complaint should be dismissed.

## II.    BACKGROUND

### A.    Baxter and the Individual Defendants

Baxter is an Illinois-based corporation that provides a broad range of healthcare products

3

to hospitals, kidney dialysis centers, nursing homes, rehabilitation centers, doctors' offices, and patients throughout the world. AC ¶ 27. José Almeida has served as Baxter's Chairman, President, and CEO since 2016. *See* AC ¶ 24; *see also* Ex. 1. James Saccaro joined Baxter in 2002 as manager of strategy for Baxter's BioScience business, and has assumed positions of increasing responsibility over the years, including serving as Corporate Vice President and Treasurer from 2011 to 2013. *See* AC ¶ 25; *see also* Ex. 1. He has served as Baxter's CFO since July 1, 2015, after rejoining the Company in 2014.

Baxter operates its business through three geographic segments—the Americas, EMEA, and APAC—and has more than fifty subsidiaries in over twenty countries. AC ¶ 53; Ex. 2 at 1. It sells products in over one-hundred countries. AC ¶ 23. The Company's global footprint has allowed it to expand "access to healthcare in emerging and developed countries." *Id.* ¶ 30. Each segment provides healthcare providers and patients with essential products, including sterile intravenous products, premixed drugs and drug-reconstitution systems, pre-filled vials and syringes for injectable drugs, intravenous nutrition products, parenteral nutrition therapies, infusion pumps, inhalation anesthetics, biosurgery products, and life-saving products to serve patients with end-stage renal disease and kidney injuries. *Id.* ¶ 28; Ex. 2 at 1. Baxter's annual revenue exceeds $10 billion, and its annual operating income exceeds $1.2 billion. *See* AC ¶ 29; Ex. 3 at 50, 67-69.

### B. Baxter's Accounting for Foreign-Currency Transactions

As a U.S.-based company, Baxter reports its financial figures in U.S. dollars. But with operations throughout the world, Baxter and its subsidiaries often enter into transactions denominated in currencies other than U.S. dollars—indeed, the Company transacts business in over ten different currencies. *See* AC ¶ 29. Before reporting its financial figures, each Baxter entity must convert the value of monetary assets and liabilities from the particular foreign currency

to the reporting currency of that entity by using foreign-currency exchange rates. Decades ago, Baxter developed a two-step process to convert foreign-currency denominated assets and liabilities into their reporting currencies. *See id.* ¶ 126.

All foreign-currency transactions in a particular month initially were measured using exchange rates from a specific date near the middle of the previous month. *Id.* ¶ 10. Because exchange rates often change during the course of a month, Baxter entities "re-measured" their foreign-currency denominated assets and liabilities at the end of the month using exchange rates from a specified date near the middle of the current month. *Id.* ¶ 11. If the relevant exchange rate changed between initial measurement and re-measurement, Baxter may have recognized a gain (or a loss). Baxter reported those gains and losses on the "other income (expense)" line of its income statement—below the "operating income" line. *Id.* ¶ 6.

GAAP instructs that foreign-currency transactions initially should be measured using the exchange rate on the date of the particular transaction, and should be re-measured using the exchange rate at the end of the relevant period. *Id.*; *see also id.* ¶ 43. But the same GAAP topic contemplates that other exchange-rate conventions may be used, noting that "[l]iteral application of the standards . . . might require a degree of detail in record keeping and computations that could be burdensome as well as unnecessary to produce reasonable approximations of results." Ex. 4; AC ¶ 43. More specifically, because using "the exchange rates at the dates the numerous revenues, expenses, gains, and losses are recognized is generally impractical," using "time- and effort-saving methods to approximate the results of detailed calculations is permitted" under GAAP. Ex. 4. Indeed, although Baxter used its foreign-exchange rate convention for more than ten years, Plaintiffs do not allege there were material errors in the Company's financial statements for anywhere close to that length of time. *See* AC ¶ 39 (financial statements are "reliable" where they

are "reasonably free from error").

**C.** **Baxter Identifies and Discloses Errors in Its Accounting for Certain Intra-Company Transactions**

Many years after Baxter began using the historical exchange-rate convention for foreign-currency transactions, certain *intra-Company* transactions were undertaken after the relevant exchange rates were set for the month, for the purpose of generating non-operating (*i.e.*, not related to the Company's revenues and profits from sales to customers) foreign-exchange gains or to avoid non-operating foreign-exchange losses. *See* AC ¶¶ 82, 87. On October 24, 2019, Baxter announced that it had begun an investigation into these transactions. *Id.* ¶ 82; Ex. 5. The Company explained that the intra-Company transactions "resulted in certain misstatements in previously reported *non-operating* income related to net foreign exchange gains." AC ¶ 82 (emphasis added); Ex. 5. Baxter's Audit Committee oversaw the investigation, and hired independent external advisors to assist. Ex. 5. Baxter also voluntarily reported the investigation to (and is cooperating with) the SEC. *See* AC ¶ 84. Baxter's share price fell on the day of the announcement—and this lawsuit quickly followed. *See* Dkt. No. 1; AC ¶ 85.

