# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE BAXTER INTERNATIONAL INC. SECURITIES LITIGATION | Case No. 1:19-cv-07786<br><br>District Judge Sara L. Ellis<br><br>Magistrate Judge Jeffrey I. Cummings |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ....................................................................................... 1

II.  SUMMARY OF RELEVANT ALLEGATIONS .......................................................... 3

    A.   Baxter's Operations And The Accounting Framework For FX Transactions ........ 3

    B.   Baxter Violated GAAP's Rules For Recording FX Transactions
         And Created Illusory FX Transactions To Generate False Profits ........................ 4

    C.   Investors Learn About Defendants' Fraud.............................................................. 6

III. ARGUMENT.................................................................................................................... 8

    A.   The CAC Pleads A Strong Inference Of Each Defendant's Scienter ..................... 9

        1.   The CAC Pleads A Strong Inference That Almeida And
             Saccaro Knew Or Recklessly Disregarded That Their Statements
             Were False ...................................................................................................... 10

        2.   Almeida And Saccaro Do Not Raise A More Compelling
             Inference ........................................................................................................ 15

        3.   The CAC Pleads Baxter's Scienter............................................................. 19

    B.   The CAC Adequately Pleads Material Misstatements And Omissions................ 22

        1.   Misrepresentations About Baxter's Compliance With GAAP ................. 22

        2.   Misrepresentations About Baxter's Internal Controls ............................ 24

    C.   The CAC Adequately Pleads Claims Under Section 20(a) ................................. 25

IV.  CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Akorn, Inc. Sec. Litig.*,
  240 F. Supp. 3d 802 (N.D. Ill. 2017) ...............................................................9, 11, 12, 13, 14

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
  505 F. Supp. 2d 662 (D. Colo. 2007)..................................................................................24

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004)..................................................................................13

*Brasher v. Broadwind Energy, Inc.*,
  2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) ...................................................................10, 21

*In re Cadence Design Sys., Inc. Sec. Litig.*,
  654 F. Supp. 2d 1037 (N.D. Cal. 2009) ............................................................................18, 19

*Cenco, Inc. v. Seidman & Seidman*,
  686 F.2d 449 (7th Cir. 1982) ..............................................................................................19

*City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*,
  2012 WL 607578 (N.D. Ill. Jan. 23, 2012).............................................................................12

*City of Roseville Emps.' Ret.Sys. v. Sterling Fin. Corp.*,
  963 F. Supp. 2d 1092 (E.D. Wash. 2013)..............................................................................18

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
  2018 WL 3772675 (D.N.J. Aug. 8, 2018)) ...........................................................................20

*Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*,
  114 F. Supp. 3d 633 (N.D. Ill. 2015) ............................................................................... *passim*

*Cornielsen v. Infinium Capital Mgmt., LLC*,
  916 F.3d 589 (7th Cir. 2019) ..............................................................................................17

*In re Cylink Sec. Litig.*,
  178 F. Supp. 2d 1077 (N.D. Cal. 2001) ...............................................................................16

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ...........................................................................................10, 11

*Desai v. Gen. Growth Props., Inc.*,
  654 F. Supp. 2d 836 (N.D. Ill. 2009) ..................................................................................13

*In re Diamond Foods, Inc., Sec. Litig.*,
   2012 WL 6000923 (N.D. Cal. Nov. 30, 2012) ...................................................................19

*Dobina v. Weatherford Int'l Ltd.*,
   909 F. Supp. 2d 228 (S.D.N.Y. 2012).................................................................14, 24, 25

*In re Equifax Inc. Sec. Litig.*,
   357 F. Supp. 3d 1189 (N.D. Ga. 2019).........................................................................10, 21

*Fleming v. Chi. School of Prof'l Psychology*,
   2017 WL 4310536 (N.D. Ill. Sept. 28, 2017) ...................................................................22

*Fresno Cty. Emps.' Ret. Assoc. v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017).................................................................................22

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ...............................................................................................7

*Haack v. Max Internet Commc'ns, Inc.*,
   2002 WL 511514 (N.D. Tex. Apr. 2, 2002) .......................................................................12

*Higginbotham v. Baxter Int'l Inc.*,
   495 F.3d 753 (7th Cir. 2007) .........................................................................................18, 25

*Holwill v. AbbVie Inc.*,
   2020 WL 5235005 (N.D. Ill. Sept. 1, 2020) ...............................................................15, 22

*Jones v. Corus Bankshares, Inc.*,
   701 F. Supp. 2d 1014 (N.D. Ill. 2010) ...............................................................................18

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
   861 F. Supp. 2d 262 (S.D.N.Y. 2012).................................................................................24

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   513 F.3d 702 (7th Cir. 2008) ..................................................................................... *passim*

*In re MicroStrategy, Inc. Sec. Litig.*,
   115 F. Supp. 2d 620 (E.D. Va. 2000) .................................................................................11

*In re Moody's Corp. Sec. Litig.*,
   599 F. Supp. 2d 493 (S.D.N.Y. 2009).................................................................................21

*In re Motorola Sec. Litig.*,
   2004 WL 2032679 (N.D. Ill. Sep. 9, 2004) .......................................................................12

*Norfolk Cty. Ret. Sys. v. Ustian*,
   2009 WL 2386156 (N.D. Ill. July 28, 2009).......................................................11, 14, 15, 16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015).................................................................................................25

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
   266 F. Supp. 3d 1154 (E.D. Wis. 2017)............................................................17, 18

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
   89 F. Supp. 3d 602 (S.D.N.Y. 2015)........................................................................12

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
   679 F.3d 952 (7th Cir. 2012) ...............................................................................18, 19

*In re Proquest Sec. Litig.*,
   527 F. Supp. 2d 728 (E.D. Mich. 2007)...................................................................21

*Pugh v. Tribune Co.*,
   521 F.3d 686 (7th Cir. 2008) ...................................................................................21

*Rehm v. Eagle Fin. Corp.*,
   954 F. Supp. 1246 (N.D. Ill. 1997) ....................................................................12, 13

*Ross v. Career Educ. Corp.*,
   2012 WL 5363431 (N.D. Ill. Oct. 30, 2012)....................................................9, 13, 19

*S. Ferry LP # 2 v. Killinger*,
   687 F. Supp. 2d 1248 (W.D. Wash. 2009).........................................................12, 13

*In re Salix Pharm., Ltd.*,
   2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016).........................................................15

*In re Scottish Re Grp. Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007).....................................................................25

*SEC v. Sys. Software Assocs., Inc.*,
   145 F. Supp. 2d 954 (N.D. Ill. 2001) ....................................................................8, 9

*SEC v. Ustian*,
   229 F. Supp. 3d 739 (N.D. Ill. 2017) ......................................................................25

*In re Silver Wheaton Corp. Sec. Litig.*,
   2016 WL 3226004 (C.D. Cal. June 6, 2016) ..........................................................19

*Silverman v. Motorola, Inc.*,
   2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) .........................................................10

*Stransky v. Cummins Engine Co., Inc.*,
   51 F.3d 1329 (7th Cir. 1995) ..................................................................................23

*Sutton v. Bernard*,
  2001 WL 897593 (N.D. Ill. Aug. 9, 2001) ...............................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...............................................................................................9, 10, 16, 18

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016) ..................................................................................13

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
  2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016) .........................................................................25

*Woolgar v. Kingstone Cos., Inc.*,
  2020 WL 4586792 (S.D.N.Y. Aug. 10, 2020)..........................................................................25

