**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BAXTER INTERNATIONAL INC. SECURITIES LITIGATION | Case No. 1:19-cv-07786 <br><br> Judge Sara L. Ellis <br><br> Magistrate Judge Jeffrey I. Cummings |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO DISMISS CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION.................................................................................................1

II.  ARGUMENT......................................................................................................3

     A.   Plaintiffs Fail to Allege a Strong Inference of Scienter .......................................3

          1.   Plaintiffs Fail to Allege a Strong Inference of Scienter as to
               Almeida and Saccaro ......................................................................................3

               a.   The Existence of GAAP Deviations Does Not Establish a
                    Strong Inference of Scienter..........................................................5

               b.   Defendants' Alleged "Access" to Information Does Not
                    Support a Strong Inference of Scienter ..........................................6

               c.   That the GAAP Deviations Occurred "On Defendants'
                    Watch" Does Not Support a Strong Inference of Scienter..............7

               d.   The Core-Operations Doctrine Does Not Apply ............................9

               e.   The Fact that Baxter Used the Historical Rate Convention
                    for Years Does Not Support a Strong Inference of Scienter .........11

               f.   Awareness that GAAP Exists Falls Far Short of
                    Establishing a Strong Inference of Scienter................................12

               g.   There Were No "Red Flags" Alerting Defendants to
                    Alleged Misconduct.....................................................................13

               h.   Plaintiffs' Motive Allegations Undercut a Strong Inference
                    of Scienter...................................................................................15

          2.   Plaintiffs Fail to Allege a Strong Inference of Scienter as to Baxter ........16

     B.   Plaintiffs Fail to Allege That Many of the Challenged Statements Are
          Materially False or Misleading ...........................................................................18

          1.   Plaintiffs Fail to Allege That the GAAP-Compliance Statements
               Are Materially False or Misleading .........................................................18

          2.   Plaintiffs Fail to Allege That the Internal-Controls Statements Are
               Materially False or Misleading .................................................................19

III. CONCLUSION.................................................................................................20

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abrams v. Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002).................................................................................................11

*Alizadeh v. Tellabs, Inc.*,
2015 WL 557249 (N.D. Ill. Feb. 9, 2015) .............................................................................19

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
505 F. Supp. 2d 662 (D. Colo. 2007) .....................................................................................20

*Arbitrage Event-Driven Fund v. Tribune Media Co.*,
2020 WL 60186 (N.D. Ill. Jan. 6, 2020) .................................................................................7

*Brasher v. Broadwind Energy, Inc.*,
2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) ..........................................................................8

*Christian v. BT Grp. PLC*,
2018 WL 3647213 (D.N.J. Aug. 1, 2018) ..............................................................................15

*City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*,
2012 WL 607578 (N.D. Ill. Jan. 23, 2012)..............................................................................8

*City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*,
963 F. Supp. 2d 1092 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017).................14

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019)..............................................................................................7, 11

*Davis v. SPSS, Inc.*,
385 F. Supp. 2d 697 (N.D. Ill. 2005) .....................................................................................15

*Desai v. Gen. Growth Props., Inc.*,
654 F. Supp. 2d 836 (N.D. Ill. 2009) .....................................................................................10

*Dobina v. Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012).....................................................................................13

*Fryman v. Atlas Fin. Holdings, Inc.*,
2020 WL 2735366 (N.D. Ill. May 26, 2020)............................................................................7

*Fulton Cty. Emps.' Ret. Sys. v. MGIC Inv. Corp.*,
2010 WL 601364 (E.D. Wis. Feb. 18, 2010), *aff'd*, 675 F.3d 1047 (7th Cir. 2012).................13

*Geinosky v. City of Chicago*,
675 F.3d 743 (7th Cir. 2012)................................................................................10

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016)..................................................................16

*Hessefort v. Super Micro Computer, Inc.*,
2020 WL 1551140 (N.D. Cal. Mar. 23, 2020) ...................................................... 7

*Higginbotham v. Baxter Int'l Inc.*,
495 F.3d 753 (7th Cir. 2007)............................................................................1, 12

*Hubbard v. BankAtlantic Bancorp, Inc.*,
625 F. Supp. 2d 1267 (S.D. Fla. 2008) ...............................................................13

*In re Akorn, Inc. Sec. Litig.*,
240 F. Supp. 3d 802 (N.D. Ill. 2017) ...................................................... 10, 11, 13

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) ......................................................20

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)..................................................................15

*In re Ceridian Corp. Sec. Litig.*,
542 F.3d 240 (8th Cir. 2008)................................................................................20

*In re China N. E. Petroleum Holdings Ltd. Sec. Litig.*,
2014 WL 7236914 (S.D.N.Y. Dec. 11, 2014) ...................................................... 7

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
2018 WL 3772675 (D.N.J. Aug. 8, 2018) .........................................................9, 11

*In re Comshare Inc. Sec. Litig.*,
183 F.3d 542 (6th Cir. 1999)................................................................................12

*In re Cornerstone Propane Partners, L.P.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ............................................................1, 11

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) .............................................................................. 8

*In re Equifax Inc. Sec. Litig.*,
357 F. Supp. 3d 1189 (N.D. Ga. 2019) ................................................................ 2

*In re Harley-Davidson, Inc. Sec. Litig.*,
660 F. Supp. 2d 969 (E.D. Wisc. 2009) ............................................................7, 8

*In re Int'l Rectifier Corp. Sec. Litig.*,
   2008 WL 4555794 (C.D. Cal. May 23, 2008) ........................................................................ 6

*In re K-Tel Int'l, Inc. Sec. Litig.*,
   300 F.3d 881 (8th Cir. 2002) ........................................................................................1, 6

*In re Maxwell Techs., Inc. Sec. Litig.*,
   18 F. Supp. 3d 1023 (S.D. Cal. 2014) ...............................................................................15

*In re Medicis Pharm. Corp. Sec. Litig.*,
   2010 WL 3154863 (D. Ariz. Aug. 9, 2010) ......................................................................... 6

*In re MicroStrategy, Inc. Sec. Litig.*,
   115 F. Supp. 2d 620 (E.D. Va. 2000) ................................................................................10

