**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE BAXTER INTERNATIONAL INC. SECURITIES LITIGATION | Case No. 1:19-cv-07786 |
| | District Judge Sara L. Ellis |
| | Magistrate Judge Jeffrey I. Cummings |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AND <u>AUTHORIZATION TO DISSEMINATE NOTICE OF SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ........................................................................... 1

II.    FACTUAL BACKGROUND............................................................................ 2

      A.     Overview Of The Action ......................................................................2

      B.     Settlement Negotiations And Terms Of The Proposed Settlement ........................3

III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 5

      A.     Standards Governing Approval Of Class Action Settlements ...............................5

      B.     The Court "Will Likely Be Able" To Approve The Proposed Settlement Under Rule 23(e)(2)...................................................................................6

           1.     Procedural Aspects Of The Settlement Satisfy Rule 23(e)(2) ................... 6

           2.     The Terms Of The Proposed Settlement Are Adequate ........................... 8

                a.     The Settlement Provides Substantial Relief, Especially In Light Of The Costs, Risks, And Delay Of Further Litigation...................................................................................8

                b.     The Settlement Does Not Unjustly Favor Any Settlement Class Member ...................................................................9

                c.     The Anticipated Request For Attorneys' Fees Is Reasonable ..............................................................................10

                d.     Lead Plaintiffs Have Identified All Agreements Made In Connection With The Settlement.....................................................11

      C.     The Settlement Class Satisfies The Standards For Class Certification.................11

           1.     The Settlement Class Satisfies The Requirements Of Rule 23(a) ............ 11

           2.     The Settlement Class Satisfies Rule 23(b)(3) ......................................... 13

IV.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ...................... 14

V.    CONCLUSION................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Van Kampen Funds, Inc.*,
2002 WL 1989401 (N.D. Ill. Aug. 27, 2002) ...........................................................................12

*In re Akorn, Inc. Data Integrity Sec. Litig.*,
No. 1:18-cv-01713 (N.D. Ill. Mar. 13, 2020), ECF No. 188 ....................................................10

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).............................................................................................................11, 13

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ...........................................................................................5, 6, 7

*In re Bank One Sec. Litig./First Chi. S'holder Claims*,
2002 WL 989454 (N.D. Ill. May 14, 2002).............................................................................13

*In re Career Educ. Corp. Sec. Litig.*,
2008 WL 8666579 (N.D. Ill. June 26, 2008)..............................................................................8

*Goldsmith v. Tech. Sols. Co.*,
1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)............................................................................5

*In re Groupon, Inc. Sec. Litig.*,
2016 WL 3896839 (N.D. Ill. July 13, 2016)............................................................................10

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .........................................................................11

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ....................................................................................................5

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
264 F.R.D. 438 (N.D. Ill. 2009)................................................................................................6

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) ...................................................................................................12

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
244 F.R.D. 469 (N.D. Ill. 2007)...............................................................................................14

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ................................................................................................6

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)...................................................................................................................14

*In re NeoPharm, Inc. Sec. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004)..................................................................................12, 13, 14

*In re Northfield Lab'ys, Inc. Sec. Litig.*,
    2012 WL 366852 (N.D. Ill. 2012) ........................................................................................5, 15

*Retired Chi. Police Ass'n v. City of Chi.*,
    7 F.3d 584 (7th Cir. 1993) ...........................................................................................................13

*Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*,
    2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)............................................................................8, 9

*Ronge v. Camping World Holdings, Inc.*,
    No. 1:18-cv-07030 (N.D. Ill. Aug. 5, 2020), ECF No. 158 ......................................................10

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010) ......................................................................................................11

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
    2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ..................................................................................7

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ...........................................................................15

*Sokolow v. LJM Funds Mgm't, Ltd.*,
    No. 1:18-cv-01039 (N.D. Ill. Dec. 18, 2019), ECF No. 216 ....................................................10

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
    309 F.3d 978 (7th Cir. 2002) ......................................................................................................11

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ...............................................................................................6, 7, 8

**Statutes**

15 U.S.C. § 78u-4(a).................................................................................................................14, 15

**Other Authorities**

Fed. R. Civ. P. 23.............................................................................................................. *passim*

