**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| IN RE BAXTER INTERNATIONAL INC. SECURITIES LITIGATION | Case No. 1:19-cv-07786<br><br>District Judge Sara L. Ellis<br><br>Magistrate Judge Jeffrey I. Cummings |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRELIMINARY STATEMENT ........................................................................1

II.    THE SETTLEMENT WARRANTS FINAL APPROVAL..................................3

    A.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class in this Action.................................................................5

    B.    The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Mediator...................................................................6

    C.    The Settlement Provides the Settlement Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors...........................................................................................8

        1.    The Strength of Lead Plaintiffs' Case Compared to the Amount of Settlement .........................................................................8

        2.    The Complexity, Length, and Expense of Further Litigation...................10

        3.    The Remaining Rule 23(e)(2) Factors Support Final Approval ...............11

    D.    The Settlement Treats Settlement Class Members Equitably Relative to Each Other..................................................................................12

    E.    The Reaction of the Settlement Class ................................................13

III.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION...........................13

IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .................................14

V.    NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23, DUE PROCESS, AND THE PSLRA ...............................................................14

VI.    CONCLUSION.............................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance to End Repression v. City of Chi.*,
    91 F.R.D. 182 (N.D. Ill. Aug. 11, 1981) ................................................................................. 3

*In re Amgen, Inc. Sec. Litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .................................................................... 10

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................................... 8

*Beneli v. BCA Fin. Servs., Inc.*,
    324 F.R.D. 89 (D.N.J. Feb. 6, 2018) .................................................................................. 14

*In re China Sunergy Sec. Litig.*,
    2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...................................................................... 9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .............................................................................................. 4

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................................... 14

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019) ...................................................................... 9

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
    4 F. Supp. 3d 94 (D.D.C. 2013) ........................................................................................... 9

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002) ..................................................................................... 8-9

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................................................................... 12

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................................... 13

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ................................................................................................ 3

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ........................................................................................... 6

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*,
   834 F.2d 677 (7th Cir. 1987) ..................................................................4

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .............................................................. 7-8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ........................................................................ 14-15

*Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................................13

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ............................................................5

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ................................10, 13

*Roberti v. OSI Sys., Inc.*,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) .........................................9

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................7

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
   2016 WL 772785 (N.D. Ill. Feb. 29, 2016) .......................................3, 8

*Shah v. Zimmer Biomet Holdings, Inc.*,
   2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) .................................9, 15

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................6

*Snyder v. Ocwen Loan Servicing, LLC*,
   2019 WL 2103379 (N.D. Ill. May 14, 2019) ......................................5, 8

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................10

*Swift v. Direct Buy, Inc.*,
   2013 WL 5770633 (N.D. Ind. Oct. 24, 2013) .....................................11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ................................................................4

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017).......................................6

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ........................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2020*
   *Review and Analysis*, Cornerstone Research (2021),
   http://www.cornerstone.com/Publications/Reports/Securities-Class-Action
   -Settlements-2020-Review-and-Analysis ..............................................................................2

Court-appointed Lead Plaintiffs Louisiana Municipal Police Employees' Retirement System and Varma Mutual Pension Insurance Company (together, "Lead Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully move this Court, pursuant to Federal Rule of Civil Procedure ("Rule") 23, for: (i) final approval of the proposed settlement of this Action on the terms set forth in the Stipulation and Agreement of Settlement dated April 1, 2021 (ECF No. 57-1) ("Stipulation"); (ii) approval of the proposed plan for allocating the net proceeds of the Settlement to the Settlement Class ("Plan of Allocation" or "Plan"); and (iii) certification of the Settlement Class for purposes of effectuating the Settlement.[1]

## I.  PRELIMINARY STATEMENT

Subject to Court approval, Lead Plaintiffs have agreed to settle all claims asserted in the Action against Defendants Baxter International Inc. ("Baxter" or the "Company"), José E. Almeida, and James K. Saccaro (collectively, "Defendants") in exchange for a cash payment of $16 million ("Settlement"). The Settlement—the product of a mediator's recommendation following a full day of hard fought negotiations by the Parties—provides an excellent result for the Settlement Class and readily satisfies the standards for final approval under Rule 23(e)(2).

