# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| IN RE BAXTER INTERNATIONAL INC. SECURITIES LITIGATION | Case No. 1:19-cv-07786<br><br>District Judge Sara L. Ellis<br><br>Magistrate Judge Jeffrey I. Cummings |

### MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   ARGUMENT...........................................................................................................5

        A.     The Court Should Approve Lead Counsel's Fee Application ................................5

               1.     Counsel Are Entitled to Attorneys' Fees from the Common Fund .............5

               2.     The Requested Fee Is Fair and Reasonable as a Percentage of the Fund ................................................................................................................5

               3.     The Requested Fee Award Is Reasonable Under the Lodestar Method ................................................................................................................8

               4.     The Contingent Nature of the Litigation and the Risk of Nonpayment Supports the Fee Request .......................................................10

               5.     The Quality of Legal Services Rendered Supports the Fee Request .........12

               6.     The Approval of Lead Plaintiffs and the Reaction of the Settlement Class to Date Support the Requested Fee ..................................................13

        B.     The Request for Payment of Litigation Expenses Should Be Approved...............14

III.  CONCLUSION.....................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ...................................................................14

*Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ...........................................................................................5, 9

*Arenson v. Bd. of Trade*,
372 F. Supp. 1349 (N.D. Ill. 1974) ...................................................................................13

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
792 F. Supp. 2d 1028 (N.D. Ill. 2011) ..............................................................................12

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014)..........................................................................8

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ................................................................8, 14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)............................................................................................................5

*City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*,
2016 WL 10571629 (N.D. Ill. Jan. 22, 2016) .....................................................................8

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
80 F. Supp. 3d 838 (N.D. Ill. Feb. 20, 2015) ................................................................6, 10

*Duncan v. Joy Global Inc., et al.*,
No. 16-cv-1229 (E.D. Wis. Dec. 27, 2018) ......................................................................15

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................................................................5

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) ................................................................................................5

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ..............................................................................................5

*Gastineau v. Wright*,
592 F.3d 747 (7th Cir. 2010) ..............................................................................................9

*In re Gilat Satellite Networks, Ltd.*,
2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ..................................................................15

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
212 F.R.D. 400 (E.D. Wis. 2002) ....................................................................................12

*In re Groupon, Inc. Sec. Litig.*,
2016 WL 3896839 (N.D. Ill. July 13, 2016)......................................................................8

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) .............................................................................................9

*In re Impinj, Inc. Sec. Litig.*,
No. 18-cv-05704 (W.D. Wash. Nov. 20, 2020)..................................................................8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................................13

*Missouri v. Jenkins*,
491 U.S. 274 (1989)...........................................................................................................9

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
332 F.R.D. 202 (N.D. Ill. 2019), *aff'd*, 2019 WL 8058082 (7th Cir. Oct. 25,
2019) ..................................................................................................................................7

*In re Novatel Wireless Sec. Litig.*,
No. 08-cv-1689  (S.D. Cal. June 23, 2014)........................................................................8

*Palazzolo v. Fiat Chrysler Autos. N.V.*,
No. 16-cv-12803 (E.D. Mich. June 5, 2019) .....................................................................8

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) .............................................................................................7

*Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*,
No. 16-cv-5198 (N.D. Ill. Dec. 6, 2019)........................................................................8, 9

*In re Quality Sys., Inc. Sec. Litig.*,
No. 13-cv-1818 (C.D. Cal. Nov. 19, 2018)........................................................................8

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) .............................................................................................7

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001).....................................................................6

*Ronge v. Camping World Holdings, Inc.*,
No. 18-cv-7030 (N.D. Ill. Aug. 5, 2020) ...........................................................................8

iii

*Rubinstein v. Gonzalez*,
No. 14-cv-9465 (N.D. Ill. Oct. 22, 2019) ....................................................................................8

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .........................................................................................6

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ...................................................................................................10

*Smith v. Vill. of Maywood*,
17 F.3d 219 (7th Cir. 1994) .......................................................................................................9

*Sokolow v. LJM Funds Mgm't, Ltd.*,
No. 18-cv-1039 (N.D. Ill. Dec. 18, 2019)..................................................................................8

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ..........................................................................................6, 10, 12

*Taubenfeld v. AON Corp.*,
415 F.3d 597 (7th Cir. 2005) .................................................................................................6, 12

