**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| IN RE BAXTER INTERNATIONAL INC. SECURITIES LITIGATION | Case No. 1:19-cv-07786<br><br>District Judge Sara L. Ellis<br><br>Magistrate Judge Jeffrey I. Cummings |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      BACKGROUND ........................................................................................................... 2

II.     CLAIMS ADMINISTRATION .................................................................................... 3

        A.      No Disputed Claims ........................................................................................ 4

        B.      Late Claims and Final Cut-Off Date .............................................................. 4

III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ........................................ 6

IV.     DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ................................. 6

        A.      Initial Distribution of the Net Settlement Fund ............................................. 6

        B.      Additional Distribution(s) of the Net Settlement Fund .................................. 8

V.      RELEASE OF CLAIMS ............................................................................................... 10

VI.     CONCLUSION .............................................................................................................. 11

i

# TABLE OF AUTHORITIES

**CASES**                                                                                                 **PAGE(S)**

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
  No. 14-cv-3428 (S.D. Tex. Nov. 17, 2020) ...............................................................................11

*In re Eletrobras Sec. Litig.*,
  467 F.Supp.3d 149 (S.D.N.Y. 2020) ..........................................................................................11

*In re Nu Skin Enters., Inc., Sec. Litig.*,
  Master File No. 14-cv-33 (D. Utah Aug. 30, 2018) ....................................................................9

*Perkins v. Am. Nat'l Ins. Co.*,
  No. 05-cv-100, 2012 WL 2839788 (M.D. Ga. July 10, 2012) .....................................................9

*Shah v. Zimmer Biomet Holdings, Inc.*,
  No. 3:16-CV-815-PPS-MGG, 2020 WL 7392796 (N.D. Ind. Dec. 14, 2020) .........................10

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016), *appeal dismissed*, 2016 WL 9778633
  (9th Cir. Nov. 7, 2016) .................................................................................................................9

Lead Plaintiffs Louisiana Municipal Police Employees' Retirement System and Varma Mutual Pensions Insurance Company (together, "Lead Plaintiffs"), respectfully move for entry of the proposed Order Approving Distribution Plan ("Class Distribution Order") for the proceeds of the Settlement in the above-captioned securities class action ("Action"). The Distribution Plan is included in the accompanying Declaration of Alexander P. Villanova ("Villanova Declaration" or "Villanova Decl."),[1] submitted on behalf of the Court-authorized Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq").

If entered by the Court, the Class Distribution Order would permit Epiq to make an Initial Distribution of Settlement proceeds to eligible Claimants. Among other things, the Class Distribution Order would: (i) approve Epiq's administrative determinations accepting and rejecting Claims submitted in connection with the Settlement; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by Epiq as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise; and (iii) approve Epiq's fees and expenses incurred and estimated to be incurred in the administration of the Settlement and the Initial Distribution.

While the Stipulation provides for a process that allows Claimants to submit any disputes concerning the administration of their claims to the Court for further review, there are no such disputed Claims for the Court to review. The Stipulation further provides that Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims,

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Villanova Declaration or the Stipulation and Agreement of Settlement dated as of April 1, 2021 (ECF No. 57-1) ("Stipulation"). The Settlement is contained in the Stipulation.

including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 25, 29, 31. *See also* Appendix A to Notice ¶ 1. Lead Counsel have communicated with counsel for Defendants, who do not oppose this motion. Given the absence of any disputed Claims or opposition by Defendants, this Motion is ripe for determination.

## I.     BACKGROUND

As the Court is aware, this Action was settled for $16 million in cash. On August 13, 2021, the Court granted final approval of the Plan of Allocation in its Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 72) and entered the Judgment Approving Class Action Settlement (ECF No. 71) ("Judgment"). The Effective Date of the Settlement has now occurred. *See* Stipulation ¶ 39. Accordingly, the Net Settlement Fund may be distributed to Authorized Claimants. In accordance with paragraph 34 of the Stipulation, Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order approving the Distribution Plan. *See* Judgment ¶ 14.

In accordance with the Court's Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 59) ("Preliminary Approval Order"), Epiq mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Settlement Class Members, brokers, and other nominees. Villanova Decl. ¶ 2. Epiq has disseminated 193,278 Notice Packets to potential Settlement Class Members, brokers, and nominees. *Id*. ¶ 4. The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form received or postmarked no later than September 16, 2021. *Id*. ¶ 7.

## II.     CLAIMS ADMINISTRATION

As detailed in the Villanova Declaration, through July 5, 2022, Epiq received and processed 141,003 Claims. Villanova Decl. ¶ 7. All Claims received through July 5, 2022, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*see id.*), and Epiq has worked with Claimants to help them perfect their Claims. *See id.* ¶¶ 19-32.