**D.** **Baxter Announces the Investigation Results, and Its Share Price Increases**

On February 13, 2020, Baxter announced that its investigation into the financial-statement impact of the intra-Company transactions was substantially complete. AC ¶ 88. As a result, and in consultation with the Audit Committee and PwC, Baxter planned to restate certain of its financial statements. *Id*. ¶¶ 87-88. The restated financials were not limited to the intra-Company transactions undertaken for the purpose of generating foreign exchange gains or avoiding losses. Rather, Baxter analyzed and quantified *all* intra-Company loan receivables and payables transactions that used the Company's historical foreign-exchange convention without regard to the purpose of the transaction, as well as other immaterial misstatements discovered as part of the

investigation. Ex. 6; *see also* AC ¶ 79 n.7. Following this announcement, Baxter's share price *increased* to $93.14 (higher than at any point during the Class Period). Ex. 7.

A month later, Baxter filed its restated results for fiscal years 2017 and 2018, and for the first and second quarters of fiscal year 2019. AC ¶ 92. Baxter reduced its net income figures by 16%, 4.8%, and 5%, respectively, for fiscal year 2017, fiscal year 2018, and the first half of fiscal year 2019. *See* AC ¶¶ 78, 95. Of the reductions, $191 million reflected adjustments to foreign-exchange gains and losses on monetary assets and liabilities denominated in foreign currency (*id.* ¶ 79)—amounting to less than 8% of the Company's $3 billion in net income over the relevant period. *Id.* ¶ 87 (FY17 – 1H 2019 net income totaled approximately $3 billion). Notably, the restatement had almost no impact on the Company's *operating* income (*i.e.*, the profits earned from Baxter's sales to customers): it declined 0.2% in fiscal 2017, 1% in fiscal 2018, and 0.8% in the first half of 2019. *See* Ex. 3 at 67-69, 147. Following the release of the restated figures, Baxter's share price again *increased*, this time by nearly $9 per share.[1] Ex. 7. On June 25, 2020, Plaintiffs filed their amended Complaint. Defendants now move to dismiss.

## III. ARGUMENT

Plaintiffs' claims are subject to the exacting and heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA.[2] *See Tellabs*, 551 U.S. at 313, 319; *City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 757 (7th Cir. 2013) (plaintiffs in securities class actions face a "heavy" pleading burden). Rule 9(b) requires Plaintiffs

---

[1] Plaintiffs allege that Baxter's reported "retained earnings" were overstated by $551 million at the beginning of the Class Period. *See* AC ¶ 8. They acknowledge, however, that the restatement reduced retained earnings by less than 4%. *See id.* ¶ 95.

[2] To assert a claim under Section 10(b) and Rule 10b-5, Plaintiff must adequately allege: (1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

to "state with particularity" the "circumstances constituting fraud or mistake," meaning Plaintiffs must describe "the who, what, when, where, and how" of the fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). The PSLRA is even more demanding and requires Plaintiffs to "specify each statement alleged to have been misleading," and the reason or reasons why the statement is misleading. 15 U.S.C. § 78u-4(b)(1).

The PSLRA also requires Plaintiffs to state with particularity facts giving rise to a strong inference of scienter—*i.e.*, that each Defendant acted with "an intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319. This requires Plaintiffs to allege scienter "in great detail" through facts that (i) demonstrate *each* Defendant "knew the statement [at issue] was false" (*Boeing*, 711 F.3d at 756); or (ii) "constitute strong circumstantial evidence of deliberately reckless or conscious misconduct" (*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)). The recklessness standard is "much closer to one of intent" (*In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014)): each statement must constitute an "*extreme departure* from the standards of ordinary care" that presents a danger of misleading "either known to the defendant or so obvious that the defendant must have been aware of it" (*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) (emphasis added)). A complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018). Accordingly, in determining whether a plaintiff adequately has pled scienter, the Court must consider all reasonable inferences, including "plausible opposing inferences." *Tellabs*, 551 U.S. at 323.

Plaintiffs' Complaint does not meet these exacting requirements, and it should be dismissed.[3]

### A.      Plaintiffs Fail to Allege a Strong Inference of Scienter

It is well settled that a plaintiff cannot establish a strong inference of scienter through speculation. *Pugh v. Tribune Co.*, 521 F.3d 686, 700 (7th Cir. 2008) (no scienter where plaintiffs alleged "nothing but pure speculation"). Plaintiffs "must allege specific facts"—not conclusory *assertions*—showing that *each* Defendant knew he was making false or misleading statements, or was deliberately reckless in not knowing. *Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1255 (N.D. Ill. 1997) ("[P]laintiff must do more than speculate as to defendants' motives or make conclusory allegations of scienter.").

Plaintiffs come nowhere close to satisfying this exacting standard. Notably absent from the Complaint is a single particularized fact suggesting—much less showing—that prior to making a Challenged Statement, Almeida or Saccaro knew about the intra-Company transactions at issue, the purpose of those transactions, the accounting for the transactions, or that such accounting was inaccurate. *See Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 801-02 (N.D. Ill. 2007) ("plaintiffs do not allege specific facts that demonstrate that any of the defendants knew about the deficiencies in the Company's internal controls" or non-compliance with GAAP). Plaintiffs do not allege, for example, that the Individual Defendants reviewed internal documents or attended meetings where these intra-Company transactions (let alone the accounting for such transactions) were discussed. *See Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1166 (E.D. Wisc. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018) (dismissing action where complaint alleged no facts tying "any individual defendant directly to the receipt of information or knowledge that

---

[3] Because Plaintiffs' Section 10(b) claim fails, they cannot establish control-person liability under Section 20(a). *See In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 1003-04 (E.D. Wisc. 2009).

would contradict a statement he made during the Class Period").  To be sure, Plaintiffs baldly assert that the Individual Defendants had "unfettered access to nonpublic information."  AC ¶ 26.  But Seventh Circuit case law is clear that "a complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information."  *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 602 (7th Cir. 2019).