*Wyche v. Advanced Drainage Sys., Inc.*,
  2017 WL 971805 (S.D.N.Y. Mar. 10, 2017) ...........................................................................17

v

## GLOSSARY OF TERMS

| | |
|---|---|
| "¶¶___" | Citation to paragraphs of the Class Action Complaint and Demand for Jury Trial (ECF No. 34) |
| "2018 10-K" | Baxter International Inc.'s Form 10-K filed with the U.S. Securities and Exchange Commission for the fiscal year ended December 31, 2018 |
| "Almeida" | José Almeida |
| "Baxter" or the "Company" | Baxter International Inc. |
| "Board" | Baxter's Board of Directors |
| "Bohaboy" | Scott Bohaboy |
| "CAC" | Class Action Complaint and Demand for Jury Trial (ECF No. 34) |
| "CEO" | Chief Executive Officer |
| "CFO" | Chief Financial Officer |
| "Class Period" | February 21, 2019 through October 23, 2019, inclusive |
| "Defendants" | Baxter International Inc., José Almeida, and James Saccaro |
| "EPS" | Earnings Per Share |
| "FX" | Foreign Exchange |
| "GAAP" | U.S. Generally Accepted Accounting Principles |
| "Individual Defendants" | José Almeida and James Saccaro |
| "MTD" | Defendants' Memorandum of Law in Support of Motion to Dismiss Class Action Complaint (ECF No. 40) |
| "Plaintiffs" | Louisiana Municipal Police Employees' Retirement System and Varma Mutual Pension Insurance Company |
| "PSLRA" | Private Securities Litigation Reform Act |
| "PwC" | PricewaterhouseCoopers LLP |

vi

| "Restatement" | Baxter International Inc.'s restated financial statements in its Form 10-K filed with the U.S. Securities and Exchange Commission for the fiscal year ended December 31, 2019, correcting previously-reported financial results |
|---|---|
| "Restatement Period" | The scope of the Restatement, covering the Company's "previously issued audited financial statements as of December 31, 2018 and for the years ended December 31, 2018 and 2017 and selected previously reported financial information as of December 31, 2017, 2016 and 2015 and for the years ended December 31, 2016 and 2015" |
| "Saccaro" | James Saccaro |
| "SEC" | U.S. Securities and Exchange Commission |
| "SOX" | Sarbanes-Oxley Act of 2002 |

I.       **PRELIMINARY STATEMENT**

This securities fraud class action arises from Defendants' multi-year scheme to boost their financial results by manipulating straightforward accounting rules to generate and report fake profits, deceiving investors.

Defendants have largely admitted the salient facts about the fraud.  For over ten years, they defied GAAP by assigning an FX rate for intra-Company foreign currency transactions in a given month that was different than the actual rate at which those transactions occurred.  Defendants then exploited this improper accounting by concocting transactions based on this known FX rate "***solely for the purpose of generating non-operating foreign exchange gains or avoiding foreign exchange losses***."[1]  Those illegitimate transactions spawned illusory profits that enabled Baxter to avoid reporting results that missed Wall Street earnings estimates.  Defendants' misconduct was carried out through Baxter's Treasury department, led during the Class Period by its since-fired Treasurer, Scott Bohaboy, under the close watch of Defendants Almeida and Saccaro.  In fact, Saccaro himself served as Baxter's Treasurer from 2011 to 2013, during the admitted period of improper accounting and fabrication of profits.

Since over half of Baxter's revenue is from outside the U.S., the conversion of foreign currency into U.S. dollars was an important, if not mechanical, task.  The accounting treatment for the transactions at issue here is prescribed by GAAP and is straightforward.  In converting non-U.S. dollar transactions to be booked in U.S. dollars, Baxter was obligated to use FX rates that were ***current*** as of the day of the transaction.  In defiance of GAAP, Baxter applied a stale FX rate—from the middle of the prior month—to certain FX transactions with its own subsidiaries to generate paper profits.  This, in essence, is like being able to hand-pick the winning lottery numbers

---

[1] Unless otherwise stated, all emphasis is added and all internal quotations and citations are omitted.

1

before you buy your ticket. The result: for *every quarter dating back to at least 2017*, Baxter created positive FX gains that produced hundreds of millions of dollars of illusory profits that Defendants falsely reported during the Restatement Period. Defendants have admitted this was pure manipulation undertaken *solely* to create fake profits and avoid losses.

When the market finally learned the truth about Defendants' deceit, Baxter's market capitalization shed $4 billion in a single day. As one analyst reported on the market's reaction, "[r]evelations of today's nature are rare, and the impacts of Baxter's FX gains on the P&L have not been immaterial." In the months that followed, Baxter restated years of admittedly false financial results, wiping out $200 million in profits and $1 billion in retained earnings.

Boxed in by Baxter's clear admissions, Defendants do not dispute that they falsely reported material financial results or made material misrepresentations about foreign currency fluctuations. Nor do they meaningfully address Baxter's scienter, which provides an independent basis to sustain Plaintiffs' allegations under controlling Seventh Circuit law. Rather, in an attempt to distance themselves from their admissions, Almeida and Saccaro mount an implausible scienter defense, contending they were completely in the dark about their Company's admitted misconduct. In support of this untenable defense, Almeida and Saccaro argue that the CAC fails to allege they *knew* their statements were false or that they had motive to engage in fraud. This excuse collapses under scrutiny and misstates the law, which is clear that scienter (i) may be established by knowledge *or* severe recklessness and (ii) does not require motive.

To start, the CAC pleads a wealth of facts establishing Almeida's and Saccaro's recklessness. For example, these Defendants oversaw the Treasury, wherein the at-issue GAAP violations and subsequent Restatement resulted from deliberate, Company-wide, out-in-the-open misconduct, not innocent accounting errors or mistakes. These were not complex accounting rules

of unclear application, but pervasive, repetitive violations of straightforward rules that Baxter applied in its day-to-day operations for over a decade, including while Saccaro served as Treasurer, all to inflate profits. Indeed, the Individual Defendants personally reviewed, approved, and reported *every financial result* during the Restatement Period that Baxter admits was materially false, certified (and purportedly designed) Baxter's controls over financial reporting, and spoke often about Baxter's income from foreign currency transactions and its accounting. Red flags, like unfailing quarter-after-quarter FX gains that defied natural market forces, further put Almeida and Saccaro on notice. Thus, even if credited, their story proves only that they were reckless in ignoring obvious signs of fraud, which amounts to scienter.

Moreover, though not required, the CAC does, in fact, paint a compelling picture of Almeida's and Saccaro's motive: the fraud enabled Baxter to hit key performance targets, triggering tens of millions of dollars in stock and cash bonuses for each of them (portions of which were clawed back once the fraud was revealed). These particularized allegations contradict Almeida's and Saccaro's attempt to stamp their own greed as generic and speculative.

Despite largely conceding falsity, as a fallback to their flawed scienter arguments, Almeida and Saccaro claim that a subset of their statements about Baxter's internal controls and compliance with GAAP in reaching and reporting the admittedly false results were somehow above-board. These challenges defy common sense and, in any event, are incompatible with the CAC.

For the reasons below, Defendants' motion should be denied.

## II.      SUMMARY OF RELEVANT ALLEGATIONS

### A.      Baxter's Operations And The Accounting Framework For FX Transactions

Baxter transacts significant business outside of the U.S., and generates a majority of its revenue in foreign markets. ¶29. A sizeable portion of Baxter's assets and liabilities are denominated in foreign currencies. ¶¶29, 45. As a U.S.-listed company, Baxter reports its

3

financial results in U.S. dollars (i.e., its functional currency). Accordingly, and as required by GAAP[2], Baxter must assign the "spot" FX rate to foreign transactions at the time the transaction is entered into (the "Initial Measurement") and then, again, the "spot" FX rate when books are closed at the end of the reporting period (the "Subsequent Measurement"). ¶¶43, 49. The responsibility for properly applying this clear accounting rule resides exclusively with Baxter's central corporate headquarters in Chicago, overseen by its Treasurer and CFO. ¶¶5, 16, 31. Bohaboy served as Baxter's Treasurer during the Class Period, a post previously filled (from 2011 to 2013) by Defendant Saccaro, Baxter's CFO during the Restatement Period. ¶¶16, 111-17.