*In re Salix Pharm., Ltd.*,
   2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) .....................................................................15

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .....................................................................12

*In re U.S. Aggregates, Inc. Sec. Litig.*,
   235 F. Supp. 2d 1063 (N.D. Cal. 2002) ..........................................................................7, 18

*In re UBS AG Sec. Litig.*,
   2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ....................................................................14

*Janus Cap. Grp. v. First Deriv. Traders*,
   564 U.S. 135 (2011) ........................................................................................................19

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
   513 F.3d 702 (7th Cir. 2008) ........................................................................... 3, 4, 16, 17

*Norfolk Cty. Ret. Sys. v. Ustian*,
   2009 WL 2386156 (N.D. Ill. July 28, 2009) .................................................................10, 15

*Okla. Firefighters Pension & Ret. Sys. v. Ixia*,
   2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) .................................................................6, 13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ........................................................................................................19

*Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*,
   895 F.3d 933 (7th Cir. 2018) .......................................................................................5, 15

*Pierrelouis v. Gogo, Inc.*,
   414 F. Supp. 3d 1164 (N.D. Ill. 2019) ..............................................................................11

*Pipefitters Local No. 636 Defined Ben. Plan v. Zale Corp.*,
499 F. App'x 345 (5th Cir. 2012) ...................................................................................17

*Plumbers & Pipefitters Local Union v. Zimmer Holdings, Inc.*,
673 F. Supp. 2d 718 (S.D. Ind. 2009), *aff'd*, 679 F.3d 952 (7th Cir. 2012) ..............................17

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015) ...................................................................................10

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008)......................................................................................7, 16

*Ross v. Career Educ. Corp.*,
2012 WL 5363431 (N.D. Ill. Oct. 30, 2012) ........................................................................ 8

*Silverman v. Motorola, Inc.*,
2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) ........................................................................ 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .............................................................................................. 1, 2, 9, 17

*Thomason v. Nachtrieb*,
888 F.2d 1202 (7th Cir. 1989) ......................................................................................19

*Tyler v. Liz Claiborne, Inc.*,
814 F. Supp. 2d 323 (S.D.N.Y. 2011) ...................................................................................10

*Webb v. SolarCity Corp.*,
884 F.3d 844 (9th Cir. 2018)......................................................................................12

*Wyche v. Advanced Drainage Sys.*,
2017 WL 971805 (S.D.N.Y. Mar. 10, 2017) ......................................................................5, 8

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ...................................................18

## GLOSSARY OF TERMS

The following terms are used in this memorandum:

| | |
|---|---|
| AC or Complaint: | Class Action Complaint, filed June 25, 2020, Dkt. No. 34 |
| Audit Committee: | The Audit Committee of Baxter International Inc.'s Board of Directors |
| Baxter: | Baxter International Inc. |
| CEO: | Chief Executive Officer |
| CFO: | Chief Financial Officer |
| Challenged Statement(s): | Defendants' statements Plaintiffs challenge as false or misleading (AC ¶¶ 131-60) |
| Class Period: | February 21, 2019 through October 23, 2019, inclusive |
| Company: | Baxter International Inc. |
| Defendant(s): | Baxter International Inc., José Almeida, and James Saccaro |
| Ex. or Exs.: | Exhibit(s), which are attached to the Declaration of Whitney B. Weber, filed with Defendants' Memorandum of Law in Support of Motion to Dismiss, Dkt. No. 41 |
| GAAP: | Generally Accepted Accounting Principles |
| Individual Defendants: | José Almeida and James Saccaro |
| Motion or Mot.: | Defendants' Memorandum of Law in Support of Motion to Dismiss Class Action Complaint, filed August 24, 2020, Dkt. No. 40 |
| Opposition or Opp.: | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Class Action Complaint, filed October 8, 2020, Dkt. No. 43 |
| Plaintiffs: | Louisiana Municipal Policy Employees' Retirement System and Varma Mutual Pension Insurance Company |
| PSLRA: | The Private Securities Litigation Reform Act of 1995 |
| PwC: | PricewaterhouseCoopers LLP |

vi

SEC:  United States Securities and Exchange Commission

SOX:  The Sarbanes-Oxley Act of 2002

## I.    INTRODUCTION

Courts throughout the country repeatedly have held that GAAP deviations alone cannot establish a defendant's scienter in a federal securities fraud lawsuit. *See, e.g.*, *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 759-60 (7th Cir. 2007); *In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 890, 980 (8th Cir. 2002). This rule is underpinned by the PSLRA's "strong mandate" to "avoid speculation, conjecture, and hindsight." *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005). Were it otherwise, any time a company restated its financial figures, it would be forced to defend time-consuming and costly federal lawsuits—even if the officers who made the relevant statements believed they were true at the time, and had no reason to suspect otherwise. Plaintiffs' Opposition confirms this case is precisely the type of "fraud by hindsight" the PSLRA was designed to prevent.

Last October, Baxter announced it had begun an investigation into the accounting for certain intra-Company transactions undertaken to generate foreign-exchange gains or avoid foreign-exchange losses. It explained that the transactions used a historical foreign-exchange rate convention that was not in accordance with GAAP, and resulted in certain misstatements to the Company's non-operating income related to net foreign exchange gains. Plaintiffs quickly pounced, filing a lawsuit accusing Baxter, its CEO José Almeida, and its CFO James Saccaro, of securities fraud. To survive a motion under the PSLRA, however, Plaintiffs cannot simply *assume* that Defendants must have known about GAAP deviations before they made the statements at issue. Plaintiffs must allege particularized facts giving rise to a strong inference of scienter—*i.e.*, that each Defendant acted with an "intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 319 (2007) ("*Tellabs II*"). To meet this heavy burden, Plaintiffs must plead particularized *facts* demonstrating that each Defendant either knew their statements were false when made, or were deliberately reckless in not knowing.

1

Plaintiffs come nowhere close to meeting this burden. Notably absent from Plaintiffs' Complaint and Opposition is a single particularized fact showing that Almeida or Saccaro knew (or were deliberately reckless in not knowing) about: the *existence* of the intra-Company transactions at issue, the *purpose* of the transactions, the *accounting treatment* for the transactions, the *fact that the accounting treatment was incorrect*, or that improper accounting treatment *rendered the statements at issue false and misleading*. In fact, Plaintiffs do not allege any specific facts about Almeida's and Saccaro's knowledge or state of mind *at all*.