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2019
    Review and Analysis*, Cornerstone Research, 6 (2020),
    http://www.cornerstone.com/Publications/Reports/Securities-Class-Action-
    Settlements-2019-Review-and-Analysis...................................................................................9

*Manual for Complex Litigation (Fourth)* § 13.14 (2020) .................................................................5

*Newberg on Class Actions* § 13:12 (5th ed. 2020) ...........................................................................6

iv

Court-appointed Lead Plaintiffs Louisiana Municipal Police Employees' Retirement System and Varma Mutual Pension Insurance Company respectfully submit this memorandum of law in support of their unopposed motion for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("PAO").[1]

## I. PRELIMINARY STATEMENT

Lead Plaintiffs have reached an agreement with Defendants to resolve all claims asserted in the Action in exchange for $16,000,000 in cash pursuant to the Stipulation. At this time, Lead Plaintiffs seek the Court's preliminary approval of the Settlement under Rule 23 of the Federal Rules of Civil Procedure ("Rules") so that Lead Plaintiffs can disseminate notice of the Settlement to the Settlement Class and the Court can schedule the Settlement Hearing.

Lead Plaintiffs and Lead Counsel believe that the proposed Settlement—reached following well-informed, arm's-length negotiations facilitated by an experienced mediator—provides a significant benefit to the Settlement Class. In agreeing to resolve the Action, Lead Plaintiffs and Lead Counsel were wholly aware of the strengths and weaknesses of Lead Plaintiffs' claims, and made a fully informed evaluation of the risks of continued litigation and the fairness of the Action's resolution at this time. While Lead Plaintiffs and Lead Counsel believe their claims against Defendants are meritorious, they also recognize that, in the absence of settlement, they faced the significant risk that continued litigation might have resulted in a smaller recovery—*or no recovery at all*. Indeed, at the time the Settlement was reached, Lead Plaintiffs' Complaint had been dismissed in its entirety. If Lead Plaintiffs were unable to sufficiently address the issues identified in the Court's MTD Order and survive a second motion to dismiss, the Action would be dismissed

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated April 1, 2021 ("Stipulation" or "Stip."), which is attached as Exhibit 1 to the accompanying Declaration of Sharan Nirmul ("Nirmul Declaration").

with prejudice and the Settlement Class would recover nothing.

At the Settlement Hearing, the Court will have before it more extensive submissions in support of the Settlement, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. Entry of the PAO will begin the process for consideration of final approval of the Settlement by, among other things: (i) preliminarily approving the Settlement on the terms set forth in the Stipulation; (ii) certifying the Settlement Class for settlement purposes; (iii) approving the form and content of the Settlement notices and Claim Form (Exhibits 1, 2, and 3 to the PAO); (iv) finding the plan for disseminating the notices constitutes the best notice practicable under the circumstances and complies with due process, Rule 23, and the PSLRA; and (v) setting a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses, as well as a schedule for related events and deadlines. *See* Appendix A hereto (summarizing proposed schedule set forth in the PAO).[2]

## II.    FACTUAL BACKGROUND

### A.    Overview Of The Action

This Action commenced on November 25, 2019, with the filing of the initial complaint against Baxter and certain of its Class Period executives. ECF No. 1. On January 31, 2020, the Court appointed Louisiana Municipal Police Employees' Retirement System and Varma Mutual Pension Insurance Company as Lead Plaintiffs and approved Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP as Lead Counsel. ECF No. 21.

---

[2] As set forth in Appendix A, Lead Plaintiffs respectfully request that the Court schedule the Settlement Hearing for a date 110 calendar days after entry of the PAO, or at the Court's earliest convenience thereafter, to allow time for mailing of notice to Settlement Class Members and to comply with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 *et seq*.

2

On June 25, 2020, Lead Plaintiffs filed the Class Action Complaint and Demand for Jury Trial ("Complaint"), asserting violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10-5 promulgated thereunder by the Securities and Exchange Commission. ECF No. 34. The Complaint alleged that Defendants made materially false and misleading statements and omissions regarding Baxter's income and other financial metrics related to foreign exchange rate fluctuations, its compliance with generally accepted accounting principles ("GAAP"), and the adequacy and effectiveness of its internal controls over financial reporting. The Complaint further alleged that the price of Baxter common stock was artificially inflated during the Class Period as a result of Defendants' alleged conduct, and declined when the truth was revealed on October 24, 2019, causing damage to Baxter common stock shareholders.