As set forth herein, not only does the Settlement provide a near-term, certain recovery for the Settlement Class in a case that presented numerous risks, but it also represents a meaningful percentage of damages—approximately 8% of the Settlement Class's maximum damages as

---

[1] Unless otherwise defined, all capitalized terms have the meanings set forth in the Stipulation or the Joint Declaration of James A. Harrod and Sharan Nirmul in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Declaration" or "Joint Decl."). The Joint Declaration is an integral part of this submission and, for the sake of brevity herein, Lead Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed description of, *inter alia*: the claims asserted, the procedural history of the Action, the Settlement negotiations, the risks of continued litigation, compliance with the Court-approved notice plan, and the Plan of Allocation. Citations to "¶ __" herein refer to paragraphs in the Joint Declaration and citations to "Ex. __" herein refer to exhibits to the Joint Declaration.

estimated by Lead Plaintiffs' damages consultant (i.e., $208 million). This percentage is double the median recovery obtained as a percentage of damages in this Circuit's recent securities class action settlements.[2] The benefits of this recovery are further underscored by the fact that, at the time of settlement, Lead Plaintiffs' Complaint had been dismissed in its entirety.

In reaching the Settlement, Lead Plaintiffs and Lead Counsel carefully considered the risks of continued litigation, including the possibility that their attempt to amend the Complaint in order to address the issues raised by the Court's MTD Order might be unsuccessful and the Action would be dismissed with prejudice, resulting in no recovery for the Settlement Class. Even if their claims were sustained following amendment and another motion to dismiss, Lead Plaintiffs would still face challenges from Defendants at class certification, summary judgment, and trial. Indeed, it is likely that Defendants would continue to argue, as they did at the motion-to-dismiss stage, that Defendants Almeida and Saccaro did not act with scienter, including with respect to the intra-Company foreign exchange ("FX") transactions at issue in the Action, the allegedly manipulative purpose of the transactions, and the accounting treatment for the transactions; and that the accounting treatment of the transactions did not violate GAAP. ¶¶ 71-72. Defendants would also likely assert challenges to loss causation and damages. ¶¶ 73-76. The Settlement avoids these litigation risks as well as the significant additional costs and delay of continued litigation.

In April, the Court preliminarily approved the Settlement, finding it likely that the Court could approve the Settlement at final approval. ECF No. 58; ECF No. 59, ¶ 4. The Settlement has

---

[2]  *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis*, Cornerstone Research, 20, Appendix 5 (2021) ("Cornerstone"), http://www.cornerstone.com/Publications/ Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (reporting median settlement amount for Seventh Circuit securities cases (i.e., $12 million) represented 4.0% of estimated damages, for years 2011 through 2020). The Settlement also compares favorably to the median settlement amount as a percentage of estimated damages for securities cases with estimated damages between $150 and $249 million—8.9% in 2020 and 3.9% over the prior decade (2011 through 2019). *Id*. at 6, Figure 5.

the full support of the sophisticated, institutional investor Lead Plaintiffs (*see* Exs. 1 and 2), and the reaction of the Settlement Class to date has been positive. While the deadline for objections has not yet passed, following the dissemination of more than 183,000 Notices to Settlement Class Members and nominees as well as publication of a summary notice online and in high-circulation media, there have been no objections to the Settlement or the Plan of Allocation. ¶¶ 94, 104.

Lead Plaintiffs and Lead Counsel respectfully submit that: (i) the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class; and (ii) the Plan of Allocation is a fair and reasonable method for equitably distributing the Net Settlement Fund. Lead Plaintiffs also request that the Court certify the Settlement Class for purposes of effectuating the Settlement.

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any class action settlement. Whether to grant such approval lies within the discretion of the district court. *See Alliance to End Repression v. City of Chi.*, 91 F.R.D. 182, 196 (N.D. Ill. Aug. 11, 1981).[3] Courts in this Circuit "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016).

Under Rule 23(e)(2), the Court should approve a proposed class action settlement if it finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This determination involves consideration of whether: "(A) the class representatives and class counsel have adequately

---

[3] Unless otherwise noted, all internal quotation marks, citations, and other punctuation are omitted, and all emphasis is added.

represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: [among other things,] the costs, risks, and delay of trial and appeal . . .; and (D) the proposal treats class members equitably relative to each other." *Id.*

Consistent with this guidance, the Seventh Circuit has identified the following six factors for courts to consider in deciding whether to approve a class action settlement:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).[4] Moreover, courts should not transform a settlement approval proceeding into an abbreviated trial on the merits. *See, e.g.*, *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 834 F.2d 677, 684 (7th Cir. 1987); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (in approving a class action settlement, a court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