*Williams v. Rohm & Haas Pension Plan*,
2010 WL 4723725 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir.
2011) .....................................................................................................................................9, 10

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) .....................................................................................................8

**STATUTES**

15 U.S.C. § 78u-4(a)(4) ....................................................................................................1, 10, 14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(h) ......................................................................................................................1

iv

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Lead Counsel for the Court-appointed Lead Plaintiffs, Louisiana Municipal Police Employees' Retirement System ("LAMPERS") and Varma Mutual Pension Insurance Company ("Varma" and, together with LAMPERS, "Lead Plaintiffs"), and the Settlement Class, respectfully submit this memorandum in support of their motion for (i) an award of attorneys' fees in the amount of 22% of the Settlement Fund; (ii) payment of $96,538.37 for Litigation Expenses reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving the Action; and (iii) reimbursement of a total of $6,648.75 to LAMPERS and Varma for their costs directly related to representing the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.       PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this Action in its entirety in exchange for a payment of $16 million in cash. The Settlement represents a very favorable result for the Settlement Class because it provides meaningful and immediate compensation to Settlement Class Members while avoiding the significant risks and delay of continued litigation, including the risks posed by the Court's dismissal of the Complaint and other significant challenges that Lead Plaintiffs would face in obtaining a larger recovery through litigation.

Lead Counsel achieved the Settlement for Lead Plaintiffs and the Settlement Class in the face of numerous challenges. From the outset, Lead Plaintiffs faced significant challenges in proving key elements of their claims in this securities fraud action—including scienter and materiality. One of those significant risks was realized when the Court dismissed the Complaint

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated April 1, 2021 (ECF No. 57-1) (the "Stipulation") or the Joint Declaration of James A. Harrod and Sharan Nirmul (the "Joint Declaration" or "Joint Decl.") submitted herewith. Citations to "¶ __" in this memorandum refer to paragraphs of the Joint Declaration and citations to "Ex. __" refer to exhibits to the Joint Declaration.

in its entirety for failure to adequately allege Defendants' scienter in making the alleged misstatements, including based on the Court's conclusion that Lead Plaintiffs failed to adequately plead that either Individual Defendant was aware of (or reckless to disregard) the intra-Company foreign exchange ("FX") transactions at issue and related accounting conventions. ¶ 34.

Following the Court's dismissal order, if not for the Settlement, Lead Plaintiffs would have filed an amended complaint that sought to address the deficiencies identified in the Court's order. But even if Lead Plaintiffs had ultimately succeeded at the motion-to-dismiss stage after repleading, there was no guarantee that they could gather enough evidence to prevail at summary judgment or trial, and any appeals that would follow. As discussed further below, and in the accompanying Joint Declaration and Settlement Memorandum, Lead Plaintiffs faced significant obstacles in proving several elements of their claims, including Defendants' scienter, the materiality of the alleged misstatements, and loss causation and damages. ¶¶ 59-84.

In order to achieve this recovery, Lead Counsel undertook significant efforts, including litigating and negotiating aggressively against a widely respected defense firm on a fully contingent basis. As detailed in the Joint Declaration, Lead Counsel vigorously pursued this litigation from its outset by, among other things, (a) conducting a wide-ranging investigation concerning Defendants' allegedly fraudulent misrepresentations, which included an extensive review and analysis of Baxter's SEC filings, earnings call transcripts, media reports, and financial analyst reports, conducting numerous interviews with former Baxter employees, and consulting with experts regarding key accounting and financial issues in the Action; (b) drafting and filing the initial complaint and the detailed amended Complaint; (c) briefing their opposition to Defendants' motion to dismiss the Complaint; (d) conducting additional investigation, research, and analysis in connection with preparing a second amended complaint, which would have been

2

filed absent the Settlement; and (e) conducting extensive, hard fought settlement negotiations, which included a full-day mediation session overseen by an experienced mediator. ¶¶ 5, 22-46.