Many of the Claims were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by Epiq. *Id.* ¶¶ 19, 22. If Epiq determined a Claim to be defective or ineligible, a Deficiency Letter (if the Claimant or filer filed a paper Claim) or a Status Email with an attached Transaction Report (if the Claimant or E-Filer filed an Electronic Claim) was sent by Epiq to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim. *Id.* ¶¶ 20, 22. The Deficiency Letter or Status Email advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within 20 days from the date of the Deficiency Letter or Status Email, or Epiq would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id.* ¶¶ 20, 23. Examples of a Deficiency Letter, Status Email, and Transaction Report are attached as Exhibits A, B, and C to the Villanova Declaration.

Of the 141,003 Claims that are the subject of this Motion, Epiq has determined that 63,806 Claims (including the Late But Otherwise Eligible Claims discussed below) are acceptable in whole or in part to participate in the distribution of the Net Settlement Fund, and that 77,197 Claims should be wholly rejected because they are ineligible for payment from the Net Settlement

Fund. *See id.* ¶¶ 34-37. Lead Plaintiffs respectfully request that the Court approve Epiq's administrative determinations accepting and rejecting Claims as stated in the Villanova Declaration.

### A.     No Disputed Claims

Epiq carefully reviewed Claimants' and filers' responses to the Deficiency Letters and Status Emails and worked with them to resolve deficiencies where possible. *Id.* ¶¶ 21, 26. Consistent with paragraph 32(e) of the Stipulation, the Deficiency Letters and Status Emails specifically advised Claimants and filers of their right, within 20 days after the mailing of the Deficiency Letter or emailing of the Status Email, to contest the rejection of their Claims and request Court review of Epiq's administrative determinations of the Claims. *Id.* ¶¶ 20, 23, and Exhibits A and B.

With respect to the fully processed Claims, Epiq received two (2) requests for Court review of its administrative determinations. *Id.* ¶ 28. Epiq contacted the two Claimants requesting Court review and attempted to answer all questions and fully explain Epiq's administrative determination of the Claim's status and facilitate the submission of missing information or documentation where applicable. *Id.* As a result of these efforts, the two Claimants resolved their deficiencies and withdrew their requests for Court review, and their Claims are now recommended for approval. *Id.* Accordingly, there are no outstanding requests for Court review by any Claimants and the motion is ripe for determination. *Id.*

### B.     Late Claims and Final Cut-Off Date

The 141,003 Claims received through July 5, 2022, include 2,419 Claims that were postmarked or received after September 16, 2021, the Court-approved Claim submission deadline, but received before July 5, 2022. *Id.* ¶¶ 29, 35. Those late Claims have been fully processed, and

4

783 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 783 Claims were late, they were received while the processing of timely Claims was ongoing. *Id*. ¶ 29. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. *Id*. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Notice ¶ 42. Lead Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiffs respectfully request that the Court order that any new Claims and any adjustments to previously filed Claims that would result in an increased Recognized Claim received after July 5, 2022, be barred, subject to the provisions of paragraph 39(f) of the Villanova Declaration. Paragraph 39(f) applies to any Claims received or modified after July 5, 2022, that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if timely received. At the time when Lead Counsel, in consultation with Epiq, determine that a further distribution is not cost-effective as provided in paragraph 39(e) of the Villanova Declaration, the post-July 5, 2022 Claimants, after payment of fees and expenses as provided in paragraph 39(f) of the Villanova Declaration, at the discretion of Lead Counsel, and to the extent possible, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks.

### III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with Epiq's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, Epiq was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Villanova Decl. ¶ 2. Epiq's fees and expenses for its work performed through May 31, 2022, are $950,742.15, and its estimated fees and expenses for work to be performed on behalf of the Settlement Class in connection with the Initial Distribution are $36,034.12, which together total $986,776.27. *Id*. ¶ 38. Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id*. To date, Epiq has received no payment for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of $986,776.27 payable to Epiq, which amount includes the estimated fees and expenses to be incurred by Epiq in connection with the Initial Distribution. *Id*. Lead Counsel reviewed Epiq's invoices and respectfully request on behalf of Lead Plaintiffs that the Court approve all Epiq's fees and expenses.