Nor do Plaintiffs attempt to bolster their scienter allegations by offering statements from current or former employees who communicated with Almeida or Saccaro—and thus purport to have insight into their states of mind.  On the contrary, Plaintiffs do not allege a single specific fact regarding the Individual Defendants' states of mind at all.  The Complaint should be dismissed on this ground alone.  *See, e.g.*, *Wyche v. Advanced Drainage Sys.*, 2017 WL 971805, at *14 (S.D.N.Y. Mar. 10, 2017) (no scienter where plaintiff had "not identified contemporaneous facts, reports, or statements to which Defendants had access and which contained information contrary to the information Defendants conveyed to the public").

Indeed, instead of particularized facts, Plaintiffs offer only scattershot assertions why Almeida and Saccaro must have known about the alleged fraud.  Whether considered individually or in combination, all of them fail to establish a strong inference of scienter.  *See Fulton Cty. Emps.' Ret. Sys. v. MGIC Inv. Corp.*, 2010 WL 601364, at *13 (E.D. Wisc. Feb. 18, 2010) ("plaintiff cannot simply rest on its suspicion that alarm bells must have been ringing," "[r]ather, it must plead facts that transform this suspicion into a cogent inference that alarm bells were, in fact, ringing"); *see also Roth*, 527 F. Supp. 2d at 798-99 (allegation that defendants "must have known about accounting fraud" is "not a particularized basis for inferring scienter").

### 1. GAAP Deviations Do Not Establish a Strong Inference of Scienter

Plaintiffs first argue that the Individual Defendants "repeatedly spoke to investors on the precise topics at issue here and signed the Company's SEC filings reporting the admittedly false

financial results," which, according to Plaintiffs, means that "Defendants were knowledgeable about and actively involved in Baxter's accounting practices." AC ¶ 108. Plaintiffs have alleged no particularized facts supporting these assertions, and they fail to establish a strong inference of scienter for multiple reasons.

To start, courts repeatedly have concluded that a failure to follow GAAP, or the "mere publication of a restatement," "is not enough to create a strong inference of scienter." *See, e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009); *Roth*, 527 F. Supp. 2d at 797 ("mere allegations of GAAP violations, the restatement of income, or statements regarding the internal controls of a company that are later proven to be false, are not sufficient to demonstrate that those who made the statements committed securities fraud"); *Higginbotham v. Baxter Int'l Inc.*, 2005 WL 1272271, at *7 (N.D. Ill. May 25, 2005) ("Overstatements of income or revenues are not by themselves sufficient to draw an inference of scienter"). This is so because GAAP is "far from being a canonical set of rules." *In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 890, 980 (8th Cir. 2002). Indeed, GAAP "tolerate[s] a range of reasonable treatments, leaving the choice of alternatives to management." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 621 (9th Cir. 2017).

To establish a strong inference of scienter based on a GAAP deviation, Plaintiffs must present particularized facts showing the Individual Defendants knew: (1) the applicable accounting rule; (2) how Baxter was interpreting the rule in the context of the relevant intra-Company transactions; and (3) "most critically," that the Company's interpretation deviated from GAAP. *See, e.g.*, *Okla. Firefighters Pension & Ret. Sys. v. Ixia Corp.*, 50 F. Supp. 3d 1328, 1361 (C.D. Cal. 2014); *Kohl's*, 266 F. Supp. 3d at 1166; *Higginbotham*, 495 F.3d at 757-58; *see also In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1046 (N.D. Cal. 2009) ("Plaintiffs

11

must plead facts that supports [sic] an inference that Defendants were actually aware that (or reckless with respect to whether) the accounting was incorrect."). Plaintiffs plead none of this.

First, Plaintiffs do not allege any facts—much less particularized facts—establishing that Almeida or Saccaro knew which rules applied to foreign-currency accounting for the relevant intra-Company transactions. At most, Plaintiffs quote Almeida's response to a question at a shareholder meeting that "specific rules" governed which numbers can be included in non-GAAP financial figures. AC ¶ 151. Saccaro added that Baxter employed a "very rigorous process by which we assess what adjustments are made to GAAP numbers." *Id*. ¶ 152. But neither the question—nor the answers—had anything to do with accounting treatment for intra-Company transactions at issue. On the contrary, Almeida's and Saccaro's answers did not reference *any* particular accounting principle. Acknowledging that SEC guidance for non-GAAP adjustments exists says nothing about whether the Individual Defendants knew of the specific accounting principles at issue here. *Okla. Firefighters Pension & Ret. Sys. v. Ixia Corp.*, 2015 WL 1775221, at *26 (C.D. Cal. Apr. 14, 2015) (alleging "broadly" that an accounting rule applies does not establish scienter).