If FX rates differ between the Initial Measurement and Subsequent Measurement dates, a gain or loss on the underlying transaction results. ¶45. For example, if the U.S. dollar strengthens against the Euro between the Initial Measurement date of a Euro-denominated transaction and the Subsequent Measurement date, Baxter must record a loss on the transaction, in U.S. dollars, on its income statement. ¶¶47, 53-54. Likewise, if the Euro strengthened against the U.S. dollar in the same period, Baxter would record a gain in U.S. dollars on its income statement. *Id*.

**B.      Baxter Violated GAAP's Rules For Recording FX Transactions And Created Illusory FX Transactions To Generate False Profits**

Defendants have admitted that at all relevant times, Baxter employed an accounting convention for FX transactions that violated GAAP. ¶¶82, 87, 93-94. Specifically, rather than use the prevailing spot FX rate as of the date of the transaction, "all foreign currency transactions in a given month were initially measured using exchange rates from a specified date near the middle of the previous month." ¶¶10, 49, 51. And instead of remeasuring each transaction at the reporting period's end using the requisite "current exchange rate," "all foreign currency denominated

---

[2] More broadly, GAAP required Defendants to provide materially complete and accurate information to investors in the Company's financial reports filed with the SEC. ¶32; *see also* ¶¶34-39.

monetary assets and liabilities were subsequently remeasured at the end of each month using exchange rates from a specified date near the middle of the then current month." ¶49.

Defendants further admitted that these practices were deliberate and "undertaken, after the related exchange rates were already known, *solely for the purpose of generating non-operating foreign exchange gains or avoiding foreign exchange losses*." *Id*. Put differently, Baxter engineered transactions solely to take advantage of favorable known historical FX rates on those conversions, enabling Defendants to artificially boost profits and avoid losses. *Id*.

Because Baxter measured foreign-currency-denominated monetary assets and liabilities with a known FX rate from roughly the middle of the prior month—rather than the FX rate current at the time of measurement—the Company could hand-pick from the many currencies in which Baxter operated to exploit FX rates by deliberately entering into illusory transactions with its foreign subsidiaries with knowledge, and for the sole purpose, that it would result in a gain due to FX rate changes. ¶¶53-55. Defendants' scheme was akin to somehow betting on a sporting event after knowing the result—no sportsbook would allow such a wager, and neither does GAAP.

Defendants then misled investors about Baxter's financial performance based on inflated income improperly derived from FX rate fluctuations. They falsely reported uniformly positive FX gains on, and income from, foreign currency transactions every quarter during the Restatement Period, and identified such income as a key driver of Baxter's positive financial results. ¶¶48, 61-62, 132-46. These phony transactions had a significant impact on various line items of Baxter's financial statements, primarily inflating by over $200 million the "Other (income) expense, net" line item of Baxter's income statements. ¶¶43, 78. Baxter's inflated "Other (income) expense, net" line item also carried through to other important metrics, resulting in overstatements to reported net income, EPS, and retained earnings, the latter by over $1 billion. ¶¶78, 95 (depicting

5

false reported financial metrics and as restated).

Notably, upon his January 2016 hiring, Almeida was tasked with boosting Baxter's income and stock price. ¶¶118-21. In line with that goal, Baxter's fabricated currency transactions constantly created positive income and, themselves, enabled the Company to meet (and exceed) EPS estimates during the Class Period—a reality that the Restatement made clear (¶69):

| | (1) Company Guidance | (2) Consensus Estimates | (3) Reported EPS | (4) EPS As Restated[5] |
|---|---|---|---|---|
| 2016 | ~1.90 | 1.91 | 1.96 | 1.91 |
| 2017 | ~2.42 | 2.43 | 2.48 | 2.28 |
| 2018 | ~2.99 | 3.00 | 3.05 | 2.90 |

Almeida and Saccaro personally benefited from the alleged fraud, earning incentive compensation in 2017, 2018, and 2019 that totaled over $55 million based on Baxter's inflated performance. ¶¶17, 122-23. In 2020, referencing the Restatement, in a clear rebuke, Baxter's Board clawed back portions of Almeida's and Saccaro's bonuses. ¶¶124-25.

## C. Investors Learn About Defendants' Fraud

On October 24, 2019, Defendants shocked investors when they disclosed intentional, pervasive accounting violations. ¶81. Specifically, Defendants disclosed that Baxter had "used a foreign exchange rate convention historically applied by the Company that was not in accordance with [GAAP]," which enabled intra-Company foreign currency transactions to take place "*after the related exchange rates were already known*." ¶82. Baxter further admitted such transactions were "*undertaken for the purpose of generating foreign exchange gains or losses*." *Id*. Defendants thereby called into doubt years' worth of Baxter's previously reported income from FX gains, and put the market on notice of a potential material weakness in Baxter's internal controls, stating that such controls needed to be "strengthened" and "enhanced." ¶¶83-84. Baxter then disclosed an internal investigation into the misconduct. ¶¶82, 84. In response to that news, Baxter's share price plunged over 10% that day, erasing $4 billion in market capitalization.

6

¶¶3, 85. Analysts were stunned. Barclays, for example, called Defendants' revelation "surprising news," while Morgan Stanley remarked, "[r]evelations of today's nature are rare, and the impacts of Baxter's FX gains on the P&L have not been immaterial." ¶86.[3]

In the months after the Class Period, Defendants disclosed additional facts about their fraudulent misconduct. On February 13, 2020, they announced that Baxter's internal investigation was substantially complete, reiterated that the Company's "longstanding," improper convention for setting FX rates for foreign-currency-denominated transactions violated GAAP, and again confessed that intra-Company transactions were carried out "after the related exchange rates were already known, *solely for the purpose of generating non-operating foreign exchange gains or avoiding foreign exchange losses*." ¶¶87-88. As a direct result of the fraud, Baxter stated that its previous financial statements for periods dating to 2016 should no longer be relied on. ¶88.

Defendants also admitted that "one or more material weaknesses in [Baxter's] internal control over financial reporting existed, including a material weakness related to foreign exchange gains and losses." ¶90. Thus, Baxter's disclosure controls were not effective as of December 31, 2018, or throughout 2019, directly contradicting Almeida's and Saccaro's statements certifying the effectiveness of those same controls. ¶¶33, 41, 90.

Finally, on March 17, 2020, Baxter filed the Restatement, confirming that the Company's previously reported results of key metrics over the course of *ten years* were materially false, and specifically correcting results for fiscal year 2017 through the second quarter of 2019. ¶¶92, 94[4];

---

[3] Because Defendants do not challenge loss causation, the Court can dispose of their say-so about Baxter's stock price movement after the Class Period (MTD 1, 6-7), which is irrelevant to falsity and scienter and raises improper and premature factual disputes. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 421 (7th Cir. 2015) (loss causation typically resolved at trial after expert reports and merits testimony).
[4] Defendants wrongly claim "Plaintiffs do not allege there were material errors in the Company's financial statements for anywhere close to [ten years]." MTD 5, 15. Baxter has admitted to such material errors, but was only required under GAAP to correct figures dating back to 2017, all of which are at issue here.