In their Opposition, Plaintiffs attempt to salvage their Complaint in three ways, all meritless. Plaintiffs first try to lower the bar against which their allegations are measured, claiming repeatedly they have "plausibly" alleged Defendants' scienter. *See, e.g.*, Opp. at 18, 20-21, 25. But as the Supreme Court has explained, an "inference of scienter *must be more than merely plausible or reasonable*—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs II*, 551 U.S. at 314 (emphasis added). Here, courts have rejected all of Plaintiffs' arguments about the "plausibility" of their scienter assertions time and again.

Plaintiffs next argue that even if they have not established Almeida's or Saccaro's knowledge of falsity, they still can establish a strong inference of scienter by showing "severe recklessness." That may be true in theory, but it does not save their Complaint. As Plaintiffs' own cited authority makes clear, to establish a strong inference of recklessness, Plaintiffs cannot "rely on generalities and chains of inferences." *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1237 (N.D. Ga. 2019). Plaintiffs instead must allege "facts showing that the risk of misleading investors was so obvious that the Defendants must have been aware of it." *Id.* But generalities and chains of inferences are the most Plaintiffs allege here. They do not identify any facts showing that "risks" regarding accounting treatment for the intra-Company transactions at issue here ever

2

reached, were discussed, or had been considered by Defendants at the time of the Challenged Statements. Plaintiffs assert that the accounting rules governing conversion of foreign-currency denominated assets and liabilities into their reporting currencies were "straightforward." But the very GAAP provision they cite (ASC 830) specifically says otherwise, providing that using "exchange rates at the dates the numerous revenues, expenses, gains, and losses are recognized is generally impractical." The PwC accounting guide on which Plaintiffs rely similarly states that applying ASC 830 "is much more difficult" in today's global environment.

Finally, Plaintiffs assert that even if they cannot establish a strong inference of scienter as to Almeida and Saccaro, they still might be able to establish *Baxter's* scienter. To assess a corporation's scienter, the Court must look "to the state of mind of the individual corporate official or officials who make or issue the statement," and officials who "furnish information or language for inclusion therein"—*not* the "collective knowledge of all the corporation's officers and employees[.]" *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 708 (7th Cir. 2008) ("*Tellabs III*"). Almeida and Saccaro "made" the statements at issue, and Plaintiffs have not established a strong inference of scienter as to them. Plaintiffs fail to allege any specific facts that anyone else "furnished" information for the statements. Plaintiffs weakly assert that the Complaint "plausibly alleges" that former Treasurer Scott Bohaboy "oversaw the fraudulent practices, GAAP violations, and false financial reporting." Opp. at 21. But this conclusory assertion also is entirely speculative, and is not anchored on particularized facts. Plaintiffs' Complaint should be dismissed.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Allege a Strong Inference of Scienter

#### 1.    Plaintiffs Fail to Allege a Strong Inference of Scienter as to Almeida and Saccaro

Plaintiffs' Opposition makes clear that they have fallen far short of pleading a strong

3

inference of scienter. They fail to point to a single particularized fact suggesting that Almeida or Saccaro knew the allege misstatements were false or misleading at the time they were made. Plaintiffs attempt to sidestep this fatal pleading flaw by asserting that Defendants "ignore recklessness as a basis" for Defendants' scienter. Opp. at 15-16. Relying on *Tellabs III*, 513 F.3d at 704-05, Plaintiffs argue that the Complaint proves that Almeida and Saccaro "were reckless in ignoring obvious signs of fraud, which amounts to scienter." Opp. at 3, 9. But the Seventh Circuit's *Tellabs III* decision underscores the Complaint's fundamental deficiencies—and *supports* dismissal. In *Tellabs III*, the court defined "recklessness" as "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." 513 F.3d at 704. According to the court, when the "*facts* known to a person place him on notice of a risk, he cannot ignore the facts and plead ignorance of the risk." *Id.* (emphasis added).

This is where the cracks in Plaintiffs' Complaint again are exposed. In *Tellabs III*, the plaintiffs offered statements from *twenty-six* witnesses, all of whom described specific information—corroborated by "multiple sources"—that contradicted the defendants' statements in "convincing detail." *Id.* at 712. Here, in stark contrast, Plaintiffs offer no facts showing that Defendants were aware of (or obviously and recklessly disregarded) any fraud. Plaintiffs do not point to a single document, witness statement, Company meeting, or *any* specific allegations suggesting that Defendants knew of the intra-Company transactions, the accounting treatment for those transactions, or that such accounting treatment allegedly was improper.

Whether measured by the "intentional" or "extreme recklessness" standard, Plaintiffs need to allege specific facts, not speculative assertions, to survive a motion to dismiss. The Opposition confirms Plaintiffs have failed to do so, and their Complaint should be dismissed on this ground

4

alone. *See Wyche v. Advanced Drainage Sys.*, 2017 WL 971805, at \*14 (S.D.N.Y. Mar. 10, 2017) (no scienter where plaintiff had "not identified contemporaneous facts, reports, or statements to which [d]efendants had access and which contained information contrary to the information [d]efendants conveyed to the public"); *Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*, 895 F.3d 933 (7th Cir. 2018) (plaintiffs failed to allege particularized facts demonstrating defendants were aware of contradictory information at the time of statements). Plaintiffs ask the Court to infer scienter in the absence of specific facts on several grounds. All are meritless.