Defendants moved to dismiss the Complaint on August 24, 2020. ECF Nos. 39-41. Following full briefing on Defendants' motion, the Court issued an Opinion and Order granting the motion (i.e., MTD Order) on January 12, 2021. ECF No. 47. By the MTD Order, the Court provided Lead Plaintiffs twenty-one (21) days to amend the Complaint; that deadline was subsequently extended to February 26, 2021. ECF No. 49.

**B.      Settlement Negotiations And Terms Of The Proposed Settlement**

Following the issuance of the MTD Order, the Parties discussed the possibility of resolving the Action through settlement and scheduled a mediation with Gregory Lindstrom, Esq. of Phillips ADR. In advance of the February 17, 2021 mediation, the Parties exchanged detailed mediation statements addressing liability and damages. At the mediation, the Parties reached an agreement in principle to settle the Action subject to the Due Diligence Discovery described below. The Parties' agreement was memorialized in a term sheet executed on February 25, 2021.

Thereafter, the Parties negotiated the specific terms of their agreement to resolve the Action, executing the Stipulation on April 1, 2021. The Stipulation provides that Defendants will

3

pay or cause to be paid $16,000,000 in cash ("Settlement Amount") into an interest-bearing escrow account. The Settlement Amount, plus interest, after deduction of Court-approved costs ("Net Settlement Fund"), will be distributed among eligible Settlement Class Members who submit valid Claims in accordance with a Court-approved plan of allocation.

Under the Settlement, the Parties have agreed to the certification of the Settlement Class for settlement purposes only. The proposed Settlement Class consists of: all persons or entities who purchased or otherwise acquired Baxter common stock during the period from February 21, 2019 through October 23, 2019, inclusive, and were damaged thereby.[3] *See* Stip. ¶ 1.ss, ¶ 2. As discussed below, the proposed Settlement Class satisfies the requirements of Rules 23(a) and 23(b)(3), and it is likely that the Court will ultimately decide, at or after the Settlement Hearing, that the Settlement Class should be certified for purposes of the Settlement.

In addition, as noted above, Lead Plaintiffs successfully negotiated for discovery—documents and a witness interview—in order to confirm the adequacy of the Settlement (i.e., Due Diligence Discovery), as well as the right to withdraw from the Settlement prior to filing final approval papers if information produced during Due Diligence Discovery renders the Settlement unfair or unreasonable and the Parties cannot resolve their concerns with the assistance of the Mediator. *See* Stip. ¶ 8. This process is ongoing, but Lead Plaintiffs have already undertaken substantial efforts pursuant to these provisions, including obtaining over 10,000 pages of documents produced by Defendants and reviewing a large number of those documents.

If the Settlement receives the Court's final approval, Settlement Class Members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount and the right to

---

[3] Excluded from the Settlement Class are Defendants, any person who was an executive officer or director of Baxter during the Class Period, their Immediate Family members, any affiliates of Baxter, and any persons or entities who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court.

participate in the distribution of the Net Settlement Fund. Stip. ¶ 1.nn. The release's scope is reasonable as it is limited to claims related to the purchase or acquisition of Baxter common stock during the Class Period and to the Complaint's allegations.

## III.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.  Standards Governing Approval Of Class Action Settlements

Settlement is a strongly favored method for resolving class action litigation. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *1 (N.D. Ill. Oct. 10, 1995) ("[T]he federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement.").[4] Rule 23(e) requires judicial approval of class action settlements. Such approval is a two-step process. *See Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980); *In re Northfield Lab'ys, Inc. Sec. Litig.*, 2012 WL 366852, at *5 (N.D. Ill. 2012). First, the court performs a preliminary review of the terms of the proposed settlement to determine whether it is sufficient to warrant notice to the class and a hearing; and second, after notice has been provided and a hearing held, the court determines whether to grant final approval of the settlement. *See Manual for Complex Litigation (Fourth)* § 13.14 (2020).

With respect to the first step of the approval process, a court should grant preliminary approval and authorize notice of a settlement to the class upon a finding that it "*will likely be able*" to (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement. *See* Rule 23(e)(1)(B). In considering whether final approval is likely, Rule 23(e)(2) provides that courts consider whether:

---

[4] Citations, quotation marks, and footnotes have been omitted and emphasis has been added unless otherwise indicated.