As noted above, after considering the Rule 23(e)(2) factors at the preliminary approval stage, the Court determined the Settlement was fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing. ECF No. 59, ¶ 4. The Court's conclusion on preliminary

---

[4] The Advisory Committee Notes to the 2018 amendments to Rule 23 explain that the four Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 Advisory Committee Notes to 2018 Amendments, Subdivision (e)(2). Accordingly, Lead Plaintiffs discuss below the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four Rule 23(e)(2) factors, but also discuss the application of the factors identified in *Wong*.

approval applies equally now. Accordingly, as set forth herein, the Settlement is fair, reasonable, adequate, and warrants final approval under the Rule 23(e)(2) factors and Seventh Circuit law.

> **A.  Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class in this Action**

In determining whether to approve a class action settlement, the Court should first consider whether Lead Plaintiffs and Lead Counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This factor clearly weighs in favor of the Settlement.

Lead Plaintiffs and Lead Counsel adequately represented the Settlement Class in both their prosecution of the Action and in negotiating and securing the Settlement. Lead Plaintiffs' claims, all of which are based on a common course of alleged wrongdoing by Defendants, are typical of other Settlement Class Members and Lead Plaintiffs have no interests antagonistic to the Settlement Class.[5] At all relevant times, Lead Plaintiffs diligently supervised and participated in the litigation on behalf of the Settlement Class. *See* Ex. 1, ¶ 5; Ex. 2, ¶ 5. Likewise, Lead Plaintiffs retained counsel who are highly experienced in securities litigation. *See* Ex. 4A-3; Ex. 4B-3. Lead Counsel actively pursued the claims on behalf of the Settlement Class and aggressively negotiated a favorable Settlement (including the provision of due diligence discovery) through mediation. ¶¶ 22-39, 47-58. These facts satisfy Rule 23(e)(2)(A). *See Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (finding Rule 23(e)(2)(A) satisfied where "named plaintiffs participated in the case diligently" and "class counsel fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative").

---

[5] *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

### B.   The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Mediator

The Court should next consider whether the settlement was "negotiated at arm's-length." *See* Rule 23(e)(2)(B). This includes consideration of other related circumstances to ensure the procedural fairness of a settlement, including (i) "the opinion of competent counsel"; (ii) "stage of the proceedings and the amount of discovery completed"; and (iii) the involvement of a mediator. These considerations support approval of the Settlement. *See Wong*, 773 F.3d at 863-64.

In this Circuit, "a settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate." *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001). This presumption is further supported when a neutral mediator is involved in the settlement process. *See Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Here, the Parties reached the Settlement only after intensive arm's-length negotiations overseen by Gregory Lindstrom, Esq. of Phillips ADR. ¶ 37. The Parties engaged in an all-day mediation session with Mr. Lindstrom on February 17, 2021, following the exchange of detailed mediation statements. ¶ 38. At the mediation's conclusion, the Parties reached their agreement in principle to settle the Action, subject to the successful completion of due diligence discovery. ¶ 39.

The knowledge of Lead Plaintiffs and Lead Counsel about the Action, and the proceedings themselves, had reached a stage where the Parties could make a well-founded evaluation of the claims and propriety of settlement.[6] Prior to settlement, Lead Counsel had: (i) conducted a comprehensive investigation into the claims asserted, including interviews with 69 former Baxter

---

[6] *See Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (opinion of counsel "experience[d] in prosecuting complex class actions [who] strongly believe the Settlement is in the best interests of the Class . . . is entitled to great weight").

employees (¶¶ 22-24); (ii) drafted a detailed amended complaint (¶ 25); (iii) opposed Defendants' motion to dismiss (¶¶ 30-32); (iv) consulted extensively with experts (¶ 23); and (v) participated in hard-fought, arm's-length settlement negotiations (¶¶ 37-38). Moreover, at the time of the Settlement, the Court had dismissed the Action, and Lead Counsel were preparing a second amended complaint to address the deficiencies identified in the Court's MTD Order. ¶ 36.