Critically, Lead Counsel also conducted substantial due diligence discovery to confirm the fairness, reasonableness, and adequacy of the proposed Settlement. ¶¶ 47-58. In connection with this discovery, Lead Counsel negotiated for and obtained more than 10,000 pages of relevant documents from Defendants—including documents concerning Baxter's FX transactions, Baxter's policies and procedures relating to FX transactions, and the restatement; documents that Baxter previously produced to the SEC, including those sent or received by the Individual Defendants or Baxter's former Treasurer Scott Bohaboy; and Board-level documents concerning the internal investigation into Baxter's historical FX accounting—all of which Lead Counsel closely reviewed and analyzed. ¶¶ 53-55. At the conclusion of the due diligence discovery process, Lead Counsel conducted an extensive interview with the Chairman of Baxter's Audit Committee on subjects relevant to the Action, including the Company's internal investigation and related factual findings and subsequent remedial efforts. ¶¶ 56-57.

As compensation for Lead Counsel's efforts on behalf of the Settlement Class and the risks of nonpayment they faced in prosecuting the Action on a contingent basis, Lead Counsel seek attorneys' fees in the amount of 22% of the Settlement Fund, or $3,520,000 (plus interest). As discussed below, the requested fee is well within the range of fees that courts in this Circuit have awarded in securities class actions with comparable recoveries. The requested fee also represents a multiplier of 1.5 on Lead Counsel's lodestar, which too is well within the range of multipliers typically awarded in class actions with significant contingency risks like this case.

Moreover, the requested fee has the full support of both Lead Plaintiffs and is consistent with retainer agreements that Lead Plaintiffs entered into with Lead Counsel at the outset of the

Action. *See* Ex. 1, at ¶ 7; Ex. 2, at ¶ 7. Lead Plaintiffs are sophisticated institutional investors that actively supervised Lead Counsel's prosecution and resolution of the Action and they have endorsed the requested fee as fair and reasonable in light of the result achieved, the quality of the work counsel performed, and the risks of the litigation. *See* Ex. 1, ¶¶ 2-7; Ex. 2, ¶¶ 2-7.

In addition, in accordance with the Preliminary Approval Order, more than 183,000 copies of the Notice have been mailed to potential Settlement Class Members and their nominees through July 2, 2021, and the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire*. *See* Ex. 3, at ¶¶ 9-10. The Notice advises potential Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 22% of the Settlement Fund and for Litigation Expenses (including the reasonable costs and expenses of Lead Plaintiffs) in an amount not to exceed $200,000. *See id.*, Ex. A at ¶¶ 5, 48. The fees and expenses sought by Lead Counsel are within the amounts set forth in the Notice. While the deadline to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to these requests have been received. ¶¶ 125, 135.[2]

In light of the favorable recovery obtained, the time and effort devoted by Lead Counsel to the Action, the skill and expertise required, the quality of the work performed, the wholly contingent nature of the representation, and the considerable risks that counsel undertook, Lead Counsel respectfully submit that the requested fee is reasonable and should be approved by the Court. In addition, the costs and expenses incurred by Lead Counsel and Lead Plaintiffs are reasonable in amount and were necessarily incurred in the successful prosecution of the Action, and they too should be approved.

---

[2] The deadline for objections is July 20, 2021. Should any objections be received, Lead Counsel will address them in their reply papers to be filed on or before August 3, 2021.

## II.    ARGUMENT

### A.    The Court Should Approve Lead Counsel's Fee Application

#### 1.    Counsel Are Entitled to Attorneys' Fees from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the Seventh Circuit has held that "[w]hen a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). Courts recognize that awarding attorneys' fees from a common fund serves to "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010).

#### 2.    The Requested Fee Is Fair and Reasonable as a Percentage of the Fund

Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained. Although courts in this Circuit have discretion to choose either the lodestar or percentage method of calculating fees in common fund cases,[3] the Seventh Circuit has strongly endorsed the percentage method, pursuant to which fees are awarded as a percentage of the common fund, because it most closely approximates the manner in which attorneys are compensated in the marketplace for contingent work. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the

---

[3] *See Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) ("in our circuit, it is legally correct for a district court to choose either" the percentage method or the lodestar method in determining fee awards).

5

lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis"); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. Feb. 20, 2015) (finding that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district").

The Court of Appeals for the Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). In applying this standard, the Seventh Circuit considers, among other things, (1) "awards made by courts in other class actions"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005); *see also Synthroid*, 264 F.3d at 721 (the reasonableness determination "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case"). These factors strongly support the fee requested here.

"[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record . . . and the fees awarded by the district court." *Taubenfeld*, 415 F.3d at 600. In complex class actions like this case, courts within the Seventh Circuit have held that percentages in the range of 33% to 40% of the recovery are appropriate.[4] Here, Lead Counsel,

---

[4] *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) ("an award of 33.3% of the settlement fund is within the reasonable range"); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered.").