### IV.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

#### A.    Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, Epiq will distribute 95% of the Net Settlement Fund, after deducting: (i) all payments previously allowed, (ii) payments approved by the Court on this motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (i.e., the Initial Distribution). *See* Villanova Decl. ¶ 39(a). In the Initial Distribution, Epiq will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund

were to be distributed now. *Id*. ¶ 39(a)(1). Epiq will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. Epiq will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by Epiq. *Id*. ¶ 39(a)(2). Epiq will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id*. ¶ 39(a)(3). This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id*. Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 39(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 39(a)(5). The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiffs propose that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 39(b). Authorized Claimants who do not cash their checks within the time allotted or on the

7

conditions stated in paragraph 39(b) of the Villanova Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 39(c).

### B. Additional Distribution(s) of the Net Settlement Fund

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than seven (7) months after the Initial Distribution, Epiq will, after consulting with Lead Counsel, conduct the Second Distribution of the Net Settlement Fund. *Id.* ¶ 39(d). In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*. After the Second Distribution, if any funds remain in the Net Settlement Fund, and if cost-effective, subsequent distributions will take place at six (6)-month intervals. *Id*. When Lead Counsel, in consultation with Epiq, determine that further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after July 5, 2022, Epiq will process those Claims. *Id*. ¶ 39(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an adjustment was received after July 5, 2022, that resulted in an increased Recognized Claim amount, may be paid in accordance with paragraph 39(f) of the Villanova Declaration. *Id*. If any funds remain in the Net Settlement Fund after payment of these Claims and unpaid fees or expenses, the remaining funds will be contributed to the National Consumer Law Center ("NCLC"). *Id; see also* Appendix A to Notice ¶ 14.

8

NCLC is a private, non-sectarian, not-for-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See About Us*, National Consumer Law Center, nclc.org/about-us/about-us.html (last visited July 7, 2022). NCLC was founded in 1969 through a federal grant to provide legal services addressed to two main goals: improving the access of low-income people to the legal system and enabling advocates to seek remedies where needed. *See Our Story*, National Consumer Law Center, nclc.org/about-us/our-story.html (last visited July 7, 2022). Today, NCLC continues to advocate for low-income consumers and provides many resources to civil legal aid and private attorneys representing low-income consumers. *See id.* NCLC's lawyers provide policy analysis, advocacy, litigation, expert-witness services, and training for consumer advocates throughout the United States. *See id.* "NCLC works to ensure a fair marketplace and access to justice for all consumers, including low-income people, older Americans, students, military service members and veterans," and its "work covers a broad range of consumer issues, including consumer protection, fair credit, debt collection, student loans, mortgages and foreclosures, financial services, bankruptcy, [and] unfair and deceptive acts and practices. . . ." *See Cy Pres Awards*, National Consumer Law Center, nclc.org/about-us/cy-pres-awards.html (last visited July 7, 2022). Federal courts have approved NCLC as a *cy pres* recipient of residual balances of net settlement funds in other settlements. *See, e.g.*, *In re Nu Skin Enters., Inc., Sec. Litig.*, No. 14-cv-00033-JNP-BCW, ECF Nos. 152-154 (D. Utah Aug. 30, 2018); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016), *appeal dismissed*, 2016 WL 9778633 (9th Cir. Nov. 7, 2016); *Perkins v. Am. Nat'l Ins. Co.*, 2012 WL 2839788, at \*5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

## V.     <u>RELEASE OF CLAIMS</u>

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 36 and Appendix A to Notice ¶ 15. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, *Shah v. Zimmer Biomet Holdings, Inc.,* 2020 WL 7392796, at *2 (N.D. Ind. Dec. 14, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement

10

Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund, Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them pursuant to this Order."); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, Lead Case No. 1:14-cv-3428 (NFA), ECF No. 384, at *7 (S.D. Tex. Nov. 17, 2020) (approving substantially similar language in order authorizing distribution of settlement proceeds); *In re Eletrobras Sec. Litig.*, 467 F.Supp.3d 149, 151 (S.D.N.Y. 2020) (same).

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant their Unopposed Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated: July 7, 2022                                  Respectfully submitted,

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Sharan Nirmul (#90751)
Joshua A. Materese (#314844)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
jmaterese@ktmc.com

**BERNSTEIN LITOWITZ**
**BERGER & GROSSMANN LLP**
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, IL 60611
Telephone: (312) 373-3800
Facsimile: (312) 794-7801
avi@blbglaw.com

11

-and-

*/s/ James A. Harrod*

James A. Harrod (admitted *pro hac vice*)
Adam D. Hollander (admitted *pro hac vice*)
Alexander T. Payne (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Jim.Harrod@blbglaw.com
Adam.Hollander@blbglaw.com
Alex.Payne@blbglaw.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*

12