Second, the Complaint does not contain a single fact showing that Almeida or Saccaro knew *how* GAAP principles were being applied to account for the intra-Company transactions at issue. *See, e.g.*, *Roth*, 527 F. Supp. 2d at 798 (dismissing complaint where plaintiffs did not "allege that the individual defendants actually knew about" the underlying issues). The Complaint fails to allege facts showing *who* was involved in determining the foreign-exchange rates for the intra-Company transactions, *what* rates they decided to use, *how* they selected those rates, or *why* they did so. Instead, Plaintiffs offer a hypothetical transaction in which "Baxter's U.S. corporate entity" decided "on December 20, 2017" to "create an intercompany foreign exchange transaction for the

12

purpose of creating gains necessary to meet certain year-end earnings-per-share expectations." AC ¶ 53. This is the opposite of particularized pleading required by the PSLRA—all of the assumed "facts," along with the conclusion, are by definition entirely speculative. *Borsellino*, 477 F.3d at 507 (plaintiffs must plead "the who, what, when, where, and how" of the fraud). Most importantly, even if Plaintiffs' hypothetical were true (it is not), it still does not suggest that *Defendants* knew the transactions were occurring, much less how the relevant accounting principles were being applied to those transactions. *See In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 246 (8th Cir. 2008) ("If one makes a list of the numerous GAAP violations – and then, with respect to each violation on the list, looks for *specific* allegations in the complaint linking one of the individual defendants to the violation – one will almost invariably come up empty handed.").

Finally, even if Plaintiffs alleged particularized facts showing that "Defendants were knowledgeable about and actively involved in Baxter's accounting practices" (again, Plaintiffs have not), that still falls far short of establishing a strong inference of scienter. Knowing "an accounting rule and knowing that it is not being followed by your company's accountants are two different things." *See Kohl's*, 266 F. Supp. 3d at 1166. Plaintiffs fail to allege a single fact suggesting that Almeida or Saccaro knew of the intra-Company transactions at issue, the purpose of the transactions, the accounting treatment for the transactions, or that the accounting treatment deviated from GAAP—and then made the Challenged Statements anyway.

### 2. The Core-Operations Doctrine Does Not Apply

Plaintiffs next contend that scienter should be inferred because the alleged fraud involved business "core to Baxter's financial performance"—*i.e.*, its operations "outside the United States." AC ¶ 105. The Seventh Circuit has "expressly criticized" these types of conclusory assertions because they equate knowledge of *facts* with knowledge of *fraud*. *Pugh*, 521 F.3d at 694. There is a "big difference" between knowing about foreign operations and knowing that certain intra-

13

Company transactions had been undertaken for the purpose of generating *non-operating* foreign exchange gains or avoiding losses—and could result in accounting errors. *Higginbotham*, 495 F.3d at 758. Indeed, courts have rejected nearly identical allegations as an improper "end-run around the requirement that plaintiffs set forth particularized facts to suggest that defendants acted knowingly or recklessly." *See Roth*, 527 F. Supp. 2d at 799; *see also, e.g.*, *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *29 (S.D.N.Y. Apr. 2, 2020) (the core operations doctrine "does not independently establish scienter") (citation and quotation omitted); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 816 (S.D.N.Y. 2018) (the core operations doctrine "at most constitutes 'supplemental support' for alleging scienter"); *In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006) (citing cases and rejecting "must have known" allegations).

In any event, Plaintiffs' premise—that the intra-Company transactions at issue are "core" to Baxter's business (AC ¶ 105)—is wrong. Baxter's "core operation" is providing renal and hospital products to health providers, not the accounting treatment for certain intra-Company transactions. *See Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *18 (S.D.N.Y. July 23, 2018) ("USPH's core operation is operating outpatient physical therapy clinics, not accounting for its managing therapists non-controlling interests."). The restatement reduced Baxter's *operating* income (*i.e.*, the income generated from its actual *operations*) by less than 1%. *See supra* Section II.D; *see also Reilly*, 2018 WL 3559089, at *18.[4] Put simply, the Company's technical accounting "determinations are not part of [its] core operations." *Ixia*, 2015 WL 1775221, at *31-32; *see also, e.g.*, *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 628

---

[4] Indeed, Plaintiffs' argument improperly conflates *all* of the Company's international business with the limited transactions at issue here. *Compare* AC ¶ 105 *with, e.g.*, *id.* ¶¶ 52, 77, 78, 81, 82 (acknowledging that the restatement pertained to certain intra-Company transactions, not *all* of the Company's international operations).

14

(S.D.N.Y. 2005) ("plaintiffs allege no facts suggesting that the accounting treatment of the Mahonia transactions as trades rather than as loans was at the core of JPM Chase's business").

### 3. The Fact That Baxter Used the Historical Rate Convention for Years Undercuts an Inference of Scienter

Plaintiffs also allege that Baxter's use of the historical foreign exchange rate convention for over ten years supports a strong inference of scienter. AC ¶ 126. But use of the rate convention itself was not the issue. Rather, the application of that convention to certain intra-Company transactions undertaken after the exchange rates already were known resulted in misstated non-operating gains and losses. Indeed, Plaintiffs concede that these intra-Company transactions did not occur until "years after" the historical rate convention was adopted. *Id.* Regardless, the fact that this narrow issue was "not discovered" for years underscores its "subtle[ty]." *Webb v. SolarCity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018).