7

*see also* ¶¶95-96 (reflecting impact of Restatement), 97, 132-34, 137-39, 142-43. During that period, Baxter materially overstated its net income by over $200 million, and its retained earnings by over $1 billion. ¶¶95, 137, 146. Baxter also made clear that its Treasury function was directly responsible for the FX accounting and fraudulent activity, confirming that the Company would abandon its use of historical FX rates. ¶¶97-99. Commenting further on Baxter's previously disclosed "material weakness" in its internal controls, Defendants stated that the Company's "policies and controls related to approvals and monitoring of intracompany transactions were ***insufficient to prevent or detect intra-company transactions undertaken solely for the purpose of generating foreign exchange gains or avoiding losses***." ¶97.

## III.   ARGUMENT

To assert a claim under Section 10(b) and Rule 10b-5, Plaintiffs must allege: (i) a material misrepresentation or omission of fact; (ii) scienter; (iii) a connection with the purchase or sale of a security; (iv) reliance; (v) economic loss; and (vi) loss causation. *See Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*, 114 F. Supp. 3d 633, 644 (N.D. Ill. 2015) (Ellis, J.). A Rule 12(b)(6) motion to dismiss "challenges the sufficiency of the complaint, not its merits." *Id*. at 642. "[T]he Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor." *Id*.

Defendants do not challenge the sufficiency of the CAC with regard to any element of Plaintiffs' claims except for the Individual Defendants' scienter and falsity as to a small number of statements. Indeed, Defendants do not dispute, and thereby concede, that the CAC adequately pleads the material falsity of their statements reporting financial results and attributing positive results to foreign currency fluctuations. ¶¶132-34, 137-39, 142-43, 146. As Baxter admitted, these results were the product of deliberate financial manipulations and violated GAAP, forcing Baxter to correct each through the Restatement. *See SEC v. Sys. Software Assocs.*, *Inc*., 145 F. Supp. 2d

8

954, 958 (N.D. Ill. 2001) (a GAAP violation "is presumptively a false or misleading statement of material fact under Rule 10b-5"); *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 815-16 (N.D. Ill. 2017) ("That Akorn's financial statements were not prepared in accordance with GAAP further indicates that they were misleading."). Defendants also largely ignore Baxter's scienter, which provides an independent basis to sustain Plaintiffs' claims under controlling Seventh Circuit law— Baxter has admitted that its Treasury department engaged in conscious misbehavior by violating GAAP and reporting financial results with actual knowledge they were false.

Instead, Defendants try to convince the Court to dismiss Plaintiffs' claims by: (i) arguing that the CAC fails to allege Almeida's and Saccaro's scienter; and (ii) challenging a small subset of alleged misstatements attesting to Baxter's compliance with GAAP and the effectiveness of its internal controls. For the reasons below, none of Defendants' arguments warrant dismissal.

### A. The CAC Pleads A Strong Inference Of Each Defendant's Scienter

When considering allegations of scienter, courts must consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) ("*Tellabs II*") (emphasis in original). Scienter is defined as "actual knowledge or a reckless disregard of a substantial risk that the statement is false." *Constr. Workers*, 114 F. Supp. 3d at 660 (citing *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 704-05 (7th Cir. 2008) ("*Tellabs III*") (strong circumstantial evidence of conscious misbehavior or egregious recklessness suffices)). Allegations that a "danger was either known to the defendant or so obvious that the defendant must have been aware of it" establish recklessness. *Tellabs III*, 513 F.3d at 704. While "motive can be a relevant consideration, and personal financial gain may weigh in favor of an inference of scienter, the absence of a motive allegation is not fatal." *Ross v. Career Educ. Corp.*, 2012 WL 5363431, at *11 (N.D. Ill. Oct. 30, 2012). To survive a motion to

9

dismiss, the inference of scienter "need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences," so long as it is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs II*, 551 U.S. at 324. The CAC's allegations, considered collectively, raise such an inference.

### 1. The CAC Pleads A Strong Inference That Almeida And Saccaro Knew Or Recklessly Disregarded That Their Statements Were False

The CAC pleads a mosaic of facts demonstrating that each time Almeida and Saccaro spoke on the topics at issue, they knowingly or recklessly misled investors.

***Defendants' scienter is supported by the well-pled facts that their GAAP violations were blatant, widespread, and materially overstated key financial results, necessitating the Restatement***. At all times, Almeida and Saccaro had obvious "deep connections to and an intimate familiarity with [Treasury's] operations" and the topics at issue. *Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, at \*24 (N.D. Ill. Apr. 19, 2012). Baxter's admitted accounting scheme to inflate its profits was centered at its headquarters in Chicago, where its Treasury was primarily responsible for the misconduct implicated in this case, including Baxter's improper accounting methodologies and currency conversion practices. ¶¶5, 16, 31, 99, 111-17. Baxter's Treasurer, the now-fired Bohaboy, reported to Almeida and Saccaro. *Id*.; *see In re Equifax Inc. Sec. Litig*., 357 F. Supp. 3d 1189, 1247 (N.D. Ga. 2019) (resignation of non-defendants whose responsibilities included topic at issue supported inference of scienter). That post was previously filled by Saccaro during the period in which Baxter was violating GAAP, from 2011 to 2013. ¶¶111-13.[5]

The persistent, "significant GAAP violations" that took place on the Individual

---

[5] Defendants' argument that Plaintiffs must plead "additional detail[]" about Saccaro's "actual exposure to the accounting problem" ignores these well-pled facts, distinguishing this case from those where scienter allegations relied only on a defendant executive's position. MTD 16; *see Silverman v. Motorola, Inc*., 2008 WL 4360648, at \*14 (N.D. Ill. Sept. 23, 2008) (holding it is "almost inconceivable that these defendants were not aware of the [] problems" in division in which defendant was "the executive in charge").

10

Defendants' watch, particularly in such a key area as the Treasury, provide "powerful" circumstantial evidence of their scienter. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1016 (9th Cir. 2005); *see, e.g.*, *Norfolk Cty. Ret. Sys. v. Ustian*, 2009 WL 2386156, at *1 (N.D. Ill. July 28, 2009) (allegations defendants violated GAAP and overstated net income and shareholder equity bolstered scienter); *Sutton v. Bernard*, 2001 WL 897593, at *7 (N.D. Ill. Aug. 9, 2001) (allegations defendants' improper revenue recognition practices violated GAAP supported scienter).[6] "***After all, books do not cook themselves***." *Daou*, 411 F.3d at 1016.

The inference of scienter is particularly strong here because Baxter's admitted GAAP transgressions did not involve application of complex rules, but repeated, unvarying violations of straightforward principles for over a decade. ¶¶43-45, 48-52, 94. As Judge Gettleman put it, "[t]he accounting errors here were allegedly relatively straightforward . . . and therefore easily identified by responsible corporate management." *Norfolk*, 2009 WL 2386156, at *10 ("[t]he magnitude and nature of accounting errors may belie a defendant's claim that she or it was unaware of any improprieties"); *see also In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 636 (E.D. Va. 2000) ("pervasiveness and repetitiveness of . . . GAAP violations" and "simplicity of the accounting principles violated" amplify scienter).

The Restatement's magnitude—spanning multiple years and quarters and material line items—brings into ever sharper focus the Individual Defendants' scienter. ¶¶69, 78-79, 95, 137, 146. "[I]t is long settled that a magnitude of reporting errors lend weight to allegations of recklessness where defendants were in a position to detect the errors." *Akorn*, 240 F. Supp. 3d at

---

[6] Baxter has not disclosed when the improper FX convention was adopted, nor does it matter here because there is no dispute that Defendants misapplied FX rates ***and*** fabricated transactions to create false gains "***for at least ten years***," in violation of GAAP. ¶94. Their effort to dilute the inference arising from this extensive fraudulent period—claiming the fraudulent "intra-Company transactions did not occur until years after" Baxter adopted the FX convention—is pure misdirection and, at most, raises factual disputes that cannot be resolved at this stage of the litigation. MTD 15.