### a. The Existence of GAAP Deviations Does Not Establish a Strong Inference of Scienter

Plaintiffs acknowledge that a failure to follow GAAP is "insufficient to plead scienter." Opp. at 17 n.12. They nevertheless assert that an inference of scienter is "strong" here because the underlying accounting principles are "straightforward." Opp. at 1, 3, 11. Their own allegations undermine this assertion. The GAAP principle that applies to foreign-currency transactions— ASC 830 (referenced in the Complaint)—specifically states that "[l]iteral application of the" relevant GAAP standards "might require a degree of detail in record keeping and computations that could be burdensome as well as unnecessary to produce reasonable approximation of results," and that applying "the exchange rates at the dates the numerous revenues, expenses, gains, and losses are recognized is generally impractical." Ex. 4.[1] For this reason, ASC 830 recognizes that it is appropriate for companies to use "time- and effort-saving methods"—like rate conventions— "to approximate the results of detailed calculations." *Id*. Plaintiffs' Complaint also references a

---

[1] For the reasons set forth in Defendants' Motion to Consider Documents Under the Incorporation-by-Reference Doctrine or by Judicial Notice, it is appropriate for the Court to consider Exhibits 1 through 7 attached to the Declaration of Whitney B. Weber, including the PwC Foreign Currency Guide. Plaintiffs did not oppose that Motion, and thus have conceded that the materials cited by Defendants are incorporated into their Complaint and should be considered by this Court.

"Foreign Currency Guide" published by PwC. That Guide similarly states that ASC 830 was adopted during a different "global business environment," and that application of the rules "today is *much more difficult* than when [the rule] was issued." Ex. 4 (emphasis added); *see also, e.g.*, *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *14 (C.D. Cal. May 23, 2008) (no reasonable basis to conclude that "the accounting was so simple or so basic that defendants could not have made an innocent mistake"); *In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 890 (8th Cir. 2002) (GAAP are "far from being a canonical set of rules").

Even if the applicable accounting rules were "straightforward," which they are not, Plaintiffs cannot establish a strong inference of scienter merely by pointing to a "GAAP principle and contend[ing] that a correct interpretation was simple or obvious." *In re Medicis Pharm. Corp. Sec. Litig.*, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010). Plaintiffs must present facts demonstrating that Defendants were "aware of the relevant GAAP principle," "knew how that principl[e] was being interpreted," and that Defendants' "incorrect interpretation was so unreasonable or obviously wrong that it should give rise to an inference of deliberate wrongdoing." *Id*. Plaintiffs allege none of this. They do not identify any particularized facts showing that Defendants knew: (1) that the specific intra-Company transactions at issue even took place; (2) the relevant GAAP principle that applied to foreign-currency accounting for the intra-Company transactions; (3) how the GAAP principle was being applied to the relevant intra-Company transactions; or (4) "most critically," that the interpretation violated GAAP. *See Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *26 (C.D. Cal. Apr. 14, 2015).

**b.      Defendants' Alleged "Access" to Information Does Not Support a Strong Inference of Scienter**

Plaintiffs also assert that Almeida and Saccaro had "access to non-public and proprietary information concerning Baxter's operations, finances, and financial condition" that

6

"contradict[ed]" their statements. Opp. at 11-12. Not only is this allegation entirely conclusory—Plaintiffs do not explain *what* the "contradictory" information was, *when* Defendants received it, or *how* it contradicted the Challenged Statements at the time they were made—it has been "expressly criticized" by the Seventh Circuit. *Pugh v. Tribune Co.*, 521 F.3d 686, 694 (7th Cir. 2008). Indeed, a "complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information"—which is precisely what Plaintiffs' Complaint does here. *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 602 (7th Cir. 2019); *see also, e.g.*, *Pugh*, 521 F.3d at 701 (conclusory statement that defendants "should have known specific facts" insufficient to state a claim); *Arbitrage Event-Driven Fund v. Tribune Media Co.*, 2020 WL 60186, at *10 (N.D. Ill. Jan. 6, 2020) ("[I]t is not enough to have access to false information; a defendant must have knowledge that the information is false."); *Fryman v. Atlas Fin. Holdings, Inc.*, 2020 WL 2735366, at *10 (N.D. Ill. May 26, 2020) (having access to unspecified information insufficient to establish recklessness).

### c. That the GAAP Deviations Occurred "On Defendants' Watch" Does Not Support a Strong Inference of Scienter

Plaintiffs next assert that a strong inference of scienter should be inferred because the restatement "took place under the Individual Defendants' watch." Opp. at 10-11. This, too, is precisely the type of "general" allegation that is "insufficient under the PSLRA." *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 999 (E.D. Wisc. 2009); *see also, e.g.*, *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1074 (N.D. Cal. 2002) (that errors occurred "on [defendant's] watch" did not support inference of scienter); *In re China N. E. Petroleum Holdings Ltd. Sec. Litig.*, 2014 WL 7236914, at *3 (S.D.N.Y. Dec. 11, 2014) (same); *Hessefort v. Super Micro Computer, Inc.*, 2020 WL 1551140, at *8 (N.D. Cal. Mar. 23, 2020) (allegation that errors occurred on defendants' watch was not particularized). To withstand a motion to dismiss,

7

Plaintiffs must make "fact-based connections between a speaker, a statement, and specific, contradictory information presumably known to that speaker at the time the statement was made." *Harley-Davidson*, 660 F. Supp. 2d at 1000. Plaintiffs here do not identify any particular information possessed by the Defendants at any time. *See Wyche*, 2017 WL 971805, at \*14.[2]

For this reason, none of the cases cited by Plaintiffs supports their scienter arguments. The plaintiffs in those lawsuits offered detailed, particularized allegations demonstrating the executives *knew* facts that directly contradicted their public statements, or even that they *personally directed* the alleged wrongdoing. *See, e.g.*, *In re Daou Sys., Inc.*, 411 F.3d 1006, 1023 (9th Cir. 2005) (Opp. at 10-11) (confidential witness statements detailed particularized facts showing that the defendants "personally directed the violations of [the company's] stated accounting"); *Ross v. Career Educ. Corp.*, 2012 WL 5363431, at \*9 (N.D. Ill. Oct. 30, 2012) (Opp. at 9, 13, 19) (confidential witnesses described specific statements made "on weekly conference calls," a "PowerPoint presentation" provided to executives, and statements made by CEO at an internal conference); *City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*, 2012 WL 607578, at \*4 (N.D. Ill. Jan. 23, 2012) (Opp. at 12) (problems were discussed during "many meetings" at which the named defendants were present); *Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, at \*24 (N.D. Ill. Apr. 19, 2012) (Opp. at 10) (dismissing all but one challenged statement and individual defendant, and finding scienter only where plaintiffs pled "several concrete facts" showing defendants knew a substantial

---

[2] For similar reasons, Saccaro's prior service as Treasurer does not alter the scienter calculus. *See* Mot. at 16 (citing cases). Plaintiffs' sole citation on this point illustrates as much: in *Silverman v. Motorola, Inc.*, 2008 WL 4360648, at \*14 (N.D. Ill. Sept. 23, 2008) (Opp. at 10 n.5), the defendant "in charge" of a division specifically stated that he had a weekly meeting or call to monitor the status of the product at issue. Plaintiffs here point to no facts suggesting that Saccaro had any knowledge of any specific transactions, the application of the historical rate convention to those transactions, or the associated accounting for the transactions while he served as Treasurer—and considering the intra-Company transactions at issue did not relate to Baxter's operations, it is unlikely he would have been aware of their existence. *See* disc. *infra* at 9-11.