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.[5]

This current standard for preliminary approval under Rule 23(e) was revised through amendments that effectively codified existing case law and retains the well-settled principle that preliminary approval should be granted where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval." *Newberg on Class Actions* § 13:12 (5th ed. 2020).[6]

**B.     The Court "Will Likely Be Able" To Approve The Proposed Settlement Under Rule 23(e)(2)**

**1.     Procedural Aspects Of The Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) advisory committee's note to 2018 amendment. Courts have found that a settlement arrived at after arm's-length negotiations by fully informed, experienced, and competent counsel may be properly presumed to be fair and adequate. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001).

---

[5] Final approval will involve an analysis of the Rule 23(e)(2) factors and, to the extent they do not overlap, the Seventh Circuit's approval factors: (i) the strength of the case, balanced against the settlement amount; (ii) the defendant's ability to pay; (iii) the complexity, length, and expense of further litigation; (iv) the amount of opposition to the settlement; (v) the presence of collusion in reaching a settlement; (vi) the opinion of competent counsel; and (vii) the stage of the proceedings. *See Armstrong*, 616 F.2d at 314; *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

[6] *See also Armstrong*, 616 F.2d at 314 (the question at the preliminary approval stage is "whether the proposed settlement is within the range of possible approval"); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009) (a relevant consideration is "whether [the settlement] has no obvious deficiencies [and] does not improperly grant preferential treatment to class representatives or segments of the class") (section alteration in original).

6

Here, the Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). *First*, Lead Counsel's settlement posture was informed by, among other things, the significant work performed in investigating and drafting the detailed Complaint, responding to Defendants' motion to dismiss the Complaint, the Court's MTD Order, and Lead Plaintiffs' post MTD Order investigation and preparation of an amended complaint. Lead Counsel also prepared and reviewed extensive written mediation submissions, participated in a formal, full-day mediation, and considered potential damages and the costs and risks of ongoing litigation. Fully aware of the strengths and weaknesses of the claims and defenses in this Action and the possibility of an adverse ruling by the Court on a second motion to dismiss, Lead Counsel—who have extensive experience litigating securities class actions—conducted the settlement negotiations seeking to achieve the best possible result for the Settlement Class in light of the risks of continued litigation.[7] Moreover, while Lead Plaintiffs were unable to conduct formal discovery due to the mandatory PSLRA discovery stay pending the motion to dismiss, Lead Plaintiffs are currently conducting Due Diligence Discovery to confirm the adequacy of the Settlement.[8]

Additionally, Court-appointed Lead Plaintiffs—institutional investors who suffered substantial losses as a result of their purchases of Baxter common stock during the Class Period—have claims that are typical of those of other Settlement Class Members and, like the rest of the Settlement Class, have an interest in obtaining the largest possible recovery.

*Second*, the Parties' settlement negotiations were at arm's length and included formal mediation with Mr. Lindstrom. The mediation involved exchanges of the Parties' respective views

---

[7] Courts give considerable weight to the opinion of experienced and informed counsel. *See In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 2016 WL 772785, at *12 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 325 (in assessing a class settlement, "the court is entitled to rely heavily on the opinion of competent counsel").

[8] In affirming a district court's approval of a settlement reached prior to formal discovery, the court noted that, as here, the plaintiff "had access to extensive public documents." *Accretive*, 773 F.3d at 864.

7

on the merits of the claims, Defendants' defenses, and issues related to damages. The Parties reached their agreement to resolve the Action at the mediation. Mr. Lindstrom's involvement in this process further supports that the Settlement is fair and that the Parties achieved it free of collusion. *See Accretive*, 773 F.3d at 863-64. (approving settlement in light of "extensive arm's-length negotiations with an experienced third-party mediator"); *In re Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (approving settlement "result[ing] from arms-length negotiations and voluntary mediation between experienced counsel").

### 2. The Terms Of The Proposed Settlement Are Adequate

#### a. The Settlement Provides Substantial Relief, Especially In Light Of The Costs, Risks, And Delay Of Further Litigation

A key factor to be considered in assessing the approval of a class action settlement is a plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. *See* Rule 23(e)(2)(C). Here, the Settlement provides for an immediate cash recovery of $16,000,000 to be allocated among Settlement Class Members following deduction of Court-approved costs.