Finally, Lead Plaintiffs expressly conditioned the Settlement on their ability to conduct meaningful due diligence discovery along with the right to withdraw from the Settlement prior to filing final approval papers if the discovery revealed that the Settlement was unfair, unreasonable, or inadequate. ¶¶ 47, 50-52. Lead Counsel negotiated for and reviewed over 10,000 pages of documents concerning Baxter's FX transactions, its FX policies and procedures, and restatement; documents that Baxter previously produced to the SEC related to the FX transactions, including from the custodial files of Almeida and Saccaro, as well as Baxter's former Treasurer; and documents concerning the internal investigation into Baxter's FX accounting. ¶¶ 53-54. In addition, Lead Counsel interviewed Baxter's current Lead Director and former Chairman of Baxter's Audit Committee, including at the time of Baxter's internal investigation into its FX accounting, about Baxter's FX policies and procedures; the FX transactions at issue; the investigation, its findings, and the support for those findings; and Baxter's subsequent disclosures and remedial measures relating to the investigation and underlying relevant facts. ¶ 57. This discovery provided Lead Plaintiffs and Lead Counsel with a more thorough understanding of the facts of the case and the risks of their case going forward, particularly their ability to prove scienter, and confirms that the Settlement is fair, reasonable, and adequate. ¶58. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587-89 (N.D. Ill. 2011) (approving settlement where agreement entitled counsel to conduct confirmatory discovery that confirmed the fairness of the settlement); *In re*

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval).

### C. The Settlement Provides the Settlement Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors

The Court should next consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C) encompasses two of the factors traditionally considered by the Seventh Circuit when evaluating a proposed class action settlement: (i) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; and (ii) the complexity, length, and expense of further litigation. *See Wong*, 773 F.3d at 863-64. As discussed below, these factors strongly support approval of the Settlement.

### 1. The Strength of Lead Plaintiffs' Case Compared to the Amount of Settlement

When deciding whether to approve a proposed class action settlement under *Wong* and Seventh Circuit precedent, the primary consideration is "the strength of the plaintiff's case on the merits balanced against the amount offered in settlement." *Snyder*, 2019 WL 2103379, at *6 (quoting *Wong*, 773 F.3d at 864). Under this factor, courts consider whether the settlement is reasonable in light of the risks of continued litigation. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 959, 961, 963-64 (N.D. Ill. 2011); *see also Sears*, 2016 WL 772785, at *7 (finding approval does not require that a settlement be "the best possible deal for plaintiffs" or that "the class has received the same benefit from the settlement as they would have recovered from a trial"); *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for

disapproving the settlement. . . . If the case were fully litigated there is also a possibility that plaintiffs could receive less.").

By any measure, the $16 million cash recovery is a favorable result for the Settlement Class, and is especially so in light of the circumstances of this case, including the Court's dismissal of the Complaint. This recovery provides an immediate and tangible cash benefit to the Settlement Class, and eliminates the substantial risk that the Settlement Class could recover less from Defendants, or nothing at all, if Lead Plaintiffs continued to litigate the Action.[7]

As noted above, the Settlement Amount also represents a significant percentage (i.e., 8%) of the Settlement Class's estimated maximum damages of $208 million. By way of comparison, the median securities class action recovery in cases with estimated damages between $150 and $249 million was 8.9% of estimated damages in 2020, and 3.9% of estimated damages from 2011 through 2019. *See supra* note 2. Indeed, the recovery for the Settlement Class, when viewed as a percentage of potentially recoverable damages, is in line with or greater than typical recoveries in similar cases. *See, e.g.*, *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *5-6 (N.D. Ind. Sept. 18, 2020) (approving settlement recovering roughly 8% of maximum possible damages).[8] "The adequacy of this amount is reinforced by the fact that the amount was originally recommended by [Mr. Lindstrom], an objective and informed third-party during the mediation process." *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *4 (C.D. Cal. Dec. 8, 2015).

---

[7] The specifics risks of continued litigation are detailed in the Joint Declaration at ¶¶ 59-83.

[8] *See also, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of "maximum potential damages"); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013) (settlement approximating "4-8% of the best case scenario potential recovery" deemed reasonable); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting average settlement in securities class actions range from 3% to 7% of the class's total estimated losses).

## 2. The Complexity, Length, and Expense of Further Litigation

In determining the fairness of a settlement, courts also consider the likely "complexity, length, and expense of further litigation." *Wong*, 773 F.3d at 863. Courts routinely recognize that securities class actions involve complex factual and legal issues and that continued litigation is lengthy and expensive. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("[i]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members") (alteration in original).