6

consistent with the more restrictive of the retainer agreements entered into between Lead Counsel and the respective Lead Plaintiffs, are applying for an award of 22% of the Settlement Fund (*i.e.*, 22% of the $16 million Settlement Amount and any interest accrued), which is well within the contours of fees approved within the Seventh Circuit in analogous cases.

Some courts in this District have found that a percentage fee award should be analyzed as a percentage of the common fund *after* deducting all costs (other than attorneys' fees themselves) that will not be paid to the class, such as notice costs and litigation expenses. *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 221, 226 (N.D. Ill. 2019), *aff'd*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019); *see also Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (the "ratio that is relevant" for assessing the reasonableness of percentage fee award "is the ratio of (1) the fee to (2) the fee plus what the class members received"); *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (same). In applying that analysis in this case, the costs deducted would include the total Litigation Expenses for which payment is sought, including Lead Plaintiffs' costs ($103,187.12) and the Notice and Administration Costs, which are estimated to be $425,000 to $475,000.[5] Under this approach, the requested fee of $3,520,000 (plus interest) represents approximately 22.8% of the expected Settlement Amount net of expenses ($15,446,812.88),[6] which is also fair and reasonable here and consistent with fees approved within the Seventh Circuit in analogous cases.

Indeed, the request for $3,520,000 in attorneys' fees—whether considered as 22% of the

---

[5] The Notice and Administration Costs, which include the costs of printing and mailing the Notice Packet and processing Claims received, are only estimated, because the costs will depend on factors that are not yet determined, including the total number of Claims received. The estimate used was provided by the Claims Administrator, Epiq, based on the number of Notices mailed and expected to be mailed, and the expected Claims filing rate.

[6] This amount is the $16,000,000 Settlement Amount *less* $103,187.12 in Litigation Expenses and an estimated $450,000 in Notice and Administration Costs.

full Settlement Fund or approximately 22.8% of the Settlement Fund net of expenses—is on the low end of the range of percentage fee awards that courts in the Seventh Circuit have made in similar cases with comparable recoveries. *See, e.g.*, *Ronge v. Camping World Holdings, Inc.*, No. 18-cv-7030, slip op. at 2 (N.D. Ill. Aug. 5, 2020), ECF No. 158 (awarding 30% of $12.5 million) (Ex. 9); *Sokolow v. LJM Funds Mgm't, Ltd.*, No. 18-cv-1039, slip op. at 2 (N.D. Ill. Dec. 18, 2019), ECF No. 216 (awarding 28% of $12.85 million) (Ex. 10); *Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*, No. 16-cv-5198, slip op. at 2 (N.D. Ill. Dec. 6, 2019), ECF No. 162 (awarding 27% of $27.5 million) (Ex. 11); *Rubinstein v. Gonzalez*, No. 14-cv-9465, slip op. at 1 (N.D. Ill. Oct. 22, 2019), ECF No. 296 (awarding 30% of $16.75 million) (Ex. 12); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *3-*4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million); *City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*, 2016 WL 10571629, at *1 (N.D. Ill. Jan. 22, 2016) (awarding 26% of $42.5 million); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *1, *4 (S.D. Ill. Jan. 31, 2014) (awarding 33.3% of $30 million).[7]  In sum, the fee requested here is well within the range of fees awarded on a percentage basis in comparable cases.

### 3. The Requested Fee Award Is Reasonable Under the Lodestar Method

While use of the lodestar/multiplier method as a cross-check is not required, *see Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011); *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *5 (S.D. Ind. Sept. 4, 2019), that analysis nevertheless confirms the appropriateness of the fee requested here.

---

[7] The requested fee is also consistent with (or lower than) fee awards in similarly sized securities class actions in other circuits. *See, e.g.*, *In re Impinj, Inc. Sec. Litig.*, No. 18-cv-05704, slip op. at 1 (W.D. Wash. Nov. 20, 2020), ECF No. 106 (awarding 25% of $20 million) (Ex. 13); *Palazzolo v. Fiat Chrysler Autos. N.V.*, No. 16-cv-12803, slip op. at 3 (E.D. Mich. June 5, 2019), ECF No. 76 (awarding 30% of $14.75 million) (Ex. 14); *In re Quality Sys., Inc. Sec. Litig.*, No. 13-cv-1818, slip op. at 2 (C.D. Cal. Nov. 19, 2018), ECF No. 120 (awarding 25% of $19 million) (Ex. 15); *In re Novatel Wireless Sec. Litig.*, No. 08-cv-1689, slip op. at 1 (S.D. Cal. June 23, 2014), ECF No. 520 (awarding 27.5% of $16 million) (Ex. 16).