To this end, Plaintiffs note that PwC "expressly recognizes GAAP's requirements for measuring and recording intercompany foreign exchange transactions, and instructs its auditors and clients to account for those transactions consistent with those obligations." AC ¶ 44. Critically, however, Plaintiffs do not allege that PwC or anyone else ever told Almeida or Saccaro that application of the rate convention to the intra-Company transactions at issue could result in errors, let alone that Almeida or Saccaro dismissed any such concerns. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at \*8 (S.D.N.Y. Dec. 16, 2014). On the contrary, after the Company learned of the potential error, it enhanced its controls, commenced an investigation, and informed both PwC and the SEC. AC ¶ 84. These actions demonstrate "a pursuit of truth rather than reckless indifference to the truth." *Higginbotham*, 495 F.3d at 758 ("Knowing enough to launch an investigation . . . is a very great distance from convincing proof of intent to deceive.").

15

### 4. Saccaro's Prior Position Does Not Support a Strong Inference of Scienter

Plaintiffs next assert that Saccaro "knew" about the alleged fraud because he served as Baxter's Treasurer from 2011-2013. AC ¶¶ 111-13. It is well settled, however, that Saccaro's position "within the company prove[s] nothing about fraud or knowledge thereof," but rather is "exactly the type of generalized allegation[] the court must disregard under the PSLRA." *Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 746-47 (S.D. Ind. 2009); *see also Arbitrage Event-Driven Fund v. Tribune Media Co.*, 2020 WL 60186, at *10 (N.D. Ill. Jan. 6, 2020) (same); *Societe Generale Sec. Servs., GmbH v. Caterpillar, Inc.*, 2018 WL 4616356, at *8 (N.D. Ill. Sept. 26, 2018) ("senior positions within [the Company] also do not suggest scienter without additional support").

To anchor a strong inference of scienter upon Saccaro's position at the Company, Plaintiffs must allege "additional detailed allegations establishing" his "*actual exposure* to the accounting problem." *Yates v. Muni. Mortg. & Equity, LLC*, 744 F.3d 874, 890 (4th Cir. 2014). Plaintiffs offer no factual allegations in this regard, much less detailed ones. Instead, Plaintiffs state repeatedly that Saccaro was "personally responsible" for the transactions at issue and assume he knew about them because they "occurred under his watch." AC ¶¶ 112-13. These conclusory assertions, once again, fall far short of the particularized *facts* necessary to establish a strong inference of scienter, especially given that it is the accounting for the transactions, not the transactions themselves, that are the source of the errors. *See Bally*, 2006 WL 3714708 at *8 (rejecting scienter allegations based on officers' positions where "there are no facts alleged to bolster this allegation").

### 5. The Departure of Baxter's Former Treasurer Is Irrelevant to Scienter

Plaintiffs' next argument—that former Treasurer Scott Bohaboy's exit from the Company

16

supports a strong inference of scienter—fails for multiple reasons. AC ¶ 114. To start, Bohaboy's state of mind is irrelevant to the scienter inquiry because he is not alleged to have made any of the Challenged Statements. *See Kohl's*, 895 F.3d at 940 (knowledge of non-defendant employees "is immaterial to the *scienter* of those making the statements").

But even if Bohaboy's state of mind were relevant (it is not), Plaintiffs do not allege any particularized facts surrounding Bohaboy's exit—just the opposite, Plaintiffs say that Bohaboy left "without explanation." AC ¶ 114. Regardless of the circumstances of his departure, "terminations by themselves do not support a strong inference of scienter." *In re Downey Sec. Litig.*, 2009 WL 736802, at *10 (C.D. Cal. Mar. 18, 2009). Indeed, after "a restatement of earnings," "it is unremarkable that the Company would seek to change its management team." *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1074 (N.D. Cal. 2002). To support scienter, "plaintiff must plead facts *refuting* the reasonable assumption that the resignation occurred as a result of restatement's issuance itself." *See Zucco*, 552 F.3d at 1002 (emphasis added). Plaintiffs allege no facts that even attempt to refute this assumption. *See In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005) ("Most major stock losses are often accompanied by management departures, and it would be unwise for courts to penalize directors for these decisions.").

And even if Plaintiffs had alleged particularized facts linking Bohaboy's exit to the alleged fraud, "it is hard to see" how the departure of an executive "who has not been named as a defendant in this action could create an inference of scienter with respect to" the Individual Defendants. *Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 162 (D. Conn. 2007).