820. Here, Baxter's falsified numbers, which allowed them to repeatedly meet their guidance and analysts' expectations, "are large enough to render less credible the defendants' arguments that they had no notice of any of the accounting improprieties that led to the [r]estatement." *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 619 (S.D.N.Y. 2015); *see also Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1256-57 (N.D. Ill. 1997) ("The more serious the error, the less believable are defendants protests that they were completely unaware . . . and the stronger is the inference that defendants must have known.").[7]

Moreover, before and during the Class Period, Almeida and Saccaro controlled Baxter's public statements, approved and reported Baxter's false financial results, and touted the positive impact of FX rate fluctuations on Baxter's financial performance. ¶¶57-64 (reflecting statements highlighting "income related to foreign currency fluctuations" and "foreign exchange gains" on balance sheet positions). At all times, they "had access to non-public and proprietary information concerning Baxter's operations, finances, and financial condition" underlying (and contradicting) their statements. *City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*, 2012 WL 607578, at *4 (N.D. Ill. Jan. 23, 2012); *see also In re Motorola Sec. Litig.*, 2004 WL 2032679, at *26 (N.D. Ill. Sep. 9, 2004) (scienter where defendants "knew facts or had access to information suggesting that their public statements were not accurate"). Indeed, both Defendants personally attested time and again, based on their purported review of such information, that Baxter's financial reports and results did, in fact, comply with GAAP. ¶¶33, 73, 148-49. Saccaro and Almeida even addressed Baxter's accounting methods and compliance in comments to investors (¶¶108-10, 151-52). *See*

---

[7] Baxter restated years of financial results because they were both false and material, gutting Defendants' efforts to downplay the scope or magnitude of the Restatement (or its impact on Baxter's operating income) which, regardless, raise improper factual disputes (MTD 14-15). *Haack v. Max Internet Commc'ns, Inc.*, 2002 WL 511514, at *7 (N.D. Tex. Apr. 2, 2002) (rejecting as "a factual dispute" defendants' argument "that size of the restatement actually suggests the lack of intentional or reckless conduct on their part").

*S. Ferry LP # 2 v. Killinger*, 687 F. Supp. 2d 1248, 1260 (W.D. Wash. 2009) (when a defendant speaks without "actual knowledge," it is "at least actionably reckless to reassure the public about these matters at all"). And, as pled, the conversion of foreign-currency-denominated assets and liabilities was critical to Baxter's financial performance and reporting. ¶¶5, 105.[8]

Thus, the Court "may readily and reasonabl[y] infer from these facts that [Defendants] made it [their] business to look into" these issues. *Ross*, 2012 WL 5363431, at \*10 (scienter pled where defendants were responsible for monitoring "compliance problems"); *see also Rehm*, 954 F. Supp. at 1255 (that "accounting violations led to a drastic overstatement of . . . yearly earnings" and "defendants were responsible for calculating and releasing the financial information tends to support the conclusion that the defendants acted with scienter").

***Baxter's unfailing FX gains were a clear red flag that Defendants knew of or recklessly ignored***. As Baxter's Restatement evidences, Defendants' financial manipulations had the uniform effect of generating positive FX gains ***every quarter from at least 2017 through the Class Period***. ¶¶2, 8, 56, 78, 95, 107. Daily FX rate fluctuations made these unvarying, positive results nearly impossible absent clairvoyance (or fraud). ¶¶45-47. "Knowledge of market conditions that substantially affect . . . core operations and the financial reporting of them may be imputed to key officers," particularly to CFO Saccaro, who was responsible for monitoring these very rates and the subsequent conversion when he served as Baxter's Treasurer. *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 491 (S.D.N.Y. 2004). This was a clear red flag. *See Akorn*, 240 F. Supp. 3d at 820 (violations that "had the near-uniform effect of *increasing . . .*

---

[8] *See Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 860 (N.D. Ill. 2009) (defendants "either had to know about" a key issue "or, if they did not, such lack of knowledge would amount to reckless disregard," as it was "almost inconceivable" they "would be unaware of the matters at issue"); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016) ("[a]ccounting errors that prove to have a significant impact on core business operations-i.e. cash, revenue, profits" support scienter); *Tellabs III*, 513 F.3d at 709 (misstatements concerned "flagship" product).

13

reported revenue and net income, unlike what one might expect from a random series of innocent mistakes" contribute to an inference of scienter) (emphasis in original); *Norfolk*, 2009 WL 2386156, at *9 (crediting allegations defendants knew of red flag indicating problem with company's accounting and internal controls). Moreover, that the accounting fraud enabled Baxter to repeatedly exceed its guidance and analyst expectations, which the Individual Defendants bragged about on earnings calls, bolsters scienter. *See Akorn*, 240 F. Supp. 3d at 820 ("violations [that] made the difference between failure and success in meeting the annual revenue guidance . . . and Wall Street consensus revenue estimates" contributed to scienter).

Almeida's and Saccaro's personal involvement in the design and evaluation of Baxter's deficient internal controls are further indicia of scienter. Almeida and Saccaro certified that they designed (or had designed for them) specific "disclosure controls and procedures" that "ensure[d] that material information" impacting financial reporting was "made known to [them]" by others. ¶¶127-30, 156-60. Based on their own purported investigations, Almeida and Saccaro then attested to the effectiveness of Baxter's internal controls, which, in fact, suffered from a material weakness that enabled Defendants' widespread accounting violations to occur and persist, as they have since admitted. *Id*. Far from "add[ing] nothing" (MTD 18-19), these facts support a strong inference of scienter. *See Akorn*, 240 F. Supp. 3d at 819 (strong inference of scienter where defendants had a "duty to design or supervise Akorn's internal controls"); *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 247-48 (S.D.N.Y. 2012) (CFO's scienter pled for internal control statements based on "personal involvement" in designing and evaluating controls and "the stark realities about the inadequacies of the internal controls that were revealed in the . . . restatement").

***Almeida and Saccaro were highly motivated to defraud investors***. Throughout the alleged fraud, Almeida and Saccaro both secured substantial, personal financial benefits from Defendants'

14

manipulations: from 2017 through 2019, Almeida raked in approximately $7.18 million in cash bonuses and $33 million in stock and options, while Saccaro pulled in $2.5 million in cash bonuses along with approximately $13 million in stock and options. ¶¶122-23. The primary way Defendants were able to hit EPS targets—and subsequently trigger those lucrative awards—was through their widespread accounting manipulations, which consistently increased Baxter's reported income and other key metrics. ¶¶66, 68-70, 106. These allegations bolster the inference of scienter. *See Norfolk*, 2009 WL 2386156, at *10 (scienter pled where CEO and CFO "pocketed $2 million and $828,655 in bonuses respectively as a result of meeting company benchmarks"); *Holwill v. AbbVie Inc.*, 2020 WL 5235005, at *5 (N.D. Ill. Sept. 1, 2020) (scienter pled where executive compensation was tied to positive results). Further, in response to the revelation of the fraud and the Restatement, Baxter's Board clawed back $1,100,000 of Almeida's 2019 cash bonus, and Saccaro's entire 2019 cash bonus of over $660,000, specifically connecting the adverse actions to the Restatement. ¶¶124-25; *see In re Salix Pharm., Ltd*., 2016 WL 1629341, at *15 (S.D.N.Y. Apr. 22, 2016) (claw back "weighs in favor of a strong inference of scienter").[9]

Considered holistically, the CAC raises a strong inference that Almeida and Saccaro "knew, or at least were recklessly unaware, that there were glaring accounting problems within the company that needed to be concealed from or minimized to investors [and] analysts." *Norfolk*, 2009 WL 2386156, at *9.