8

write-down was "not just possible, but inevitable"). Plaintiffs' Complaint alleges nothing of the sort.

### d.    The Core-Operations Doctrine Does Not Apply

Plaintiffs next assert that a strong inference of scienter should be inferred because the restatement pertained to the Company's "critical operations"—noting that Baxter generated 57% of its revenues globally. Opp. at 17-18. This argument also fails on multiple grounds. To start, Plaintiffs concede on the very first page of their Opposition that the restatement at issue resulted in *non-operating* gains on certain intra-Company foreign exchange transactions. *Id.* at 1. In other words, the intra-Company transactions had nothing to do with Baxter's revenues and profits from sales to customers—whether in the United States or abroad. The alleged misstatements thus not only fail to implicate Baxter's "*critical*" or "*core*" operations, they do not relate to the Company's *operations* at all. The "core operations" doctrine does not apply, as Plaintiffs' own cited authority makes clear. *See In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *28 (D.N.J. Aug. 8, 2018) (Opp. at 20) (company's core operations were its IT campuses, "not the licenses granting them tax and regulatory benefits"); *Silverman*, 2008 WL 4360648 at *14 (Opp. at 10) (inferring scienter in a case "about an operations problem, not an accounting deficiency").

Plaintiffs' focus on the purported "magnitude" of the restatement fails for similar reasons. Plaintiffs note the changes to the non-operating "other (income) expense" line of Baxter's income statement, but ignore that the restatement had no impact on the Company's *operating* income (*i.e.*, the revenues from Baxter's sales to customers less operating expenses).[3] Ex. 3 at 67-69, 147; *see*

---

[3] Plaintiffs incorrectly assert that the "scope or magnitude" of the restatement "or its impact on Baxter's operating income" raise "improper factual disputes." Opp. at 12 n.7. The Court is *required* to consider "competing inferences"—all of which are based upon allegations in Plaintiffs' Complaint—in determining whether Plaintiffs have established a "strong inference" of scienter. *See Tellabs II*, 551 U.S. at 324; *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th

*also Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 334 (S.D.N.Y. 2011) (noting that operations totaling 16% of sales were not sufficiently "core" to defendant's business and that, regardless, "core operations" allegations alone cannot establish scienter). Plaintiffs instead assert that the "other (income) expense" line "carried through" to other "important metrics," including net income. Opp. at 5. But at most, the restatement impacted net income by 16% in fiscal year 2017 (outside the Class Period), 4.8% in fiscal 2018, and 5% in the first half of fiscal 2019 (and significantly less than 5% based on a comparison with estimated net income for all of fiscal 2019, as GAAP instructs). *See* AC ¶¶ 78, 95. By contrast, all of Plaintiffs' cited cases involved restatements that were significantly larger. *See, e.g.*, *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 820 (N.D. Ill. 2017) (Opp. at 11-12) (net income overstated by 194.7%); *Norfolk Cty. Ret. Sys. v. Ustian*, 2009 WL 2386156, at *10 (N.D. Ill. July 28, 2009) (Opp. at 11) (accounting errors affected "all but one line item" on financial statements and net income was overstated by 187%); *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 619 (S.D.N.Y. 2015) (Opp. at 12) (net income overstated by 1600% for one of the years at issue).[4]

Even if this small change to Baxter's non-operating income were relevant to the scienter inquiry, any inference that Defendants "had to be monitoring the data because the numbers were so important" is "weak at best." *Pierrelouis v. Gogo, Inc.*, 414 F. Supp. 3d 1164, 1175 (N.D. Ill.

---

Cir. 2012) (courts consider "documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice"). Indeed, Plaintiffs themselves concede that Baxter corrected certain "additional misstatements" that are (1) not at issue here; and (2) "not material" (*i.e.*, they impacted operating income by less than one percent). AC at 30 n.7.

[4] *See also Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 860 (N.D. Ill. 2009) (company's "very survival" was at stake following restatement); *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 637 (E.D. Va. 2000) ("[T]he alleged GAAP violations and the subsequent restatements are of such a great magnitude—amounting to a night-and-day difference with regard to MicroStrategy's representations of profitability—as to compel an inference that fraud or recklessness was afoot.").

2019). Plaintiffs' own authority provides that Plaintiffs must allege "other particularized facts about specific information" conveyed to Defendants, which is starkly absent here. *Cognizant*, 2018 WL 3772675, at *28. Plaintiffs do not identify any information about the alleged misstatements that was communicated to Defendants. *See Cornielsen*, 916 F.3d at 604 (allegations failed to indicate "which of the Individual Defendants possessed particular pieces of information that could have rendered his statements . . . misleading"); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 433 (5th Cir. 2002) ("[P]laintiffs have not pointed to any particular reports or information— available to defendants before the announced financial restatements—that are contrary to the restatements."); *In re Cornerstone*, 355 F. Supp. 2d at 1091 ("[A]llegations of GAAP violations must be augmented by 'facts that shed light on the mental state' of defendants, rather than conclusory allegations that defendant must have known of the accounting failures due to the degree of departure from established accounting principles.").