In comparison, if the Action had continued, Lead Plaintiffs would have faced significant risks to recovery. Indeed, with the Court having dismissed Lead Plaintiffs' Complaint (rejecting Lead Plaintiffs' scienter arguments on multiple grounds), the Settlement came at a moment of substantial uncertainty in the Action. ECF No. 47. Although Lead Plaintiffs believe they could amend the Complaint to address the Court's concerns and ultimately withstand a second motion to dismiss, there was a serious risk that the Court would have ruled in Defendants' favor again, dismissing the Action *with prejudice* and eliminating any recovery for the Settlement Class.

Even if Lead Plaintiffs survived a second motion to dismiss, they would face significant challenges from Defendants at class certification, summary judgment, and trial. *See generally Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10,

8

2001) (recognizing that "[s]ecurities fraud litigation is long, complex and uncertain"). In particular, Defendants would continue to vigorously argue that the Individual Defendants did not know (and were not deliberately reckless in not knowing) of the intra-Company transactions at issue in the Action, the purpose of the transactions, the accounting treatment for the transactions, or that the accounting treatment deviated from GAAP at the time of the alleged misstatements. Likewise, Defendants would contend that none of the challenged statements were false or misleading. And, if liability could be established, Defendants would also likely challenge damages.

Lead Plaintiffs' damages consultant has estimated the Settlement Class's maximum aggregate damages in this Action to be approximately $208 million. Using this estimate, the Settlement represents approximately 8% of maximum damages. This is significantly more than the median recovery obtained in recent securities class actions in which a similar damages amount was at issue.[9] Accordingly, the recovery obtained here would be a good recovery in any securities action, but is particularly favorable considering the Court's dismissal of the Complaint.

### b. The Settlement Does Not Unjustly Favor Any Settlement Class Member

The Court must also ultimately assess the Settlement's effectiveness in equitably distributing relief to members of the Settlement Class. Rule 23(e)(2)(C)(ii); Rule 23(e)(2)(D). The proposed Plan of Allocation ("Plan") set forth in the Notice provides a straightforward and effective means of distributing the Net Settlement Fund and treats Settlement Class Members equitably relative to each other. The Plan provides for distribution of the Net Settlement Fund to

---

[9] Cornerstone Research reported that in 2019, the median securities class action settlement amount was 4.8% of estimated damages for cases with estimated damages between $150 and $249 million, and over the prior decade (2010 through 2018), the median settlement amount for such cases was 4.0% of estimated damages. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2019 Review and Analysis*, Cornerstone Research, 6 (2020), http://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis.

Settlement Class Members who submit timely and valid Claims demonstrating a loss on their transactions in Baxter common stock purchased or otherwise acquired during the Class Period and held through the end of the Class Period. The Plan, which was developed in consultation with Lead Plaintiffs' damages consultant, is based on the estimated amount of artificial inflation in the price of Baxter common stock during the Class Period that was allegedly caused by Defendants' misconduct. Further, the Plan was created without consideration of Lead Plaintiffs' individual transactions. This method ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained, and eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. Here, too, the Court can readily find the Settlement will likely earn approval.

### c. The Anticipated Request For Attorneys' Fees Is Reasonable

The Notice provides that Lead Counsel will apply for an award of attorneys' fees not to exceed 22% of the Settlement Fund, plus reimbursement of expenses.[10] A fee of up to 22% is reasonable here and falls on the lower end of attorneys' fees typically awarded by court in this District. *See, e.g.*, *Ronge v. Camping World Holdings, Inc.*, No. 1:18-cv-07030 (N.D. Ill. Aug. 5, 2020), ECF No. 158 (30% fee); *In re Akorn, Inc. Data Integrity Sec. Litig.*, No. 1:18-cv-01713 (N.D. Ill. Mar. 13, 2020), ECF No. 188 (25% fee); *Sokolow v. LJM Funds Mgm't, Ltd.*, No. 1:18-cv-01039 (N.D. Ill. Dec. 18, 2019), ECF No. 216 (28% fee); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *4 (N.D. Ill. July 13, 2016) (30% fee). Further, Settlement Class Members will have an opportunity to weigh in on the fee request before the Settlement Hearing.