This case is no different. The claims asserted in this Action raise many complex issues. Had the Settlement not been reached, the case would have demanded substantial additional time and expense. As noted above, the Parties resolved the Action prior to formal fact discovery. In the absence of the Settlement and assuming Lead Plaintiffs survived a second motion to dismiss, continued litigation of the Action would have required: (i) extensive fact discovery, including depositions, document discovery, and written discovery; (ii) substantial expert discovery on complicated issues such as loss causation and damages; (iii) motion practice relating to fact and expert discovery; (iv) a litigated motion for class certification; (v) a likely motion for summary judgment; and (vi) pre-trial evidentiary motions, a trial, and post-trial appeals. *See In re Amgen, Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation."). The foregoing would pose substantial expense and delay the Settlement Class's ability to recover—assuming, of course, that Lead Plaintiffs were able to survive a second motion to dismiss and ultimately prove their claims.

### 3.  The Remaining Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2) also instructs courts to consider: (i) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (ii) "the terms of any proposed award of attorney's fees, including the timing of payment"; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) & (e)(2)(D). These factors also support final approval of the Settlement.

*First*, if the Settlement is approved, the Claims Administrator, Epiq, will process the Claims received, providing all Claimants with a deficient Claim an opportunity to cure their Claim or request judicial review of the denial of their Claim. After all Claims are processed and the Class Distribution Order entered, Epiq will mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan. *See infra* Section III. None of the Settlement proceeds will revert to Defendants. *See* Stipulation ¶ 20.

*Second*, the relief provided by the Settlement remains adequate when considering the terms of the proposed award of attorneys' fees and expenses, including the timing of any such Court-approved payments. As discussed in the Fee Memorandum, the 22% fee request, made in accordance with Lead Plaintiffs' retainer agreements and to be paid only upon the Court's approval, is reasonable in light of Lead Counsel's efforts and the risks in the litigation.[9] Additionally, the 22% fee request is fully supported by Seventh Circuit case law. *See, e.g., Swift v. Direct Buy, Inc.*, 2013 WL 5770633, at *8 (N.D. Ind. Oct. 24, 2013) ("[P]ayment of 33% of the common fund is widely accepted by the Seventh Circuit as a reasonable fee in a class action.").

---

[9]  In connection with their fee request, Lead Counsel also seek payment from the Settlement Fund of Litigation Expenses in the total amount of $103,187.12, which amount *includes* requests for reimbursement of Lead Plaintiffs' reasonable costs in the aggregate amount of $6,648.75. ¶ 12.

Further, any fee award is separate from the approval of the Settlement, and neither Lead Counsel nor Lead Plaintiffs may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stipulation ¶ 23. Additionally, the proposal that any Court-awarded attorneys' fees and expenses be paid upon issuance of such an award is reasonable and consistent with common practice in similar cases, as the Stipulation dictates that if the Settlement were terminated or any fee/expense award subsequently modified, Lead Counsel must repay the subject amount with interest.

*Lastly*, Rule 23 asks courts to consider the fairness of the proposed settlement in light of "any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(iv). As previously disclosed, the only such agreement here (other than the Stipulation and preceding term sheet) is the Parties' confidential Supplemental Agreement, which establishes the conditions under which Baxter can terminate the Settlement if the number of Settlement Class Members who request exclusion reaches a specified threshold. This type of agreement is a standard provision in securities class action settlements and has no negative impact on the fairness of the Settlement.[10]

### D. The Settlement Treats Settlement Class Members Equitably Relative to Each Other

As discussed below in Section III, under the Plan of Allocation, eligible Claimants approved for payment by the Court will receive their *pro rata* share of the recovery based on their transactions in Baxter common stock. Lead Plaintiffs will receive precisely the same level of *pro rata* recovery (based on their Recognized Claims as calculated under the Plan of Allocation) as all other similarly situated Settlement Class Members. Accordingly, the Settlement treats members of the Settlement Class equitably relative to one another.

---

[10] *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### E.     The Reaction of the Settlement Class

In assessing a settlement, courts in the Seventh Circuit also consider "the amount of opposition to the settlement" and "the reaction of members of the class to the settlement." *See Wong*, 773 F.3d at 863. The deadline for Settlement Class Members to object to the Settlement or request exclusion from the Settlement Class is July 20, 2021. ¶ 94. As of the date of this filing, the Settlement has received no objections and only eight requests for exclusion. *Id*.; Ex. 3, ¶ 15. Lead Plaintiffs will address objections, if any, and all requests for exclusion in their reply.