The lodestar/multiplier method entails multiplying the number of hours each attorney or other professional expended on the case by his or her hourly rate to derive the lodestar figure. *See Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). Courts then typically adjust the lodestar, by applying a multiplier, to take into account the various factors in the litigation that affect the reasonableness of the requested fee, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Id*. Courts must also consider the risk taken by class counsel that they will recover nothing for their time and expenses. *See Americana Art China Co.*, 743 F.3d at 247. In complex contingent litigation such as this Action, courts in the Seventh Circuit regularly apply risk multipliers between 1.0 and 4.0. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991).

As detailed here and in the Joint Declaration, Lead Counsel devoted 3,931.85 hours of attorney and other professional time prosecuting the Action for the benefit of the Settlement Class through June 30, 2021. ¶ 115. Lead Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney or other professional by his or her current hourly rate,[8] is $2,302,494.50. Accordingly, the requested fee of 22% of the Settlement Fund (*i.e.*, $3.52 million (before interest)), represents a multiplier of approximately 1.5 on Lead Counsel's lodestar. ¶ 116.

The requested 1.5 multiplier is well within the range of multipliers commonly awarded in securities class actions and other comparable litigation. *See, e.g.*, *DeVry Educ. Grp., Inc.*, No. 16-cv-5198, slip op. at 2-3 (N.D. Ill. Dec. 6, 2019), ECF No. 162 (awarding multiplier of approximately 2.1) (Ex. 11); *Williams v. Rohm & Haas Pension Plan*, 2010 WL 4723725 (S.D.

---

[8] The Supreme Court and the Seventh Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflationary losses, and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) ("A court may elect to use . . . current rates . . . as acceptable compensation for the delay in payment of fees.").

9

Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011) (awarding 5.85 multiplier).

In sum, Lead Counsel's requested fee award is well within the range of what courts in this Circuit commonly award in class actions such as this one, whether calculated as a percentage of the Settlement Fund or in relation to Lead Counsel's lodestar.

### 4. The Contingent Nature of the Litigation and the Risk of Nonpayment Supports the Fee Request

As noted by the Seventh Circuit in *Synthroid*, "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear." 264 F.3d at 721; *see also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). Thus, "[w]hen determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit." *Dairy Farmers*, 80 F. Supp. 3d at 847-48.

While Lead Counsel believe that Lead Plaintiffs' claims are meritorious, Lead Counsel recognized that there were significant hurdles that Lead Plaintiffs would have had to overcome to prevail in this complex securities fraud litigation. As discussed in greater detail in the Joint Declaration, Lead Plaintiffs (and Lead Counsel) faced significant risks to recovery from the outset. ¶¶ 59-84. Although the Company restated its financial statements to reflect its misstatement of revenues from its non-GAAP compliant accounting for FX transactions, the restatement did not disclose any culpability on the part of any Company executive responsible for filing the previously misstated financial statements. Lead Plaintiffs conducted their own, extensive, independent investigation to uncover any direct or circumstantial evidence necessary to plead claims against Defendants sufficient to withstand the heightened pleading burden of the PSLRA. Given the sprawling global footprint of Baxter and that the alleged fraud involved the accounting for intra-

Company transactions, Lead Counsel undertook a global investigation, seeking and securing interviews with multiple witnesses, domestic and abroad. ¶¶ 22-24.

The cost of this investigation was entirely borne by Lead Counsel and the risks associated with the time and expense were laid bare by the Court's dismissal of the Complaint for failure to allege a strong inference of scienter. That necessitated going back to the drawing board and even further expanding the investigative effort to attempt to address the deficiencies identified by the Court. ¶ 36. Although Lead Plaintiffs believe they could amend the Complaint to address the Court's concerns and withstand a second motion to dismiss, there was a substantial risk that the Court would have ruled in Defendants' favor again, dismissing the Action with prejudice and eliminating any recovery for the Settlement Class. ¶¶ 67-69.