      **6.    Baxter Clawed Back a Portion of the Individual Defendants' Bonuses to Conform Compensation With Actual Performance, Not Because of Misconduct**

Plaintiffs also assert that a strong inference of scienter can be inferred because Baxter's

17

Board of Directors "reduced Almeida's and Saccaro's respective 2019 cash bonuses after considering their responsibility for the Restatement." AC ¶ 124. But this allegation "assumes the fact it is offered to prove." *See Christian v. BT Grp. PLC*, 2020 WL 1969941, at *8 (D.N.J. Apr. 24, 2020). Absent from the Complaint are any facts demonstrating "the clawback constituted punishment for fraudulent acts," or that the decision to reduce the Individual Defendants' cash bonuses was in any way based on misconduct. *Id*. In fact, Plaintiffs' own allegations establish the opposite—that Defendants' compensation was reduced to "conform" the "cash bonuses paid for the years 2015 to 2018 to performance actually achieved." AC ¶ 124. Adjusting executive pay "to reflect actual performance does not give rise to a compelling inference of scienter." *See Christian v. BT Grp. PLC*, 2018 WL 3647213, at *8 (D.N.J. Aug. 1, 2018).[5]

### 7. The Individual Defendants' SOX Certifications Add Nothing to the Scienter Calculus

Similarly unavailing is Plaintiffs' reliance on Almeida's and Saccaro's SOX certifications. AC ¶¶ 127-30. "Boilerplate language" in a company's SEC filings, or "required certifications" under SOX, "add nothing substantial to the scienter calculus." *Zucco*, 552 F.3d at 1003-04; *see also, e.g.*, *In re Hertz Glob. Holdings, Inc*., 905 F.3d 106, 118 (3d Cir. 2018); *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1116 (10th Cir. 2015). Were it otherwise, scienter "would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter under the PSLRA." *Garfield v. NDC Health Corp*., 466 F.3d 1255, 1266 (11th Cir. 2006).

---

[5] Any inference of scienter from the adjustment of executive pay to reflect actual performance is particularly weak here, since the "claw back" reduced the Individual Defendants' total compensation between 2017 and 2019 by less than 3%. *Compare* AC ¶ 17 (alleging Defendants made $55 million between 2017 and 2019) *with id*. ¶ 124 (aggregate reduction in compensation was less than $1.8 million).

Absent "particular facts" demonstrating that Almeida and Saccaro knew of the alleged fraud at the time they signed the certifications, "knew the financial statements overrepresented" Baxter's true earnings, or were aware of a GAAP deviation and "disregarded it," SOX certifications cannot demonstrate fraudulent intent. *Ceridian*, 542 F.3d at 248; *see also In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1205 (10th Cir. 2015) (SOX certifications not indicative of scienter where "they are not accompanied by any particularized facts to support an inference that [defendants] knew [their] sworn SOX statements were false at the time they were made"). Plaintiffs plead none of that here. On the contrary, the Complaint suggests that *after* the Individual Defendants signed the SOX certifications, Baxter learned of the potential issue, commenced an investigation, and then reassessed its conclusions regarding the effectiveness of internal controls.[6] AC ¶¶ 82-84, 129; *see also Wanca v. Super Micro Comput., Inc.*, 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018) ("[T]he malicious inference that Plaintiff[s] draw[] from the SOX Certifications is no more cogent and compelling than an unintended mistake.").

### 8. Plaintiffs' Generic Motive Allegations Repeatedly Have Been Rejected

Finally, Plaintiffs assert that Defendants were "motivated to" make false and misleading statements to "boost" the share price. *See* AC ¶¶ 118, 122. But Plaintiffs never allege that Defendants obtained a "concrete benefit" from any alleged boost—they do not claim that Almeida or Saccaro sold a single share of Baxter stock. Any inference of scienter is thus "negated by the

---

[6] Along the same lines, Plaintiffs argue that scienter should be inferred because had Defendants designed adequate internal controls, they would have discovered the allegedly "fraudulent foreign currency practices." AC ¶ 130. The Seventh Circuit "specifically and repeatedly" has rejected this argument as an improper attempt to establish "fraud by hindsight." *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2011 WL 1303387, at *20 (N.D. Ill. Mar. 31, 2011) (quoting *Higginbotham*, 495 F.3d at 759-60). The "accounting controls were an after-the-fact explanation for why the error had occurred, not a red flag before it was discovered." *Turquoise*, 2014 WL 7176187, at *8.

lack of stock sales by the Individual Defendants during the class period." *Downey*, 2009 WL 736802, at *14; *see also Gillis v. ORX Pharma Ltd.*, 197 F. Supp. 3d 557, 601 (S.D.N.Y. 2016) ("Absent allegations of insider sales during the period of stock-price inflation, there would be no concrete benefit to defendants to justify" the risks of knowingly making false or misleading statements). Indeed, like other shareholders, Almeida and Saccaro "stood to lose a lot of money" if Baxter's share price fell. *See Pugh*, 521 F.3d at 695.

Along the same lines, Plaintiffs claim that Almeida was installed as CEO in 2016 "to improve Baxter's short-term performance and boost the Company's share price." AC ¶ 118. But the desire to boost shareholder returns is an "ordinary and appropriate corporate objective[]" that cannot support an inference of scienter. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002). Indeed, "all corporate managers share a desire for their companies to appear successful," which "does not comprise a motive for fraud." *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 677-78 (D. Colo. 2007).