### 2. Almeida And Saccaro Do Not Raise A More Compelling Inference

Faced with the CAC's strong inference of scienter, Almeida and Saccaro wrongly contend that their scienter must be supported by allegations of actual knowledge, and ignore recklessness

---

[9] These allegations belie Defendants' argument that the CAC fails to plead the claw back was not "in any way based on misconduct" or that the amounts forfeited were insignificant (MTD 18 n.5), which, in any event, are improper fact disputes. *See Constr. Workers*, 114 F. Supp. 3d at 642.

as a basis for their scienter. *See* MTD 19 (arguing Plaintiffs must plead "Almeida or Saccaro **knew**

*of*" the alleged misstatements and misconduct).[10]  From there, they strain to recast Defendants'

purposeful financial manipulations as innocent, minor "deviations" from a "technical" GAAP rule,

claiming both Almeida and Saccaro were wholly unaware of the fraudulent activity.  MTD 3, 14.

As in *Tellabs III*, that dubious inference is unwarranted and "very hard to credit" given the

myriad facts from which a strong inference of their scienter arises.  513 F.3d at 709; *see Tellabs*

*II*, 551 U.S. at 314 (opposing inferences must be "plausible," "rationally drawn from the facts

alleged," and **more** compelling).  Almeida and Saccaro's arguments do not overcome the strong

inference of scienter.  "[T]he errors were too basic, there were too many of them, and the bottom

line discrepancies were too big . . . to raise a compelling alternative inference that the errors were

a result of mere incompetence."  *Norfolk*, 2009 WL 2386156, at *10.  Defendants' "alternative

hypotheses–either a cascade of innocent mistakes, or acts of subordinate employees, either or both

resulting in a series of false statements–are far less likely than the hypothesis of scienter at the

corporate level at which the statements were approved."  *Tellabs III*, 513 F.3d at 711.

Almeida and Saccaro first complain that Plaintiffs have not alleged direct evidence that

they knew of the accounting errors.  MTD 9-10.  But Plaintiffs need not plead any "smoking-gun."

*Tellabs II*, 551 U.S. at 324; *see In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1083 (N.D. Cal.

2001) (rejecting argument scienter requires allegations defendant "reviewed the documents related

to the identified transactions or was deliberately reckless in not reviewing such documents").[11]

---

[10] *See also, e.g.*, MTD 19 (claiming Plaintiffs must allege facts "demonstrating that Almeida and Saccaro **knew** of the alleged fraud at the time they signed the [SOX] certifications" or "**knew** the financial statements overrepresented" metrics), 11-13 (arguing Plaintiffs must plead Almeida and Saccaro had "**actual knowledge**" of Baxter's GAAP violations), 15 (arguing "Plaintiffs do not allege that PwC or anyone else **ever told** Almeida or Saccaro" or that either "dismissed any such concerns").

[11] Defendants' cases do not support their argument and, in any event, are factually off-point.  MTD 9-10 (citing *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 801-02 (N.D. Ill. 2007) (knowledge of internal control deficiencies alleged based entirely on an expert declaration opining that the individual defendants "should

16

Next, Almeida and Saccaro attack in isolation allegations of Baxter's GAAP violations, claiming the CAC must plead their actual knowledge of all aspects of those violations. MTD 11-13. Not so. While their knowledge is readily inferable (*see supra* Section III.A.1), actual knowledge is not the yardstick: Plaintiffs may (and do here) "plead facts that support[] an inference that [d]efendants were actually aware that (***or reckless with respect to whether***) the accounting was incorrect," as Defendants' own authority acknowledges. MTD 12. What's more, scienter here is not based on "technical" GAAP violations within "a range of reasonable treatments," like in Defendants' cited cases, but a host of factors, including Baxter's willful, repeated violations of clear accounting rules under Almeida's and Saccaro's watch.[12] And, while not required, the CAC does identify the particulars of the GAAP violations, including *who* was involved in selecting FX rates (Baxter's Treasury, led by Bohaboy and, previously, Saccaro), *what* rates they decided to use (stale, known favorable rates), and *how and why* they selected those rates, in violation of GAAP (as a Company-wide policy, to inflate FX gains and avoid FX losses). ¶¶49, 94, 99, 111-17.

Defendants' claim that foreign currency conversion has nothing to do with Baxter's critical operations is likewise divorced from reality and the CAC. MTD 13-14. Defendants disregard that: (i) Baxter's longstanding fraudulent accounting methods were used to engineer results that allowed it to "hit" its adjusted EPS number (and were not mere "technical accounting

---

have been aware" of the issues); *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1166-67 (E.D. Wis. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018) (the "accounting rules the plaintiffs allege were violated [we]re complex and technical," and plaintiffs failed to allege "why or how senior executives at Kohl's would have been so familiar with those rules"); *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 602 (7th Cir. 2019) (scienter allegations "hinged on a single paragraph" vaguely describing "documents authored, and/or received" by the defendants); *Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *15 (S.D.N.Y. Mar. 10, 2017) (plaintiffs did not identify contrary information or how it conflicted with defendants' public statements)).

[12] Defendants' in-Circuit cases do not reflect a stringent "actual knowledge" standard nor involve admissions of fraudulent purpose behind the GAAP violations. MTD 11-12. The rest of their cases stand for the unremarkable proposition that GAAP violations alone are usually insufficient to plead scienter. *Id*.

determinations"); (ii) Baxter generated at least 57% of its revenues globally, often in foreign currencies; (iii) Baxter's periodically reported financial metrics, which Almeida and Saccaro reviewed and approved, were derived from currency conversions; and (iv) Defendants repeatedly described Baxter's accounting processes and compliance with GAAP in its SEC filings. ¶¶49-52, 55, 68-69, 105, 153.[13]   These facts, and the inferences arising from them, must be construed holistically and in Plaintiffs' favor, and support scienter.  *See Tellabs II*, 551 U.S. at 324.

Almeida and Saccaro are also wrong that the CAC does not plead motive.  MTD 19-20. For one, motive is not required and, contrary to Defendants' assertion, "can be established even if the officers who made the misleading statements did not sell stock."  *Jones v. Corus Bankshares, Inc.*, 701 F. Supp. 2d 1014, 1025 (N.D. Ill. 2010).  Their effort to cast doubt on the EPS targets that Plaintiffs allege Baxter would have missed but-for the fraud also fails.  MTD 20-21.  The CAC details the origin of and how Plaintiffs calculated Baxter's restated EPS figures, and Defendants' and analysts' focus on Baxter's non-GAAP "adjusted" EPS figures.  ¶¶66, 69-70; CAC at 26 n.5. Defendants do not contest the accuracy or plausibility of Plaintiffs' allegations, unlike in their cited case *City of Roseville Employees' Retirement System v. Sterling Financial Corp.*, where plaintiffs did not "indicate the origin of th[e] data or explain how it was calculated" and defendants set forth how such calculations were wrong.  963 F. Supp. 2d 1092, 1112 (E.D. Wash. 2013).[14]

---

[13] By contrast, Defendants' cases involved problems with functions or products that were not central to the company's business.  *See* MTD 13-15 (citing *Pugh v. Tribune Co.*, 521 F.3d 686, 694 (7th Cir. 2008) (affirming dismissal where executives only might have been in a position to detect fraud); *Kohl's*, 895 F.3d at 938-40 (affirming dismissal where alleged misconduct did not concern Kohl's core business and management lacked reason to think the accounting treatment was wrong); *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 758 (7th Cir. 2007) (addressing North American executives' knowledge of information in reports generated in Brazil)).  Defendants' other cases concern scienter allegations that relied only on the core operations inference or did not involve admitted accounting violations like Baxter's.  MTD 14-15.