### e. The Fact that Baxter Used the Historical Rate Convention for Years Does Not Support a Strong Inference of Scienter

Plaintiffs also contend that the Individual Defendants must have acted with scienter because the Company "misapplied" GAAP principles "for at least ten years." *See* Opp. at 1, 6-7, 11-12. In support of this argument, Plaintiffs cite *Akorn*, 240 F. Supp. 3d at 802 (Opp. at 11-12)—where multiple "independent auditing firms" told defendants over several years that the company's "internal controls were ineffective." But rather than remediate the deficiencies, the *Akorn* defendants "dismissed" the audit firms altogether. *Id*. at 819 (noting also the company's "internal control deficiencies were well-known among employees," and "known to [the individual defendants] personally").

The particular facts in *Akorn* highlight Plaintiffs' pleading deficiencies here. Unlike in *Akorn*, Plaintiffs do not allege that *anyone* ever informed Defendants of potential deficiencies or

11

errors—much less that Defendants dismissed such concerns. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at \*6 (S.D.N.Y. Dec. 16, 2014) (lack of allegation that auditors disapproved of accounting practices weighed against finding of scienter). On the contrary, the fact that the deviation evaded discovery for multiple quarters underscores that the issue was "subtle," not that Defendants were aware of (or consciously disregarded) it. *Webb v. SolarCity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018) (accounting errors not detected for years underscored that they were "subtle"). Plaintiffs' allegations demonstrate that this case is the opposite of *Akorn*: as soon as Defendants learned of potential accounting errors, the Company enhanced its controls, commenced an investigation, and informed both its external auditor and the SEC. AC ¶ 84. These actions demonstrate "a pursuit of truth," not scienter. *Higginbotham*, 495 F.3d at 758; *see also In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) (rejecting "speculation" that "Defendants knew of the GAAP violations because they occurred over a long period of time").

> **f.** **Awareness that GAAP Exists Falls Far Short of Establishing a Strong Inference of Scienter**

Plaintiffs also assert that Almeida and Saccaro must have acted with scienter because they "addressed Baxter's accounting methods in comments to investors." Opp. at 12-13. Specifically, Plaintiffs point to: (1) Almeida's statement that "[t]here's specific rules that allow you to exclude some numbers from your GAAP number, but both of them are available to you. We're reporting both of them"; and (2) Saccaro's statement that "[w]e have a very rigorous practice by which we assess what adjustments are made to GAAP numbers." Opp. at 12, 22; AC ¶¶ 151-52. The statements do not have anything to do with the intra-Company transactions at issue, however, and thus cannot form a basis for inferring scienter. As Plaintiffs' allegations make clear, Almeida's and Saccaro's answers did not reference *any* particular GAAP principle, let alone how that principle was being or should be applied to intra-Company transactions. *See Ixia*, 2015 WL

12

1775221 at *26 (alleging "broadly" that an accounting rule applies does not establish scienter).

### g. There Were No "Red Flags" Alerting Defendants to Alleged Misconduct

Plaintiffs assert that Baxter's "unfailing FX gains were a clear red flag that Defendants knew of or recklessly disregarded." Opp. at 13. This argument misconstrues the relevant issue and does not support a strong inference of scienter in any event. As Plaintiffs concede, changes in "FX rates can have an adverse effect on the Company's *operating results*. . . . Generally, a stronger U.S. dollar has the effect of driving down Baxter's foreign currency denominated *revenues*." AC ¶¶ 45, 47. But such fluctuations have nothing to do with the narrow intra-Company transactions at issue—which did not impact Baxter's *revenues or operating results* and thus would not be the type of metric to serve as a "red flag." Plaintiffs fail to allege that Defendants even knew that these non-operating transactions were taking place, much less how the accounting treatment for those transactions impacted the Company's *non-operating* income. Any suggestion that Defendants must have known about the transactions (and the incorrect accounting for the transactions) because they resulted in non-operating gains is pure speculation—precisely what the PSLRA prohibits. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1291 (S.D. Fla. 2008) (no scienter where "red flag" allegations hinged on hindsight—complaint must set forth "what defendants knew, how they knew it, and when they knew it"). Indeed, the very notion that positive results must have put Defendants on notice of alleged wrongdoing is the quintessential example of impermissible fraud by hindsight. *See Fulton Cty. Emps.' Ret. Sys. v. MGIC Inv. Corp.*, 2010 WL 601364 at *13 (E.D. Wis. Feb. 18, 2010), *aff'd*, 675 F.3d 1047 (7th Cir. 2012) (plaintiff cannot "rest on its suspicion that alarm bells must have been ringing").[5]

---

[5] To this end, Plaintiffs' reliance on *Akorn*, 240 F. Supp. 3d at 819, and *Dobina v. Weatherford International Ltd.*, 909 F. Supp. 2d 228, 247-48 (S.D.N.Y. 2012) is misplaced. In *Akorn*, and as

Plaintiffs' related argument—that Defendants should have been aware of the alleged practice because it "enabled Baxter to repeatedly exceed its guidance and analyst expectations"—also fails. Opp. at 14. Plaintiffs fail to allege particularized facts showing that the accounting for the intra-Company transactions at issue actually enabled the Company to exceed guidance and analyst expectations. Plaintiffs cut and paste a table from their Complaint that purports to show the Company's original and restated EPS guidance, but Plaintiffs fail to mention that these figures represent their *own concocted estimates* based on *non-GAAP* figures. *See* AC ¶ 26 n.5. Plaintiffs cannot establish a strong inference that the Defendants knew, or were deliberately reckless in not knowing, about alleged *GAAP* deviations based on Plaintiffs' own speculative estimates of *non-GAAP* metrics. *City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1113 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017) ("Absent an identified source for this data, the Court cannot determine whether Plaintiff's calculations are actual facts—entitling Plaintiff to a presumption of truthfulness—or mere speculation, which does not.")