---

[10] As set forth in the Notice, Lead Counsel's request for expenses may include a request for reimbursement of Lead Plaintiffs' reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Settlement Class in accordance with 15 U.S.C. § 78u-4(a)(4).

### d. Lead Plaintiffs Have Identified All Agreements Made In Connection With The Settlement

In addition to the Term Sheet and Stipulation, the Parties have entered into a standard, confidential Supplemental Agreement which gives Baxter the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon conditions.[11] Stip. ¶ 44.a. The Parties also entered into a separate Confidential Agreement for Confirmatory Discovery to govern the treatment of information provided by Defendants in connection with Due Diligence Discovery. Stip. ¶ 4.

### C. The Settlement Class Satisfies The Standards For Class Certification

The second part of the settlement approval process is to determine whether the action may be maintained as a class action for settlement purposes under Rule 23. *See* Rule 23(e)(1)(B)(ii).[12] At the preliminary approval stage, the Court should determine whether it "will likely be able" to grant certification to the proposed Settlement Class at final approval. *See* Rule 23(e)(1)(B).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and 23(b). *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem*, 521 U.S. at 593. As demonstrated below, certification of the proposed Settlement Class for purposes of the Settlement is appropriate here.

### 1. The Settlement Class Satisfies The Requirements Of Rule 23(a)

Certification is proper if: "(1) the class is so numerous that joinder of all members is

---

[11] This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

[12] Courts have long acknowledged the propriety of a settlement class. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997); *see also Schleicher v. Wendt*, 618 F.3d 679, 682 (7th Cir. 2010) (acknowledging that in securities actions, "class certification is routine").

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical . . . ; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(a).

*First*, with respect to Rule 23(a)(1)'s numerosity requirement, Baxter common stock was actively traded on the New York Stock Exchange throughout the Class Period and as of April 21, 2020, Baxter had 508,836,225 shares of common stock outstanding. ECF No. 34, ¶ 23. For this reason, Settlement Class Members are likely to number in the thousands. *See In re NeoPharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) (certifying class where more than 16 million company shares were outstanding and "[i]t can be reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class"). Numerosity is met here.

*Second*, Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality requirement "is not a demanding requirement," as just "one issue of fact or law common to all class members will suffice." *Abrams v. Van Kampen Funds, Inc.*, 2002 WL 1989401, at *3 (N.D. Ill. Aug. 27, 2002). Here, the claims present questions of law and fact common to all Settlement Class Members, including whether: (i) Defendants omitted or misrepresented material facts with respect to Baxter's financial reporting; (ii) Defendants acted with scienter; and (iii) Defendants' alleged misstatements and omissions caused economic harm to the Settlement Class. Thus, commonality is satisfied.

*Third*, Rule 23(a)(3)'s typicality requirement is satisfied if a plaintiff's claims arise from the same "event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Here, Lead Plaintiffs' claims are typical of those of other Settlement Class Members—they purchased Baxter common stock during the Class Period at prices allegedly inflated by

Defendants' alleged misconduct and were harmed when the relevant truth was revealed. Further, Lead Plaintiffs and members of the Settlement Class "will use the same evidence to prove their case." *In re Bank One Sec. Litig./First Chi. S'holder Claims*, 2002 WL 989454, at *4 (N.D. Ill. May 14, 2002). Therefore, typicality is established.

*Fourth*, Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). The adequacy determination is two-pronged: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993). Here, Lead Plaintiffs are sophisticated institutional investors that have represented and will continue to represent the interests of the Settlement Class fairly and adequately, and there is no antagonism or conflict of interest between Lead Plaintiffs and the other Settlement Class Members. In addition, Lead Counsel have substantial expertise in complex civil litigation, particularly the litigation of securities class actions, and were fully capable of prosecuting this Action. The adequacy requirement is satisfied.

### 2. The Settlement Class Satisfies Rule 23(b)(3)

The Settlement Class also satisfies Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). As the Supreme Court has recognized, predominance is a test "readily met" in cases alleging violations of the securities laws. *Amchem*, 521 U.S. at 625. Indeed, as the above analysis under Rule 23(a)(2)'s commonality standard demonstrates, there are various questions of law and fact common to Lead Plaintiffs and the Settlement Class that predominate over any individual issues. *See NeoPharm*, 225 F.R.D. at 568 ("main question involved in this case

13

is whether defendants' alleged false and misleading statements and material omissions violated §§ 10(b) and 20(a) of the Act"). Further, resolution of this Action through a class action is superior to litigating thousands of individual claims where the expense for a single investor could exceed the individual's loss. *See, e.g.*, *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 481 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009).