* * *

For the reasons set forth above and in the Joint Declaration, the Settlement is fair, reasonable, and adequate when evaluated under any standard, or set of factors and, therefore, warrants the Court's final approval.

## III.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a whole—the plan must be "fair, reasonable and adequate." *See Retsky*, 2001 WL 1568856, at *3. An allocation formula need only have a "reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).

The Plan proposed here was developed by Lead Counsel with the assistance of their damages consultant and provides an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants. ¶ 96. The Plan (set forth in Appendix A to the Notice) is based upon the estimated amount of artificial inflation in the price of Baxter common stock over the course of the Class Period. ¶ 98. To have a loss under the Plan, a Claimant must have purchased or otherwise

13

acquired Baxter common stock during the Class Period and held such stock through the alleged corrective disclosure on October 24, 2019. ¶ 100. Further, a Claimant's loss under the Plan will depend upon several factors, including the date(s) when the Claimant purchased/acquired shares of Baxter common stock during the Class Period, whether such shares were sold and, if so, when and at what price, taking into account the PSLRA's statutory limitation on recoverable damages. *Id*. Authorized Claimants will recover their proportional "pro rata" amount of the Net Settlement Fund based on their calculated loss. *See Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 105 (D.N.J. Feb. 6, 2018) ("pro rata distributions are consistently upheld . . . ."). To date, no objections to the Plan have been received, which further supports its approval. ¶ 104.

## IV.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

As set forth in Lead Plaintiffs' motion for preliminary approval of the Settlement, the Settlement Class satisfies all of the requirements of Rules 23(a) and (b)(3). *See* ECF No. 56 at 11-14; ECF No. 59, ¶¶ 1-3 (finding the Court will likely be able to certify the Settlement Class in connection with final approval). None of the facts supporting certification of the Settlement Class have changed since Lead Plaintiffs submitted their preliminary approval motion. Accordingly, Lead Plaintiffs respectfully request that the Court certify the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

## V.  NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23, DUE PROCESS, AND THE PSLRA

Lead Plaintiffs have provided the Settlement Class with adequate notice of the Settlement. Here, notice satisfied both: (i) Rule 23, as it was "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement, Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); and (ii) due process, as it was "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Collectively, the notices also provided all of the information specifically required by Rule 23 and the PSLRA. *See* ECF No. 56 at 14-15; Ex. 3, Exs. A & B.

In accordance with the Court's Preliminary Approval Order, Epiq began mailing copies of the Notice Packet to potential Settlement Class Members and nominees on May 19, 2021. *See* Ex. 3, ¶¶ 3-8. Through July 2, 2021, Epiq has mailed a total of 183,254 Notice Packets. *See id.* ¶ 9. In addition, Epiq caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *PR Newswire* on June 1, 2021. *See id.* ¶ 10. Epiq also established a website, www.BaxterSecuritiesLitigation.com, to provide additional information about the Settlement as well as access to downloadable copies of the Notice and Claim Form and other Settlement-related documents. *See id.* ¶ 14.[11]

This combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmission over a newswire, and publication on internet websites, was "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Comparable notice programs are routinely approved by Courts in this Circuit. *See, e.g.*, *Zimmer Biomet*, 2020 WL 5627171, at *6 (approving similar notice program).

## VI. CONCLUSION

For the reasons set forth herein and in the Joint Declaration, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement, approve the Plan of Allocation, and grant final certification of the Settlement Class for settlement purposes.

---

[11] Pursuant to the Stipulation, Defendants also issued notice pursuant to CAFA. Stipulation ¶ 27.

Dated: July 6, 2021

Respectfully submitted,

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Sharan Nirmul (#90751)
Joshua A. Materese (#314844)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
jmaterese@ktmc.com

**BERNSTEIN LITOWITZ
BERGER & GROSSMANN LLP**
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, IL 60611
Telephone: (312) 373-3800
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

*/s/ James A. Harrod*
James A. Harrod (admitted *pro hac vice*)
Adam D. Hollander (admitted *pro hac vice*)
Alexander T. Payne (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Jim.Harrod@blbglaw.com
Adam.Hollander@blbglaw.com
Alex.Payne@blbglaw.com

*Lead Counsel for Lead Plaintiffs
and the Settlement Class*