Even if Lead Plaintiffs had survived a second motion to dismiss, they would still face significant challenges from Defendants at class certification, summary judgment, and trial. Defendants would continue to vigorously argue that the Individual Defendants did not know (and were not deliberately reckless in not knowing) of the intra-Company transactions at issue in the Action, the purpose of the transactions, the accounting treatment of the transactions, or that the accounting treatment deviated from GAAP at the time of the alleged misstatements, and therefore lacked scienter. ¶¶ 71-72. Defendants would contend that many of the challenged statements were not actionable, including because statements about Baxter's financial statements' compliance with GAAP and the quality of Baxter's internal controls were statements of opinion, not fact, or were too general to form the basis for a securities fraud claim. ¶ 79. Defendants would also likely have argued that the FX transactions at issue were not material to investors, including that the amounts that Baxter restated were not quantitatively material relative to Baxter's overall balance sheet. ¶ 78. Moreover, even if Lead Plaintiffs overcame each of the above risks and successfully

11

established falsity, materiality, and scienter, they faced significant hurdles in establishing loss causation and in proving damages. ¶¶ 73-76.

In sum, this case was dismissed at the time of the Settlement, and the only certainties regarding the prosecution of the claims in the Action were that Defendants would continue to vigorously contest Lead Plaintiffs' claims at the motion to dismiss stage and, thereafter, trial and on appeal, and there was a significant risk of non-recovery. The significant litigation risks here support the reasonableness of the requested fee. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1036-37 (N.D. Ill. 2011); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 411 (E.D. Wis. 2002).

**5.      The Quality of Legal Services Rendered Supports the Fee Request**

In evaluating a fee request, this Circuit has held that courts may consider the "quality of legal services rendered" by plaintiffs' counsel. *Taubenfeld*, 415 F.3d. at 600; *Synthroid*, 264 F.3d at 721. From the inception of the Action, Lead Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Settlement Class. This case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised by Defendants. Lead Counsel practice extensively in the challenging field of complex class action litigation and have skillfully litigated these types of actions in courts across the country. *See* Joint Decl. ¶ 117 and Exs. 4A-3 and 4B-3. In this case, Lead Counsel conducted an expansive investigation, which included reviewing a huge quantity of public material and interviews with 69 former employees of Baxter; researched and briefed its opposition to Defendants' motion to dismiss; consulted with several experts; and engaged in substantial due diligence discovery, including reviewing thousands of pages of documents and interviewing the head of Baxter's Audit Committee (which oversaw the Company's internal investigation) that was crucial to confirming the reasonableness of the Settlement. ¶¶ 5, 22-36, 53-58. Lead Counsel

12

respectfully submit that the quality of their efforts in the litigation and their substantial experience in complex class actions provided them with the leverage necessary to negotiate the Settlement.

The quality of opposing counsel is also an important factor in evaluating the work performed by Lead Counsel. *See Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Lead Counsel were opposed in this case by the nationally known law firm of Latham & Watkins LLP, which spared no effort in its zealous defense of the Action. ¶ 118. Notwithstanding this formidable opposition, Lead Counsel presented a strong case and demonstrated their willingness to continue to vigorously prosecute the claims asserted in the Action. The ability of Lead Counsel to obtain a favorable result for the Settlement Class while litigating against this capable defense firm weighs in favor of granting the attorneys' fees sought.

### 6. The Approval of Lead Plaintiffs and the Reaction of the Settlement Class to Date Support the Requested Fee

Lead Plaintiffs, which were actively involved in the prosecution and settlement of the Action and have actively supervised the work of counsel, have approved the requested fee. *See* Ex. 1, ¶¶ 5, 7; Ex. 2, ¶¶ 5, 7. This endorsement of the fee by Lead Plaintiffs as fair and reasonable supports its approval. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *16 (S.D.N.Y. Dec. 23, 2009) ("public policy considerations support fee awards where, as here, large public pension funds, serving as lead plaintiffs, conscientiously supervised the work of lead counsel, and gave their endorsement to lead counsel's fee request"). In addition, the reasonableness of the fee is further supported by the fact that the 22% fee request is based on the terms of retainer agreements entered into between Lead Counsel and the respective Lead Plaintiffs at the outset of the litigation. ¶ 110; Ex. 1, ¶ 7; Ex. 2, ¶ 7.