Plaintiffs also assert that the purported "financial manipulations" were critical to Wall Street analysts' "assessment of the Individual Defendants' performance" because Baxter otherwise would have missed its EPS targets in 2017 and 2018. AC ¶ 14. Plaintiffs do not support this assertion with particularized facts. They present a table purporting to show the Company's EPS guidance and analysts' consensus figures for fiscal years 2016 through 2018 (*id*. ¶ 69), but fail to identify a source for the purported consensus numbers. *See City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1113 (E.D. Wash. 2013) ("Absent an identified source for this data, the Court cannot determine whether Plaintiff's calculations are actual facts—entitling Plaintiff to a presumption of truthfulness—or mere speculation, which does not."). Furthermore, although Plaintiffs acknowledge that Defendants provided "both GAAP and non-GAAP adjusted

20

EPS guidance," their table includes only the Company's *non-GAAP* EPS guidance. AC ¶¶ 69-70. Because the Company did not provide non-GAAP EPS figures as part of the restatement, Plaintiffs "estimate" these figures through their own adjustments and assessments. *Id.* The allegations thus amount to Plaintiffs' speculation, not particularized facts. *Sterling*, 963 F. Supp. 2d at 1113. Even assuming Plaintiffs' EPS numbers were correct (and subject to an apples-to-apples comparison), allegations that Defendants had "a strong incentive to meet Wall Street expectations" are "insufficient to establish scienter." *Cadence*, 654 F. Supp. 2d at 1049. Indeed, the "desire to increase the value of a company and attain the benefits that result, such as meeting analyst expectations . . . are basic motivations not only of fraud, but of running a successful corporation." *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005).

Plaintiffs similarly argue that Almeida and Saccaro were motivated to lie so they could secure larger bonuses and stock awards. *See* AC ¶¶ 122-23. This, too, repeatedly has been rejected as a proper motive by which to infer scienter. Indeed, "if the existence of performance-based compensation and motive to increase short-term profits were enough to establish scienter, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Kohl's*, 895 F.3d at 939-40 (citation omitted); *see also Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012) ("Plaintiffs contend that we should infer scienter because [] top managers had an incentive to make [the company] look good in order to keep their jobs, improve their bonuses, and increase the value of their stock options. This is too generic to satisfy *Tellabs*."). None of Plaintiffs' scienter assertions—whether considered individually or holistically—establishes a strong inference of scienter. The Complaint should be dismissed. *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004) ("Cobbling together a litany of inadequate

21

allegations does not render those allegations particularized in accordance with Rule 9(b) or the PSLRA.").

**B.        Plaintiffs Fail to Allege That Many of the Challenged Statements Are Materially False or Misleading**

Plaintiffs challenge six statements regarding Baxter's:  (1) purported "compliance with GAAP"; and (2) "internal controls over financial reporting."  *See* AC ¶¶ 131-62.  Plaintiffs have not met their heavy pleading burden to show that these statements were false or misleading.

**1.        Plaintiffs Fail to Allege That the GAAP-Compliance Statements Are Materially False or Misleading**

Plaintiffs challenge three statements "concerning Baxter's purported compliance with GAAP."  AC ¶ 147.  They mischaracterize two of the statements and, in so doing, seek inferences that are belied by the text.  *Id.* ¶¶ 149-51; *see Lu v. Align Tech., Inc*., 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019).  And Defendants did not even make the third statement.  AC ¶ 150.

Plaintiffs first claim that "[i]n the 2018 10-K, Defendants represented that Baxter 'prepar[ed] . . . the financial statements in conformity with generally accepted accounting principles (GAAP).'"  AC ¶ 149.  But Plaintiffs omitted critical parts of the statement that changes its meaning.  Baxter actually said that "[t]he preparation of the financial statements in conformity with generally accepted accounting principles (GAAP) requires the company to make estimates and assumptions that affect reported amounts and related disclosures.  Actual results could differ from those estimates."  Ex. 2 at 49.  Plaintiffs do not plead any facts suggesting that the full statement had anything to do with the accounting treatment for the specific intra-Company transactions at issue, let alone that the full statement was false.  *See In re Nuverra Envtl. Lead Case Sols. Sec. Litig.*, 2014 WL 6390322, at *4 (D. Ariz. Nov. 17, 2014) (plaintiffs failed to explain how the alleged wrongdoing "even relates to each alleged statement, let alone why it renders each statement misleading"); *Const. Workers Pension Fund v. Navistar Int'l Corp.*, 2014 WL 3610877,

22

at *5 (N.D. Ill. July 22, 2014) (plaintiffs must "explicitly connect" the challenged statements "to factual allegations demonstrating that they are false"); *Align*, 417 F. Supp. 3d at 1276 (plaintiffs cannot establish falsity by "cherry-picking portions of Defendants' statements").

Similarly, Plaintiffs assert that Saccaro and Almeida "assured" investors at a shareholder meeting that all of Baxter's financial reporting "complied with GAAP." AC ¶¶ 151-52. They did not. In response to a question about the Company's simultaneous reporting of GAAP and non-GAAP financial figures, Almeida stated that "[t]here's specific rules that allow you to exclude some numbers from your GAAP number, but both of them are available to you. We're reporting both of them." Saccaro added: "[w]e have a very rigorous practice by which we assess what adjustments are made to GAAP numbers." *Id.* Contrary to Plaintiffs' suggestion, Defendants did not claim that "Baxter's reporting complied with GAAP" (AC ¶ 151)—they were describing the process to present *non-GAAP* figures, which Plaintiffs do not challenge.[7] *See id.*; *see also, e.g.*, *Alizadeh v. Tellabs, Inc.*, 2015 WL 557249, at *15 (N.D. Ill. Feb. 9, 2015) ("Plaintiffs cannot construe [a] statement into an assurance" where that is not what the statement said); *Teamsters Affiliates Pension Plan v. Walgreens Co.*, 2010 WL 3894149, at *5-6 (N.D. Ill. Sept. 29, 2010) (statement not misleading when read with "[t]he sentence immediately preceding the one at issue").