[14] Defendants' cases miss the mark.  *Kohl's*, 895 F.3d at 939-40, does not include the quoted language about incentive compensation that Defendants attribute to it, nor does it involve allegations executives were motived by performance-based compensation.  MTD 19-21 (citing *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005) (same); *In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1049-50 (N.D. Cal. 2009) ("meet[ing] Wall Street expectations and [company's] own guidance," which it "would

Finally, Almeida and Saccaro cannot foist upon PwC, Baxter's outside auditor, the responsibility for ensuring Baxter's financials were above-board. MTD 15-16. Almeida and Saccaro, as "[s]enior management . . . had an independent duty to ensure compliance with GAAP and maintain effective internal controls. This duty cannot be delegated to [its auditor]." *In re Diamond Foods, Inc., Sec. Litig.*, 2012 WL 6000923, at *8 (N.D. Cal. Nov. 30, 2012); *see also Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 454 (7th Cir. 1982) ("[a]uditors are not detectives hired to ferret out fraud"); *In re Silver Wheaton Corp. Sec. Litig.*, 2016 WL 3226004, at *11 (C.D. Cal. June 6, 2016) (rejecting argument that "clean audit opinion" defeats scienter).

At bottom, Almeida and Saccaro's arguments against scienter rest entirely on their threadbare assertion, counter to the CAC, that upon discovery of the accounting fraud each "undertook a conscious effort to investigate and fix potential errors." MTD 3, 15. Judge Kennelly rejected the same argument in *Ross*, where defendants argued that "their decision to immediately investigate . . . reporting practices" after receiving a subpoena was "evidence that the company was doing exactly what [it] should have done." 2012 WL 5363431, at *9 (alteration in original). As the court held, "it is at least an equally plausible and compelling inference that, given what plaintiffs have alleged . . . defendants initiated the inquiry as an exercise in damage control and to head off further investigations." *Id*. The same result is appropriate here.

### 3. The CAC Pleads Baxter's Scienter

Defendants barely address Baxter's scienter, resting apparently on the flawed premise that the Company's scienter may be pled only through Almeida and Saccaro, which they argue is not

---

have missed . . . if it had not been for the accounting errors," was "***a coherent motive to commit fraud***"); *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012) (no motive allegation beyond generic desire to benefit from stock price)).

19

sufficiently alleged. MTD 9-22.[15] Defendants are wrong. While the CAC adequately pleads Baxter's scienter through the Individual Defendants, it also does so in several independent ways.

"The critical question . . . is how likely it is that the allegedly false statements . . . were the result of merely careless mistakes at the management level based on false information fed it from below, rather than of an intent to deceive or a reckless indifference to whether the statements were misleading." *Tellabs III*, 513 F.3d at 709. Given the deliberate and extensive alleged misconduct here, the answer is "exceedingly unlikely." *Id.*

Baxter's admissions of actual knowledge raise an overwhelming inference that at least one Baxter official who participated in making the alleged misstatements, including by "furnish[ing] information or language for inclusion therein, or the like," knew or recklessly disregarded the truth. *Tellabs III*, 513 F.3d at 708-10 ("it is possible to draw a strong inference of corporate scienter *without being able to name the individuals who concocted and disseminated the fraud*"). That is, it is plausible that prior to Defendants making the alleged misstatements, the senior officials responsible for overseeing the processes and results at issue—including Bohaboy—furnished the reported information about, e.g., Baxter's accounting, constant FX gains, and the impact of FX fluctuations on the Company. *See Tellabs III*, 513 F.3d at 708. As furnishers of information, those officials' scienter is imputed to Baxter. *Id.* at 709; *see also In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *33-34 (D.N.J. Aug. 8, 2018) (corporate scienter alleged under Seventh Circuit standard where "[i]t is highly unlikely that not one of these multiple [non-defendant] members of senior management . . . were aware of or participated in the preparation of" misstatements). In the alternative, if Defendants spoke on those topics and failed

---

[15] To be clear, the CAC alleges Baxter's liability under Section 10(b), not only the Individual Defendants' liability. ¶26 (defining Baxter, Almeida, and Saccaro collectively as "Defendants"); CAC at Section XI, Count I (alleging Section 10(b) and Rule 10b-5 claims "Against All Defendants"), 190 ("By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5.").

to verify the reported information, they did so recklessly. *Tellabs III*, 513 F.3d at 709.

Moreover, while not necessary to plead Baxter's scienter, the CAC raises a strong inference of one other Baxter official's scienter (in addition to Saccaro and Almeida), former Treasurer Bohaboy, which is imputed to Baxter. *See In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 515-16 (S.D.N.Y. 2009) ("scienter by management-level employees is generally sufficient to attribute scienter to corporate defendants"). Defendants' disclosures confirmed that Baxter, through its Treasury, purposefully fabricated profits and hid actual loses, and knowingly reported those false financial results, quarter after quarter, flouting GAAP, misleading investors, and necessitating the Restatement. ¶¶2, 8, 16, 56, 78, 82-84, 87, 93-95, 99, 107, 116; *see In re Proquest Sec. Litig.*, 527 F. Supp. 2d 728, 745 (E.D. Mich. 2007) (admission that "restatement is the result of intentional fraud . . . is more than enough to [establish] . . . actual knowledge"). The CAC plausibly alleges that Bohaboy oversaw the fraudulent practices, GAAP violations, and false financial reporting. ¶¶114-17. That Baxter abruptly cast him away just prior to the fraud unraveling adds to the inference. *See Equifax*, 357 F. Supp. 3d at 1247.[16]

Finally, more broadly, Baxter's "knowledge is inferable from [the] gravity" of the omitted facts. *Tellabs III*, 513 F.3d at 704. As Judge Posner explained, a strong inference of corporate scienter arises where, as here, misstatements concern serious problems with the company's key functions, products, or financials, or plaintiffs allege widespread knowledge of the truth within the company. *Id*. at 709; *Brasher*, 2012 WL 1357699, at *24 (corporate scienter pled without reference to individual defendants' scienter).

---

[16] Defendants' argument that facts relating to Bohaboy are "irrelevant to scienter" (MTD 16-18) is clearly wrong. *See Tellabs III*, 513 F.3d at 710. Defendants rely on *Pugh*, but that court declined to impute the scienter of a non-defendant regional vice president who, unlike here, was not a "senior-level" company officer and whose misconduct did not further the company's goals. 521 F.3d at 697-98.

21

**B. The CAC Adequately Pleads Material Misstatements And Omissions**

To plead false or misleading statements or omissions under the PSLRA and Rule 9(b), Plaintiffs need only identify "what" statements or omissions are alleged to be false or misleading, "who" made them, "when," "where," and "how" they were made, and "explain the reason why the statements were misleading." *Holwill*, 2020 WL 5235005, at *2. Here, as explained above, Defendants concede that the majority of alleged misstatements and omissions were materially false. ¶¶132-34, 137-39, 142-43, 146. They challenge only their misrepresentations about Baxter's compliance with GAAP and the effectiveness of its internal controls. These attacks fail.