Even if the unsupported calculations were correct, they still fail to support a strong inference of scienter. Absent particularized facts showing that Defendants were aware of the intra-Company transactions, Plaintiffs certainly cannot establish that Defendants knew (or were deliberately reckless in not knowing) that allegedly improper accounting for those transactions enabled Baxter to meet Wall Street analyst estimates. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *15-16 (S.D.N.Y. Sept. 28, 2012) (rejecting various "red flag" allegations where the specific issues were not brought to the defendants' attention). This is particularly true considering

---

noted above, "[t]hree independent auditing firms concluded that Akorn's internal controls were ineffective . . . but Defendants dismissed the first two firms instead of remediating the weaknesses that those firms uncovered." 240 F. Supp. 3d at 819. And in *Dobina*, the complaint alleged particularized facts that "audit delays and control deficiencies [were] expressly raised to [the defendant]." 909 F. Supp. 2d at 247. Plaintiffs here allege nothing of the sort.

the "desire to increase the value of a company and attain the benefits that result, such as meeting analyst expectations . . . are basic motivations not only of fraud, but of running a successful corporation." *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005).[6]

> **h.** **Plaintiffs' Motive Allegations Undercut a Strong Inference of Scienter**

Finally, Plaintiffs contend that Almeida and Saccaro were "highly motivated" to commit fraud because they "secured substantial, personal financial benefits" from the accounting errors. Opp. at 14-15. As courts repeatedly have concluded, however, the "existence of performance-based compensation" is not enough to establish scienter (*In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1045 (S.D. Cal. 2014))—otherwise, virtually every Company in the United States would be "forced to defend securities fraud actions" any time the stock price declined. *Kohl's*, 895 F.3d at 940.

Plaintiffs vaguely contend that "in a clear rebuke, Baxter's Board clawed back portions of Almeida's and Saccaro's bonuses." Opp. at 6. But as Plaintiffs' own allegations make clear, Defendants' compensation was reduced not as a "rebuke" but to "conform" the "cash bonuses paid for the years 2015 to 2018 to performance actually achieved" under the restated results. AC ¶ 124. Conforming compensation to "actual performance does not give rise to a compelling inference of scienter." *See Christian v. BT Grp. PLC*, 2018 WL 3647213, at *8 (D.N.J. Aug. 1, 2018); *cf. In re Salix Pharm., Ltd.*, 2016 WL 1629341, at *15 (S.D.N.Y. Apr. 22, 2016) (Opp. at 15)

---

[6] Plaintiffs' cited authorities again highlight the Complaint's shortcomings. In *Norfolk*, for example, the plaintiffs' "excruciatingly detailed complaint" contained numerous allegations—including another restatement and SEC inquiry, and the continued concealment of "accounting problems" after the company acknowledged potential deficiencies. 2009 WL 2386156 at *8. Likewise, in *In re Atlas Air Worldwide Holdings, Inc. Securities Litigation*, 324 F. Supp. 2d 474, 484, 491 (S.D.N.Y. 2004), the restatements implicated the company's "core operations" and ultimately led to Atlas's delisting and Chapter 11 bankruptcy. Here, the restatement did not even pertain to Baxter's operations—much less threaten delisting or bankruptcy.

(considering clawback after executives left the company based on provision that permitted recoupment for "intentionally engag[ing] in wrongdoing").

If anything, Plaintiffs' "motive" arguments undermine any inference of scienter. Plaintiffs allege that the Individual Defendants received stock-based bonuses (Opp. at 3)—but Plaintiffs do not claim that the Individual Defendants sold a single share of stock. By failing to establish any "concrete benefit" that would "justify" the risk of making false or misleading statements, Plaintiffs cannot establish that either Almeida or Saccaro acted with scienter. *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 601 (S.D.N.Y. 2016). Almeida and Saccaro—like other investors—"stood to lose a lot of money" if Baxter's share price fell. *See Pugh*, 521 F.3d at 695.

### 2.     Plaintiffs Fail to Allege a Strong Inference of Scienter as to Baxter

Apparently recognizing their scienter allegations regarding Almeida and Saccaro fall far short of the PSLRA's heightened pleading standard, Plaintiffs pivot and assert that a strong inference of *Baxter's* scienter can be inferred through a Company "official" who "participated in making the alleged misstatements." Opp. at 20. These conclusory assertions, once again, are the opposite of the particularized facts required under the PSLRA. To assess corporate scienter, the Court must look "to the state of mind of the individual corporate official or officials who *make or issue* the statement" (*i.e.*, Almeida and Saccaro), or officials who "*furnish information or language* for inclusion therein"—not the "collective knowledge of all the corporation's officers and employees." *See Tellabs III*, 513 F.3d 702. Plaintiffs are not entitled to a "presumption that statements in group-published documents"—like those at issue—"are attributable to officers and directors"; they instead must allege specific facts establishing that the relevant disclosure was "approved by corporate officials sufficiently knowledgeable about the company," and that those officials knew "that the announcement was false." *Id*. at 710. Plaintiffs do not allege any of this.

At most, Plaintiffs assert it is "plausible" that "senior officials" "furnished" information

16

about "Baxter's accounting, constant FX gains, and the impact of FX fluctuations on the Company." Opp. at 20. But to qualify as "strong," an inference of scienter "must be more than merely plausible"—"it must be cogent and at least as compelling as an opposing inference of nonfraudulent intent." *Tellabs II*, 551 U.S. at 314. Here, Plaintiffs fail to allege any facts demonstrating that any "senior official"—including former Treasurer Scott Bohaboy—furnished any information for inclusion in the alleged misstatements. Nor do Plaintiffs allege with particularity that Bohaboy (or any other "senior official") *knew* or was *deliberately reckless in not knowing* that the information they allegedly furnished was false and misleading.

In fact, Plaintiffs allege nothing about Bohaboy at all, other than to say he served as the Treasurer, "oversaw" the allegedly "fraudulent practices," and left the Company "just prior" to the announcement of the internal investigation. Opp. at 21. These are "exactly the type of generalized allegations the court must disregard under the PSLRA." *See Plumbers & Pipefitters Local Union v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 746-47 (S.D. Ind. 2009), *aff'd*, 679 F.3d 952 (7th Cir. 2012). An individual's position "within the company prove[s] nothing about fraud or knowledge thereof." *Id.*; *see also Pipefitters Local No. 636 Defined Ben. Plan v. Zale Corp.*, 499 F. App'x 345, 348 (5th Cir. 2012) (corporate scienter not adequately alleged where complaint did not include "enough facts to say that [the officer] was obviously aware her inaccurate accounting could or would eventually result in [the Company] releasing misleading financial statements with material errors").[7] Likewise, it is "unremarkable" that the Company would change its management

_____

[7] Although the Seventh Circuit has suggested that plaintiffs can establish scienter "without being able to name the individuals who concocted and disseminated the fraud," that case involved false statements about the defendant company's most important, "flagship product"—as well as detailed allegations from twenty-six witnesses who described the alleged wrongdoing in "convincing detail." *Tellabs III,* 513 at 710. Plaintiffs' allegations here are completely different: they pertain to the accounting treatment for a narrow set of non-operating intra-Company transactions, and are not supported by any specific, contemporaneous witness testimony, documents, or other

17

team after a restatement. *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1074 (N.D. Cal. 2002); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009), *as amended* (Feb. 10, 2009). Plaintiffs have failed to allege particularized facts regarding Bohaboy's departure; they concede he left "without explanation." AC ¶ 114.