## IV. NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). Similarly, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Rule 23(e)(1)(B). Moreover, notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Consistent with Rules 23(c)(2)(B) and 23(e)(1)(B), the Notice objectively and neutrally apprises all Settlement Class Members of (among other disclosures): (i) the nature of the Action; (ii) the definition of the Settlement Class; (iii) the claims and issues involved; (iv) that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so); and (v) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B). The Notice also satisfies the PSLRA's additional requirements by stating: (i) the Settlement amount in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages per share that would be recoverable at trial; (iii) that Lead Counsel intend to apply for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) Lead

14

Counsel's contact information; and (v) the reasons for the Settlement. 15 U.S.C. § 78u-4(a)(7).

As outlined in the PAO, if the Court grants preliminary approval, the Claims Administrator will mail or e-mail the Notice and Claim Form to all Settlement Class Members who can be identified through reasonable effort, including through a list of record holders to be provided by Defendants.[13] To disseminate the Notice, the Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners. In addition, the Summary Notice will be published in *The Wall Street Journal* and transmitted over the *PR Newswire*, and the Claims Administrator will maintain a dedicated Settlement website.

Courts routinely find that comparable notice programs, including individual notice by first class mail to all class members who can reasonably be identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process. *See, e.g., Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020) (finding notice by publication and mail appropriate); *Northfield Lab'ys*, 2012 WL 366852, at *7-8 (same).

## V.    CONCLUSION

For all the foregoing reasons, the Settlement warrants the Court's preliminary approval and the proposed Preliminary Approval Order should be entered.

Dated: April 1, 2021                                                 Respectfully submitted,

                                                                     **KESSLER TOPAZ**
                                                                     **MELTZER & CHECK, LLP**

                                                                     */s/ Sharan Nirmul*

---

[13] Lead Plaintiffs also request the Court's approval of their retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the claims administrator for the Settlement. Selected following a formal bidding process, Epiq is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements. *See* Epiq Résumé attached as Exhibit 5 to the Nirmul Declaration. *See also* https://www.epiqglobal.com/en-us/services/class-action-mass-tort/class-action-administration.

Sharan Nirmul (#90751)
Joshua A. Materese (#314844)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
jmaterese@ktmc.com

**BERNSTEIN LITOWITZ
BERGER & GROSSMANN LLP**
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, IL 60611
Telephone: (312) 373-3800
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

James A. Harrod (admitted *pro hac vice*)
Adam D. Hollander (admitted *pro hac vice*)
Alexander T. Payne (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Jim.Harrod@blbglaw.com
Adam.Hollander@blbglaw.com
Alex.Payne@blbglaw.com

*Lead Counsel for Lead Plaintiffs
and the Class*

16

**Appendix A**

**Proposed Schedule of Settlement Events**

| Event | Proposed Timing |
|---|---|
| Deadline for service of the notice required under CAFA by Defendants (PAO ¶ 10) | No later than 10 calendar days following the filing of the Stipulation with the Court |
| Deadline for Defendants' to provide list of holders of Baxter common stock during the Class Period (PAO ¶ 7(a)) | Within 5 business days after entry of the PAO |
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (PAO ¶ 7(b)) | No later than 20 business days after entry of the PAO |
| Deadline for publishing the Summary Notice (PAO ¶ 7(d)) | No later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (PAO ¶ 27) | 35 calendar days before the Settlement Hearing |
| Deadline for receipt of requests for exclusion or objections (PAO ¶¶ 14, 18) | 21 calendar days before the Settlement Hearing |
| Deadline for filing reply papers (PAO ¶ 27) | 7 calendar days before the Settlement Hearing |
| Settlement Hearing (PAO ¶ 5) | 110 calendar days after entry of the PAO, or at the Court's earliest convenience thereafter |
| Postmark deadline for submitting Claim Forms (PAO ¶ 11) | 120 calendar days after the Notice Date |

17