The reaction of the Settlement Class to date also supports the requested fee. Pursuant to the Preliminary Approval Order, through July 2, 2021, the Claims Administrator, Epiq,

disseminated 183,254 copies of the Notice to potential Settlement Class Members and nominees, informing them, among other things, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 22% of the Settlement Fund and up to $200,000 in expenses. *See* Ex. 3, Ex. A, at ¶¶ 5, 48. While the time to object to the fee and expense application does not expire until July 20, 2021, to date, no objections have been received. ¶¶ 125, 135.

### B. The Request for Payment of Litigation Expenses Should Be Approved

In addition to attorneys' fees, Lead Counsel also seek payment for the Litigation Expenses they incurred in the Action. "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses." *Bell*, 2019 WL 4193376, at *6. As set forth in the Joint Declaration, Lead Counsel incurred $96,538.37 in Litigation Expenses in connection with the prosecution and settlement of the Action. ¶ 127.

The expenses for which Lead Counsel seek payment are all reasonable, necessarily incurred, and directly related to the prosecution of the Action. These expenses include, among others, charges for experts, mediation fees, online research, copying costs, and postage and delivery expenses. All of these expenses are of the sort that would typically be charged to paying clients in the marketplace. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (reimbursable expenses included "expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation.").

As part of their request for Litigation Expenses, Lead Counsel also seek $6,648.75 in costs incurred by Lead Plaintiffs directly related to their representation of the Settlement Class, as permitted by the PSLRA. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, both Lead Plaintiffs took active roles in the litigation and have been fully committed

14

to pursuing the Settlement Class's claims. *See* Ex. 1, ¶ 5; Ex. 2, ¶ 5. These efforts, which included reviewing pleadings and briefs filed in the Action, communicating regularly with Lead Counsel regarding case strategy and developments, attending the mediation, consulting with Lead Counsel regarding settlement negotiations, and evaluating and approving the Settlement, required employees of Lead Plaintiffs to dedicate time to the Action they otherwise would have devoted to their regular duties for Lead Plaintiffs. *See* Ex. 1, ¶¶ 5, 11; Ex. 2, ¶¶ 5, 9-11. The amounts requested by Lead Plaintiffs are based on the number of hours that employees of Lead Plaintiffs committed to the Action, multiplied by a reasonable hourly rate for each employee. The amounts requested, $4,050.00 for LAMPERS and $2,598.75 for Varma, are reasonable and justified under the PSLRA, and Courts have routinely granted such awards to plaintiffs in similar cases.[9]

The Notice informed potential Settlement Class Members that Lead Counsel would apply for Litigation Expenses in an amount not to exceed $200,000, which may include reimbursement of Lead Plaintiffs' costs. The total amount requested—$103,187.12, including $96,538.37 in Lead Counsel's expenses and $6,648.75 in costs incurred by Lead Plaintiffs—is well below the amount set forth in the Notice. To date, there has been no objection to the request. ¶ 135.

## III. CONCLUSION

Lead Counsel respectfully request that the Court: (i) award attorneys' fees in the amount of 22% of the Settlement Fund; (ii) award $96,538.37 for Lead Counsel's reasonable Litigation Expenses; and (iii) award $4,050.00 to LAMPERS and $2,598.75 to Varma for their costs related to their representation of the Settlement Class.

---

[9] *See, e.g.*, *Duncan v. Joy Global Inc., et al.*, No. 16-cv-1229, slip op. at 2 (E.D. Wis. Dec. 27, 2018), ECF No. 79 (awarding two lead plaintiffs amounts ranging from $2,400 to $23,000 for reimbursement of reasonable costs and expenses) (Ex. 17); *see generally In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where, as here, "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation").

Dated: July 6, 2021

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Sharan Nirmul (#90751)
Joshua A. Materese (#314844)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
jmaterese@ktmc.com

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Avi Josefson
875 North Michigan Avenue, Suite 3100 Chicago, IL 60611
Telephone: (312) 373-3800
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

*/s/ James A. Harrod*
James A. Harrod (admitted *pro hac vice*)
Adam D. Hollander (admitted *pro hac vice*)
Alexander T. Payne (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Jim.Harrod@blbglaw.com
Adam.Hollander@blbglaw.com
Alex.Payne@blbglaw.com

*Lead Counsel for Lead Plaintiffs and the Class*

#3035059

16