Finally, Plaintiffs challenge PwC's statement in the 2018 Form 10-K that "the consolidated financial statements . . . present fairly, in all material respects, the financial position of the Company as of December 31, 2018 and 2017, and the results of its operations and its cash flows

---

[7] Companies often provide both GAAP and non-GAAP financial measures to shareholders. A non-GAAP financial measure makes certain adjustments to GAAP accounting figures that can provide shareholders with additional insight about the Company's ongoing operations. *See* SEC Financial Reporting Manual, Topic 8 (Dec. 31, 2009), *available at* www.sec.gov/corpfin.

23

for each of the three years in the period ended December 31, 2018 in conformity with accounting principles generally accepted in the United States of America." AC ¶ 150. Defendants cannot be liable for this statement because they did not make it. *See Janus Cap. Grp. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011) ("the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it"). Furthermore, Plaintiffs plead no facts suggesting that PwC did not believe the statement. It should be dismissed. *See Babin v. Shchekin*, 2017 WL 403568, at *8 (N.D. Ill. Jan. 30, 2017).

### 2. Plaintiffs Fail to Allege That the Internal-Controls Statements Are Materially False or Misleading

Plaintiffs also challenge Defendants' SOX certifications regarding Baxter's internal controls over financial reporting—as well as a related statement in the 2018 Form 10-K regarding Baxter's evaluation of its disclosure controls. *See* AC ¶¶ 148, 156-60. None is actionable.

The SOX certifications "concern the conclusions" of Almeida and Saccaro—which means they are opinions. *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *24-25 (S.D.N.Y. Sept. 9, 2019); *see also, e.g.*, *Lewis v. YRC Worldwide Inc.*, 2020 WL 1493915, at *16 (N.D.N.Y. Mar. 27, 2020) ("SOX certifications are statements of opinion."). To establish falsity, therefore, Plaintiffs "must do more than simply allege that the conclusions were wrong." *AmTrust*, 2019 WL 4257110, at *25. Plaintiffs must identify specific facts suggesting that at the time of certification, Almeida and Saccaro had reached a different conclusion than the one stated—or reached no conclusion at all. *See id.*; *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015). As explained in the scienter section above, the Complaint does not contain a single particularized fact regarding Almeida's or Saccaro's state of mind. *See supra*, Section III.A. These statements are not actionable.

Baxter's statement in the 2018 Form 10-K that following an evaluation, Almeida and

24

Saccaro concluded that the Company's disclosure controls and procedures were effective as of December 31, 2018 (AC ¶ 156), should also be dismissed. Not only is this statement another non-actionable opinion, it also is not false. Plaintiffs neither allege that the referenced "evaluation" did not occur, nor that the Individual Defendants reached a different "conclusion" than the one presented. *See Red Robin*, 505 F. Supp. 2d at 683 ("Plaintiff does not aver that management did not actually evaluate the Company's internal controls and determine them to be effective.").

Indeed, Plaintiffs' falsity assertions rest entirely on Baxter's *post-Class Period* statement that it had "reassessed its conclusions regarding the effectiveness" of internal controls over financial reporting and determined that a material weakness existed as of December 31, 2018. AC ¶ 161. This is precisely the type of "fraud by hindsight" that the PSLRA was enacted to prevent. *See Higginbotham*, 495 F.3d at 760. Plaintiffs have failed to allege how discovery of a material weakness *after* the Class Period "demonstrates that any Defendant was aware of a weakness during the Class Period." *Woolgar v. Kingstone Cos.*, 2020 WL 4586792, at *11 (S.D.N.Y. Aug. 10, 2020); *see also Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, 2016 WL 1261135, at *11 (S.D.N.Y. Mar. 30, 2016) ("no facts pleaded to support an inference that the Company knew, at time of the earlier disclosures . . . that its internal controls were insufficient"). The fact that PwC concluded in the 2018 Form 10-K that Baxter "maintained, in all material respects, effective internal control over financial reporting as of December 31, 2018" further undermines any argument that the Company's statements were false or misleading at the time they were made. *See Woolgar*, 2020 WL 4586792, at *11. These statements should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

25

Dated: August 24, 2020

Respectfully submitted,

By s/ Sean M. Berkowitz
Sean M. Berkowitz (ARDC No. 6209701)
Nicholas J. Siciliano (ARDC No. 6287387)
LATHAM & WATKINS LLP
sean.berkowitz@lw.com
nicholas.siciliano@lw.com
330 N Wabash Ave, Suite 2800
Chicago, Illinois 60611
(312) 876-7700

Whitney B. Weber (ARDC No. 6311007)
LATHAM & WATKINS LLP
whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 931-0600

*Attorneys for Defendants Baxter International Inc.,
José E. Almeida and James K. Saccaro*

26