**1. Misrepresentations About Baxter's Compliance With GAAP**

During the Class Period, Defendants misled investors by representing that Baxter "prepar[ed] . . . the financial statements in conformity with generally accepted accounting principles (GAAP)." ¶¶148-50 (pleading substantially similar misrepresentations), 151-52 (pleading statements made during Baxter's Annual Shareholders Meeting). Defendants have admitted however, that in reality, Baxter reported results in financial statements from at least 2009 through October 2019 that were prepared not in accordance with GAAP, but were based on an improper FX convention and transactions it undertook "***solely for the purpose*** of generating non-operating foreign exchange gains or avoiding foreign exchange losses." ¶¶49, 51-52, 153; *see also Fresno Cty. Emps.' Ret. Assoc. v. comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017) (statements that company complied with GAAP actionable where it admitted financial statements required restatement). Defendants' arguments concerning falsity fail.[16]

---

[16] Defendants do not dispute that their statement in ¶148 was materially false or misleading as it pertained to GAAP. MTD 24 (challenging ¶148 only as to Baxter's admittedly deficient internal controls), 22 (addressing alleged false statements only in ¶¶149-51). Thus, Defendants "failed to make [an] argument in [their] opening brief so the point is waived." *Fleming v. Chi. School of Prof'l Psychology*, 2017 WL 4310536, at *8 n.6 (N.D. Ill. Sept. 28, 2017) (Ellis, J.).

22

Defendants first criticize Plaintiffs for purportedly omitting "critical" text that they contend somehow renders their GAAP compliance statements (¶¶149-50) complete and accurate. MTD 22-23. But it is neither critical nor relevant that when Defendants represented Baxter complied with GAAP, they also stated that GAAP may require "estimates and assumptions" or that "[a]ctual results could differ from those estimates." MTD 22. Defendants' GAAP violations or restatement cannot be plausibly attributed to mere errors in accounting judgment—both arise from purposeful, improper accounting practices Baxter carried out to fabricate reported profits and hide losses. ¶¶49, 51-52, 55, 153. Defendants' related argument that it is implausible a reasonable investor would understand their statements to pertain to all transactions that implicated GAAP, including the fraudulent ones at issue here (MTD 23), strains logic and is wrong. Such an understanding is plausible, as the statement was made in Baxter's 2018 10-K in a section titled "***CRITICAL ACCOUNTING POLICIES***." Moreover, Defendants' interpretation requires the Court to draw improper inferences in their favor. *Constr. Workers*, 114 F. Supp. 3d at 642.

Equally off-mark is Defendants' contention that their statements during Baxter's Annual Shareholders Meeting (¶¶151-52) concerned only Baxter's presentation of, and process for, reporting non-GAAP figures. MTD 12, 23. Defendants ignore the statements' plain language, which reference Baxter's reporting of GAAP figures, how those figures related to Defendants' reported non-GAAP figures, and the purportedly "significant amount of information about the numbers" Baxter provided. ¶151. Moreover, when Defendants chose to speak about Baxter's GAAP figures, they were obligated to do so completely and accurately to avoid misleading investors. *See, e.g.*, *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995) ("[i]f one speaks, he must speak the whole truth"). Yet, Defendants concealed Baxter's purposeful accounting violations and corresponding false reported GAAP figures. ¶¶49, 51-52, 55, 153.

23

Finally, Defendants contend that they did not make (and are not liable for) an alleged statement attesting to Baxter's GAAP compliance (certified by PwC) in Baxter's 2018 10-K. ¶150. But Defendants had "ultimate authority" over Baxter's SEC filings, including "whether and how to communicate" the statements therein. *See, e.g.*, *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 271 (S.D.N.Y. 2012) (explaining company "cannot seriously claim that it did not have ultimate authority over documents it filed with the SEC"). Plaintiffs thus need not plead facts concerning PwC's knowledge or beliefs, as Defendants contend. MTD 24.

### 2. Misrepresentations About Baxter's Internal Controls

Defendants also made numerous false representations in SEC filings about Baxter's internal controls, including that they were "effective as of December 31, 2018" and disclosed "[a]ll significant deficiencies and material weaknesses." ¶¶156-60. In truth, Defendants have admitted that "a material weakness in [Baxter's] internal control over financial reporting *existed as of that date [December 31, 2018]*," as well as "insufficient" "policies and controls" over accounting and reporting for the transactions at issue, and that reported results were materially false, requiring the Restatement. ¶¶97, 129, 132-34, 137-39, 142-43, 161-62.

Given those unequivocal admissions, Defendants are left arguing primarily that these misrepresentations are inactionable opinions, relying entirely on their flawed scienter arguments. MTD 24-25.[17]  Even if treated as opinions, however, Defendants internal control statements are actionable. *See Dobina*, 909 F. Supp. 2d at 244-48 (CEO and CFO statements attesting to quality

---

[17] Defendants' argue that Plaintiffs must plead that referenced evaluations of controls did not take place. MTD 24-25. But even "statements that are literally true can still be actionable under § 10(b) as misleading if they are susceptible to another interpretation by a reasonable investor"—here, that the controls they claimed to design and evaluate were effective. *Constr. Workers*, 114 F. Supp. 3d at 651. In *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 683 (D. Colo. 2007), unlike here, defendants did not admit to deliberate misconduct, disclose a material weakness in internal controls, or concede that years of financial results were falsely reported.

24

and effectiveness of company's internal controls actionable where company had to restate results). Under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, when statements do not "fairly align[] with the information in the issuer's possession at the time," the omissions give rise to liability. 575 U.S. 175, 189 (2015). Here, as discussed above, a widespread material weakness permitted pervasive financial manipulation at the times Defendants spoke such that each plausibly knew and failed to disclose the internal control issues, or were reckless in failing to investigate and monitor such controls despite the representations in their SOX certifications. *See SEC v. Ustian*, 229 F. Supp. 3d 739, 771 (N.D. Ill. 2017) (Ellis, J.) ("[I]f the real facts are otherwise, but not provided, the opinion statement will mislead its audience.").

For the same reasons, Plaintiffs do not allege mere "fraud by hindsight." MTD 19 n.6, 25; *see In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 394 (S.D.N.Y. 2007) ("This is not a case where plaintiffs are pleading fraud based on changed circumstances that were unforeseen by defendants at the time they made their statements."). Defendants' authority does not hold otherwise.[18] Nor can Defendants hide behind PwC's audit opinions. *See supra* p. 19.

### C. The CAC Adequately Pleads Claims Under Section 20(a)

Defendants do not dispute that Almeida and Saccaro were control persons. For the reasons above, their argument that Plaintiffs fail to plead an underlying violation is wrong. MTD 9 n.3.

### IV. CONCLUSION

Defendants' motion to dismiss should be denied. Should the motion be granted, Plaintiffs respectfully request leave to amend under Rule 15(a).

---

[18] *See Higginbotham*, 495 F.3d at 759 (declining to draw an inference of scienter where "[h]indsight [wa]s *the only basis* of the proposed inference"); *Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, 2016 WL 1261135, at *4-5, 11 (S.D.N.Y. Mar. 30, 2016) (new management team admitted internal controls were ineffective *under old management team*); *Woolgar v. Kingstone Cos., Inc.*, 2020 WL 4586792, at *11 (S.D.N.Y. Aug. 10, 2020) (where named defendant was not previously responsible for business implicated by the deficient internal controls).

Dated: October 8, 2020

Respectfully submitted,

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

*/s/ Sharan Nirmul*

Sharan Nirmul (#90751)
Joshua A. Materese (#314844)
Evan R. Hoey (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
jmaterese@ktmc.com
ehoey@ktmc.com


**BERNSTEIN LITOWITZ**
**BERGER & GROSSMANN LLP**
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, IL 60611
Telephone: (312) 373-3800
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

James A. Harrod (admitted *pro hac vice*)
Adam D. Hollander (admitted *pro hac vice*)
Alexander T. Payne (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Jim.Harrod@blbglaw.com
Adam.Hollander@blbglaw.com
Alex.Payne@blbglaw.com

*Lead Counsel for Plaintiffs and the Class*

26