**B. Plaintiffs Fail to Allege That Many of the Challenged Statements Are Materially False or Misleading**

**1. Plaintiffs Fail to Allege That the GAAP-Compliance Statements Are Materially False or Misleading**

Plaintiffs contend that Defendants made three misstatements concerning the Company's alleged "compliance" with GAAP. *See* Opp. at 22-23. But Plaintiffs continue to misquote the statements they challenge. Plaintiffs first assert that "[i]n the 2018 10-K, Defendants represented that Baxter 'prepar[ed] . . . the financial statements in conformity with generally accepted accounting principles (GAAP).'" AC ¶ 149. But Plaintiffs alter and omit language through ellipses that change the meaning entirely. The Company actually stated that "preparation of the financial statements in conformity with [GAAP] requires the company to make estimates and assumptions that affect reported amounts and related disclosures." Ex. 2 at 49. Plaintiffs attempt to downplay their alteration in the Opposition, claiming the language they omitted is not "relevant," and that the restatement was not attributed to "mere errors in accounting judgment." Opp. at 23. Plaintiffs miss the point: the issue is whether the statement specifically represented that Baxter's financials complied with GAAP. The statement simply did not make such a representation. *See* Mot. at 22-23 (citing cases).

Plaintiffs next assert that Almeida and Saccaro "assured" investors at a meeting that the Company's financial reporting "complied with GAAP." *See* AC ¶¶ 151-52; Opp. at 2. These

---

particularized facts showing that anyone knew or was deliberately reckless in not knowing that the statements at issue were false at the time they were made.

statements did not pertain to GAAP compliance. Instead, Almeida and Saccaro described the Company's process to present *non-GAAP* figures, as Plaintiffs acknowledge. *See* AC ¶¶ 151-52; *see also Alizadeh v. Tellabs, Inc.*, 2015 WL 557249, at *15 (N.D. Ill. Feb. 9, 2015) ("Plaintiffs cannot construe [a] statement into an assurance" where that is not what the statement said).

Finally, Plaintiffs attempt to hold Defendants liable for a statement they did not make. In Baxter's 2018 Form 10-K, PwC offered its opinion that the financial statements presented, "in all material respects," Baxter's financial position as of December 31, 2018 and 2017, "in conformity" with GAAP. AC ¶ 150. Plaintiffs now assert that the Company had "ultimate authority" over the statement. Opp. at 24. Plaintiffs did not make these allegations in the Complaint. *See Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss[.]"). Nor can they. As the 2018 Form 10-K itself explains, PwC is a "public accounting firm . . . and [is] required to be *independent* with respect to the Company in accordance with the U.S. federal securities laws." Ex. 2 at 96 (emphasis added). Defendants had no "authority" over PwC's statement, and cannot be held liable for it. *See Janus Cap. Grp. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011).

### 2. Plaintiffs Fail to Allege That the Internal-Controls Statements Are Materially False or Misleading

Plaintiffs also challenge Almeida's and Saccaro's SOX certifications regarding Baxter's internal controls over financial reporting, as well as a related statement in the 2018 Form 10-K regarding an evaluation of disclosure controls. *See* AC ¶¶ 148, 156-60. None of these statements is actionable. Plaintiffs concede that the SOX certifications are *opinions*, which means that in order to establish falsity, Plaintiffs must identify specific facts suggesting that when Almeida and Saccaro made the statements, they had reached a different conclusion than the one expressed—or reached no conclusion at all. *See* Mot. at 24 (citing *Omnicare, Inc. v. Laborers Dist. Council*

19

*Constr. Indus. Pension Fund*, 575 U.S. 175 (2015); *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *24-25 (S.D.N.Y. Sept. 9, 2019)). Plaintiffs, again, allege none of this. They baldly assert that the opinions did not "fairly align[] with the information" in Almeida's and Saccaro's possession. Fatal to this claim, however, Plaintiffs do not identify a single piece of information in Defendants' "possession" at *any* time. Nor do Plaintiffs allege that such information contradicted the opinions presented. The SOX certifications are not actionable. *See In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248 (8th Cir. 2008) ("[A] showing in hindsight that the [SOX] statements were false does not demonstrate fraudulent intent.").

The same is true for the third statement—that following an evaluation, Almeida and Saccaro concluded that the Company's disclosure controls and procedures were effective. AC ¶ 156. Plaintiffs concede that this "evaluation" occurred (Opp. at 14), and do not allege any facts suggesting that Almeida and Saccaro reached a different conclusion than the one stated. *See Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 683 (D. Colo. 2007) (rejecting nearly identical allegations as non-actionable). In fact, Plaintiffs allege no particularized facts about Defendants' state of mind at all. This statement should be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Dated: November 9, 2020

Respectfully submitted,

By s/ Sean M. Berkowitz
Sean M. Berkowitz (ARDC No. 6209701)
Nicholas J. Siciliano (ARDC No. 6287387)
LATHAM & WATKINS LLP
sean.berkowitz@lw.com
nicholas.siciliano@lw.com
330 N Wabash Ave, Suite 2800
Chicago, Illinois 60611
(312) 876-7700

20

Whitney B. Weber (ARDC No. 6311007)
LATHAM & WATKINS LLP
whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 931-0600

*Attorneys for Defendants Baxter International Inc.,
José E. Almeida and James K. Saccaro*

21